Wolff & Samson PC
One Boland Drive
West Orange, NJ 07052
(973) 325-1500
Attorneys for Defendant Time Warner Cable Inc.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HAROLD M. HOFFMAN, individually and on behalf of those similarly situated,<br><br>                                  Plaintiff,<br><br>          - against -<br><br>TIME WARNER CABLE INC.,<br><br>                                 Defendant. | Civil Action:<br><br>**NOTICE OF REMOVAL** |

        PLEASE TAKE NOTICE that Defendant Time Warner Cable Inc. ("TWC"), by

and through its undersigned attorneys, hereby removes the above-captioned action bearing

Docket Number BER-L-665-12, pending in the Superior Court of New Jersey Bergen County –

Law Division, to the United States District Court for the District of New Jersey pursuant to 28

U.S.C. § 1441 *et seq.* This Court has jurisdiction over the action pursuant to the Class Action

Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2) and 1453(b). The grounds for removal

are set forth below.[1]

---

[1]     Jonathan D. Thier, Esq., Brian T. Markley, Esq. and the law firm of Cahill Gordon & Reindel LLP are in the process of filing a *pro hac vice* application to represent Time Warner Cable Inc. Mr. Thier's contact information is as follows: Jonathan D. Thier, Esq., Cahill Gordon & Reindel LLP, 80 Pine Street, New York, New York 10005-1702; telephone: 212-701-3992; facsimile: 212-378-2374; e-mail: jthier@cahill.com. Mr. Markley's contact information is the same except that he may be reached by telephone at 212-701-3230, by facsimile at (212) 378-2455 and by e-mail at bmarkley@cahill.com.

## I.   THE COMPLAINT

1.     On or about January 19, 2012, Plaintiff Harold M. Hoffman ("Plaintiff" or "Hoffman") filed a complaint on behalf of himself and a putative class of similarly situated persons (the "Complaint") in the Superior Court of New Jersey Bergen County – Law Division, Docket Number BER-L-665-12 (the "State Court Action").

2.     TWC was served with an incomplete version of the Complaint on January 24, 2012. *See* Exhibit A. TWC had no notice of the Complaint before it was served on its registered agent. TWC subsequently obtained a complete version of the Complaint, which is attached here to as Exhibit B.

3.     The Complaint alleges that Hoffman is a resident of New Jersey (Complaint ¶ 1) and that TWC is incorporated in Delaware. Complaint ¶ 2.  As set forth in the February 16, 2012 Declaration of Michael Angus accompanying this Notice (attached as Exhibit C, hereinafter the "Angus Declaration"), TWC's principal place of business is New York, New York.

4.     The Complaint alleges violations of the New Jersey Consumer Fraud Act (the "NJCFA"), N.J.S.A. § 56:8-2.

5.     Specifically, Plaintiff asserts that in December 2011, TWC "ceased to deliver to its subscribers the sporting events and games broadcast on the MSG and MSG+ networks," (collectively the "MSG Networks") (Complaint ¶ 8) causing Plaintiff and the putative class members to suffer "an ascertainable loss . . . when they received a product/service less than and different from that promised by Defendant." Complaint ¶¶ 16-17.  The Complaint further alleges that TWC promised to deliver "a variety of programming, including sports programming broadcast on the MSG Networks" (Complaint ¶ 4), and that the availability of such programming

2

"affirmatively induced Plaintiff and members of the putative class to subscribe to [TWC's] cable television services." Complaint ¶ 5.

6.      Additionally, the Complaint alleges that "[a] highly material selling ingredient of the Defendant's cable television services and a highly material component of the monthly charges assessed by Defendant for its services, was the affirmatively promised delivery of the sporting events and games broadcast on the [MSG] networks," which included, "without limitation, the regular season and post-season playoff games of both the New York Knickerbockers basketball team and the New York Rangers hockey team, two iconic New York sports franchises with a significant following in this State and throughout the United States, as well as National Hockey League games involving extremely popular teams such as the New Jersey Devils and the New York Islanders." Complaint ¶¶ 6-7.

7.      For relief, the Complaint seeks "treble damages together with pre-judgment and post-judgment interest, fees, costs, attorney's fees, civil penalties mandated by N.J.S.A. § 56:8-19, and any other and further relief as the Court deems just and proper." *See* Complaint Count I, II, III, IV and V.

8.      The Complaint further alleges—and incorporates into each of its Counts—that once TWC ceased carriage of the MSG Networks, TWC "ceased to pay sums to the owners of MSG . . . resulting in a significant financial windfall . . . [that] has not been shared with [TWC's] subscribers[.]" Complaint ¶ 12.

9.      The Complaint does not expressly restrict the purported class to TWC's subscribers in New Jersey, but rather purports to include *all* TWC customers who receive the MSG Networks regardless of where they reside. *See* Complaint ¶ 20 (defining purported class to

3

include "those consumer[s] who are subscribers to Defendant's cable television service [as] of December 2011").

10.    TWC carried the MSG Networks on cable systems in New Jersey, New York and Pennsylvania. *See* Angus Declaration ¶ 3.

## II.    BASIS FOR REMOVAL – DIVERSITY JURISDICTION UNDER CAFA

11.    This action is removable pursuant to CAFA, 28 U.S.C. § 1332(d)(2), which provides in relevant part that a district court shall have original jurisdiction of any civil action in which the amount-in-controversy exceeds the sum of $5 million and where any member of the purported class is a citizen of a State different from any defendant.

### *CAFA's Amount-in-Controversy Requirement is Satisfied*

12.    In determining the amount-in-controversy for purposes of removal under CAFA, courts must take into consideration, in addition to compensatory damages, any additional recoverable damages, including treble damages and attorney's fees when prescribed as recoverable for a particular cause of action. *See Frederico* v. *Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007).   For these purposes, the court must also assume that the factual allegations of the complaint are true. *See Steele Valley Authority* v. *Union Switch & Signal Division*, 809 F.2d 1006, 1010 (3d Cir. 1987).

13.    Where, as here, the plaintiff has not specifically averred that the amount in controversy is less than CAFA's jurisdictional minimum, "federal jurisdiction exists unless it appears, *to a legal certainty*, that the plaintiff was never entitled to recover the jurisdictional amount." *Kaufman* v. *Allstate New Jersey Insurance Co.,* 561 F.3d 144, 151 (3d Cir. 2009)(emphasis added).   "[T]he question whether a plaintiff's claims pass the 'legal certainty'

4

standard is a threshold matter that should involve the court in only minimal scrutiny of the plaintiff's claims." *Suber* v. *Chrysler Corp.*, 104 F.3d 578, 583 (3d Cir. 1997)

14.     The Third Circuit has further recognized that when a complaint does not "quantify the relief Plaintiffs seek," but does assert claims for compensatory damages, punitive damages, attorney's fees, and costs of suit, a court may simply rely upon the substantial size of the purported class to find that the jurisdictional threshold is met under CAFA, because in such circumstances the court cannot "conclude to a legal certainty that Plaintiffs are not entitled to recover the jurisdictional amount." *See Kaufman*, 561 F.3d at 151–52 (finding the jurisdictional threshold was met because "hundreds of thousands of insurance policies" were at issue).

15.     It is well-settled that for purposes of removal, the amount in controversy is appropriately measured, accepting plaintiff's allegations as true, by "a reasonable reading of the value of the rights being litigated." *See Angus* v. *Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993); *see also Margulis* v. *Resort Rental, LLC*, 2008 WL 2775494, at * 4 (D.N.J. July 14, 2008) (same).

***Damages Available Under NJCFA***

16.     Here, the Complaint alleges several independent violations of the NJCFA, N.J.S.A. § 56:8-2, and specifically seeks treble damages and attorney's fees pursuant to that statute. *See* Complaint Counts I, II, III, IV, V; N.J.S.A. § 56:8-19. The NJCFA provides in relevant part that:

> Any person who suffers any ascertainable loss of moneys . . . as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act . . . may bring an action . . . in any court of competent jurisdiction . . . In *any action under [the NJCFA] the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest . . . . [T]he court*

5

> *shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit.*N.J.S.A. § 56:8-19 (emphasis added).

The statute permits class actionswhile imposing noexpress cap on damages. *See Laney* v. *American Standard Cos. Inc.*, 2010 WL 3810637, at *20 (D.N.J. Sept. 23, 2010) (noting that "New Jersey allows and often encourages private class actions for consumer fraud").

17.     Courts have held thatthe NJCFA may be asserted in a class action for the benefit of out-of-state plaintiffs. *See Elias* v. *Ungar's Food Products, Inc.*, 2009 WL 2581502, at *5 (D.N.J. Aug. 20, 2009) ("The court declines to unseat longstanding precedent interpreting the NJCFA to apply to out-of-state plaintiffs[.]"); *see also In re Mercedes-Benz Tele Aid Contract Litigation*, 257 F.R.D. 46, 75 (D.N.J. 2009) (recognizing that in appropriate circumstances, courts may certify nationwide class actions alleging violations of the NJCFA). While TWC will contest on all available grounds the appropriateness and certification of anationwide class in this action, the Court need only focus here on whether such a class is theoretically cognizable. *SeeSuber* v. *Chrysler Corp.*, 104 F.3d 578, 583–84 (3d Cir. 1997) ("The court should not consider in its jurisdictional inquiry the legal sufficiency of [plaintiff's] claims or whether the legal theory advanced by the plaintiffs is probably unsound. . . .").

18.     While the Complaintin this action does not set forth the specificamount of monetary reliefsought by the purported class underthe NJCFA, it does appear to present at least two theories for calculating damages. As set forth below—again without conceding that any damages are actually appropriate—there is no "legal certainty" that these theories would not result in damagesabove $5 million should the purported class prevail.

6

*The "Windfall" Theory*

19.    First, as noted above, Plaintiff appears to seek recovery of a "significant financial windfall" allegedly received by TWC when it ceased carrying the MSG Networks.  While TWC will raise substantial arguments in opposition to such a damage measure, it is not clear to a "legal certainty" that such arguments would prevail. *See Suber* v. *Chrysler Corp.*, 104 F.3d 578, 583 (3d Cir. 1997) ("In applying the 'legal certainty' test established by *St. Paul Mercury,* this Court has stated that 'dismissal is appropriate only if the federal court is *certain* that the jurisdictional amount cannot be met.'") (quoting *Columbia Gas Transmission Corp.* v. *Tarbuck*, 62 F.3d 538, 541 (3d Cir.1995)(emphasis added)).

20.    As set forth in the Angus Declaration: (i) until recently, TWC had distributed the MSG Networks over TWC's cable systems to approximately 2.4 million subscribers in New Jersey, New York and Pennsylvania (Angus Declaration ¶ 3); (ii) TWC paid far in excess of $5 million per month to Madison Square Garden, L.P. ("MSG") for the right to carry the MSG Networks on TWC's cable systems (Angus Declaration ¶ 5); and (iii) TWC is no longer distributing the MSG Networks to its subscribers and has ceased paying fees to MSG (Angus Declaration ¶ 7). In other words, TWC had been paying—but is now no longer paying—an amount substantially exceeding $5 million per month for the right to carry the MSG Networks.[2]

---

[2]    While TWC is restricted from disclosing the specific amount of fees it paid to MSG (*see* Angus Declaration ¶ 4), it has been publicly reported that MSG charges programmers an average of $4.91 per customer for the MSG Networks.  *See* Richard Sandomir, *MSG and Time Warner Continue to Face Off*, N.Y. Times, Jan. 12, 2012, at B15.  ("According to SNL Kagan, a research firm, MSG's estimated monthly subscriber fee this year is $2.63 . . . . MSG Plus's monthly subscriber fee stands at $2.28.").

3143507.1

21.    Insofar as Plaintiff is seeking to recover this alleged "windfall," it cannot be said to a "legal certainty" that damages (even without statutory trebling and attorney's fees) would fail to exceed the statutory threshold in the event Plaintiff were successful.

22.    Furthermore, accounting for trebling and attorney's fees, and assuming that TWC paid a *minimum* of $5 million per month for the right to carry the MSG Networks, it is reasonable to expect that Plaintiff could seek even greater damages of approximately $20 million or more. *See Frederico*, 507 F.3d at 199 (recognizing that a potential claim for attorney's fees adds an additional 30 percent for purposes of the amount-in-controversy analysis under CAFA).

23.    Moreover, accounting for the likelihood that Plaintiff will seek to recover damages for a period greater than one month—potential damages have allegedly been accruing for six weeks already—Plaintiff's theoretical damages would be even greater. *See Faltaous* v. *Johnson & Johnson*, 2007 WL 3256833, at *9 (D.N.J. Nov. 5, 2007) (holding that "damages accruing in the future are properly counted against the jurisdictional amount if the right to future payments . . . will be adjudged in the present suit") (citation and internal quotation marks omitted).

24.    Thus, if one assumes that the putative class is without the MSG Networks for a two month period, Plaintiff could be expected to seek damages of around $40 million, or more. ($5 million x 2 months x 3 + 30 percent). By the same token, three months without the MSG Networks could lead to a theoretical damage claim of $60 million or more, and so on.

25.    TWC will of course contest this damages theory at the appropriate time, and reserves all rights to do so. However, given that Plaintiff appears to be pursuing this theory in

3143507.1

his Complaint, it cannot be said with *legal certainty*—particularly at the very origin of this case—that the putative class would recover less than $5 million if it were to prevail.

### The "Benefit of the Bargain" or "Out of Pocket" Theories

26.     Putting aside Plaintiffs' "windfall" theory, the amount-in-controversy threshold is also met here based on an analysis of the potential "actual value" that Plaintiff may attribute to the MSG Networks.

27.     Courts have repeatedly held that a plaintiff asserting a violation of the NJCFA may plead a "benefit-of-the-bargain" loss, where damages consist of "the difference between the [product]. . . received and the [product] as represented at purchase." *Arcand* v. *Brother International Cop.*, 673 F. Supp. 2d 282, 300 (D.N.J. 2009) (citation and internal quotation marks omitted). Similarly, the NJCFA permits recovery of "out-of-pocket" loss, consisting of the difference between price paid and the actual value of the property acquired. *Romano* v. *Galaxy Toyota*, 945 A.2d 49, 57 (N.J. Super. Ct. App. Div. 2008); *Thiedemann* v. *Mercedes-Benz USA, LLC*, 872 A.2d 783, 792 (N.J. 2005) (same).

28.     Although Plaintiff could be understood to have made such allegations here,[3] it is extremely difficult, if not impossible, to ascertain with any precision the monetary value that plaintiff would argue the average TWC customer ascribes to the MSG Networks. Nevertheless, whatever that figure may be, simple arithmetic indicates that the total amount of damages sought

---

[3]     Complaint ¶¶ 17-18 (alleging that "Plaintiff and members of the [purported] class suffered ascertainable loss when they received a product/service less than and different from that promised by Defendant" and "lost the benefit-of-the-bargain represented by Defendant — the difference between the price paid by the consumer-subscriber to Defendant's product/service and the product/service promised by Defendant.")

9

by the putative class need not exceed *54 cents per subscriber* in order to satisfy CAFA's amount-in-controversy requirement.  This figure is derived by dividing $5 million by 2.4 million subscribers and adjusting the result for treble damages and 30 percent attorney's fees.[4]

29.  To help place this 54 cents per-subscriber figure in perspective, note that TWC customers paid on average of $73.56 per month for video services during the quarter ended December 31, 2011.  Angus Declaration ¶6. Thus, the 54 cent figure is *less than three-quarters of one percent* of what the average customer pays for video services in *just one month*.

30.  Nothing in the Complaint suggests that Plaintiff believes the MSG Networks are worth less than three-quarters of one percent of his monthly cable bill.  To the contrary, Plaintiff alleges, among other things, that the MSG Networks are "a *highly material* component of the monthly charges assessed by [TWC] for its services" and a "*highly material* selling ingredient" to subscribers.  Complaint ¶7 (emphasis added).

31.  Thus again, it cannot be said with legal certainty, at this stage of the case, that the putative class would recover less than $5 million.

**II.     THE OTHER ELEMENTS REQUIRED FOR CAFA REMOVAL ARE PRESENT**

***This Action is a Purported Class Action***

32.  The other elements for removal under CAFA are also present here.  First, this action is plainly a "class action" as defined by CAFA, *i.e.* it is a "civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class

---

[4]     Put differently, if one multiplies 2.4 million subscribers by 54 cents, the result is $1,296,000 million.  Adjusting that figure for treble damages increases it to $3,888,000, and adding 30 percent attorneys' fees ($1,166,400) brings the sum to more than $5 million.

10

action." 28 U.S.C. § 1332(d)(1)(B); *see also Frederico*, 507 F.3d at 199 (holding that district court had jurisdiction over a class action filed in New Jersey state court and removed to federal court under CAFA).

### The Proposed Class Includes More Than 100 Members

33.  CAFA requires that the proposed class include more than 100 members. *See* 28 U.S.C. § 1332(d)(5)(B). Here, the Complaint alleges that "[t]he putative class is believed to be so numerous that joinder of all members is impractical." Complaint ¶ 20. Moreover, as noted, more than 2.4 million TWC subscribers received the MSG Networks in the relevant period. Angus Declaration ¶ 3.

### Minimal Diversity Exists

34.  CAFA's "minimal diversity" requirement, 28 U.S.C. § 1332(d)(2), is met because Hoffman is a citizen of New Jersey (Complaint ¶ 1), and for purposes of diversity jurisdiction, TWC is a citizen of Delaware and New York. *See* 28 U.S.C. § 1332(c) (corporate citizenship is state of incorporation and principal place of business); Angus Declaration ¶ 2.[5]

### The Notice Of Removal Is Timely

35.  The Complaint was filed on January 19, 2012, and TWC first received notice of the State Court Action on January 24, 2012. The notice of removal has been filed within 30 days of TWC's notice of the State Court Action, making this notice timely. *See* 28 U.S.C. § 1446(b).

---

[5]  Neither the "local controversy exception," 28 U.S.C. § 1332(d)(4)(A), nor the "home state exception," 28 U.S.C. § 1332(d)(4)(B), apply to this action. Those exceptions each require that at least one defendant be a citizen of the state where the action was filed. *See* 28 U.S.C. §§ 1332(d)(4)(A), 1332(d)(4)(B). TWC (the only defendant in this action) is not a citizen of New Jersey where the action was originally filed. Additionally, this action does not involve a covered security, a claim relating to the internal affairs or governance of a corporation, or a claim under the Securities Act of 1933. Thus, the exceptions under 28 U.S.C. § 1332(d)(9) and 28 U.S.C. § 1453(d) do not apply.

11

### III.    OTHER PROCEDURAL REQUIREMENTS

36.    TWC is providing a true and correct copy of all the process, pleadings, or orders on file in the State Court Action annexed hereto as Exhibits A and B.  28 U.S.C. § 1446(a).

37.    Promptly upon the filing of this Notice of Removal, a true copy of this Notice of Removal will be provided to all adverse parties pursuant to 28 U.S.C. § 1446(d).  Pursuant to Fed. R. Civ. P. 5(d), TWC will file with this Court a Certificate of Service of Notice to Adverse Parties of Removal to Federal Court.

38.    Concurrently with the filing of this Notice of Removal, TWC is filing a notification of Filing of Notice of Removal with the Clerk of the Superior Court of New Jersey, Bergen County, in accordance with 28 U.S.C. § 1446(d).

39.    This Notice of Removal is signed pursuant to Fed. R. Civ. P. 11.

WHEREFORE, this action should proceed in the United States District Court for the District of New Jersey as an action properly removed thereto.


WOLFF & SAMSON PC
Attorneys for Defendant Time Warner Cable Inc.

By: /s/        William E. Goydan
              WILLIAM E. GOYDAN

Dated:  February 17, 2012

12

3143507.1

# Exhibit A

Attorney(s): **CHRONAKIS SIACHOS, LLC**
Address: **50 HARRISON STREET, SUITE 315**
**HOBOKEN, NJ 07030**
Telephone No: **(201) 792-7777**
E-Mail: **PHIL@CSLAWLLC.COM**
Attorney for Plaintiff Individually and on behalf of the class of persons similarly situated

---

| | |
|---|---|
| **HAROLD M. HOFFMAN**, Individually and on behalf of those similarly situated, : . | SUPERIOR COURT OF NEW JERSEY<br>BERGEN COUNTY - LAW DIVISION |
| : | |
| Plaintiff, : | |
| vs. : | DOCKET NO.:**BER-L-665-12** |
| : | |
| **TIME WARNER CABLE INC.,** : | CIVIL ACTION |
| : | |
| Defendant. : | **SUMMONS** |
| : | |

---

From the State of New Jersey To the Defendant(s) named above:

# TIME WARNER CABLE INC.

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The Complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided). If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, CN-971, Trenton, NJ 08625. A $200 filing fee, payable to the Clerk of the Superior Court, and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

*/S/ Jennifer M. Perez*
Jennifer M. Perez, Acting Superior Court Clerk

Dated: January 23, 2012

Name of Defendant to be Served: **TIME WARNER CABLE INC.**
Address of Defendant to be Served: C/O Corporation Trust Company, 1209 Orange St., Wilmington, DE 19801

**ATLANTIC COUNTY**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., 1ˢᵗ Fl.
Atlantic City, NJ 08401
LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY**
Deputy Clerk of the Superior Court
Case Processing Section - Rm 113
Justice Center - 10 Main St.
Hackensack, NJ 07601
LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY**
Deputy Clerk of the Superior Court
Central Processing Office
Attn.: Judicial Intake
49 Rancocas Rd., 1ˢᵗ Fl.
Mt. Holly, NJ 08060
LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(609) 261-1088

**CAMDEN COUNTY**
Deputy Clerk of the Superior Court
Civil Processing Office
Hall of Records, Suite 150
101 S. Fifth St.
Camden, NJ 08103-4001
LAWYER REFERRAL
(856) 964-4520
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY**
Deputy Clerk of the Superior Court
Court House
9 N. Main Street
Cape May, NJ 08210
LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY**
Deputy Clerk of the Superior Court
Civil Case Management Office
Broad & Fayette Sts., PO Box 10
Bridgeton, NJ 08302
LAWYER REFERRAL
(856) 692-6207
LEGAL SERVICES
(856) 451-0003

**ESSEX COUNTY**
Deputy Clerk of the Superior Court
237 Hall of Records
465 Dr. Martin Luther King, Jr. Blvd.
Newark, NJ 07102
LAWYER REFERRAL
(973) 533-6755
Legal Services
(973) 624-4500

**GLOUCESTER COUNTY**
Deputy Clerk of the Superior Court
Civil Case Management Office
Broad & Delaware Streets
Woodbury, NJ 08096
LAWYER REFERRAL
(856) 848-4589
LEGAL SERVICES
(856) 964-9400

**HUDSON COUNTY**
Deputy Clerk of the Superior Court
Administration Bldg
Hudson Fee Office, Room G-9
595 Newark Ave.
Jersey City, NJ 07306
LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822
LAWYER REFERRAL
(908) 735-2611
LEGAL SERVICES
(908) 782-7979

**MERCER COUNTY**
Deputy Clerk of the Superior Court
Local Filing Office, Court House
175 S. Broad St., PO Box 8068
Trenton, NJ 08650
LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY**
Deputy Clerk of the Superior Court
Court House, 1ˢᵗ Fl.
1 Kennedy Sq., PO Box 2633
New Brunswick, NJ 08903-2633
LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

**MONMOUTH COUNTY**
Deputy Clerk of the Superior Court
71 Monument Park, PO Box 1260
Court House
Freehold, NJ 07728-1262
LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

**MORRIS COUNTY**
Deputy Clerk of the Superior Court
Civil Division
PO Box 910
Morristown, NJ 07930-0910
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

**OCEAN COUNTY**
Deputy Clerk of the Superior Court
Court House, Room 121
118 Washington St.
Toms River, NJ 08754
LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

**PASSAIC COUNTY**
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton St.
Paterson, NJ 07505
LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 523-2900

**SALEM COUNTY**
Deputy Clerk of the Superior Court
92 Market St., PO Box 29
Salem, NJ 08079
LAWYER REFERRAL
(856) 935-5629
LEGAL SERVICES
(856) 451-0003

**SOMERSET COUNTY**
Deputy Clerk of the Superior Court
Civil Division Office
Court House, 3ʳᵈ Fl.
Somerville, NJ 08876
LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860
LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 383-7400

**UNION COUNTY**
Deputy Clerk of the Superior Court
Court House, Room 107
2 Broad Street
Elizabeth, NJ 07207-6073
LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY**
Deputy Clerk of the Superior Court
Civil Division Office
Court House
413 Second Street
Belvidere, NJ 07823-1500
LAWYER REFERRAL
(908) 387-1835
LEGAL SERVICES
(908) 475-2010

2/04

CHRONAKIS SIACHOS, LLC
50 Harrison Street, Suite 315
Hoboken, NJ 07030
(201) 792-7777
e-mail: Phil@CSLawLLC.com

HAROLD M. HOFFMAN, ESQ.
240 Grand Avenue
Englewood NJ 07631
(201) 569-0086
e-mail: Hoffman.Esq@Verizon.Net

*Attorneys for Plaintiff individually and on behalf of the class of persons similarly situated*

| | |
|---|---|
| **HAROLD M. HOFFMAN**, individually and on behalf of those similarly situated, | SUPERIOR COURT OF NEW JERSEY BERGEN COUNTY - LAW DIVISION |
| Plaintiff, | DOCKET NO.:BER-L- *665*-12 |
| vs. | CIVIL ACTION |
| **TIME WARNER CABLE INC.**, | **COMPLAINT AND JURY DEMAND IN CLASS ACTION** |
| Defendant. | |

Plaintiff Harold M. Hoffman, a resident of the State of New Jersey, County of Bergen, individually and on behalf of the class of persons who are subscribers to Defendant's cable television services, by way of class action complaint against the Defendant above named, respectfully alleges as follows:

## Relevant Factual Allegations

1.  At all relevant times, Plaintiff was and is a consumer, residing in the State of New Jersey, County of Bergen.  At all relevant times, Plaintiff was a subscriber to Defendant's cable television services.

2.  Upon information and belief, at all relevant times, Defendant was a corporation organized and existing under the laws of the State of Delaware with a place of business in the State of New Jersey, County of Bergen. Upon information and belief, Defendant is among the largest providers of video, high-speed data and phone services in the United States, connecting more than 14 million customers to, among other things, televised entertainment and sports-based programming.

3.  At all relevant times, Defendant constituted a "person" as defined in the Consumer Fraud Act, *N.J.S.A.* 56:8-1(d).

4.  For many years prior to the filing of the instant suit, Defendant provided Plaintiff and members of the putative class, at a fixed monthly charge, with cable television services that promised to deliver, in superior broadcast video quality, a variety of programming, including sports programming broadcast on the MSG and MSG+ networks.

5.  Defendant had affirmatively induced Plaintiff and members of the putative class to subscribe to its cable television services and to pay the monthly charges established by defendant, through affirmative promises and representations by

2

defendant that subscribers would receive sports programming broadcast on the MSG and MSG+ networks.

6. Sports programming on the MSG and MSG+ networks included, without limitation, the regular season and post-season playoff games of both the New York Knickerbockers basketball team and the New York Rangers hockey team, two iconic New York sports franchises with a significant following in this State and throughout the United States, as well as National Hockey League games involving extremely popular teams such as the New Jersey Devils and the New York Islanders.

7. A highly material selling ingredient of the Defendant's cable television services and a highly material component of the monthly charges assessed by Defendant for its services, was the affirmatively promised delivery of the sporting events and games broadcast on the MSG and MSG+ networks.

8. In December of 2011, Defendant ceased to deliver to its subscribers the sporting events and games broadcast on the MSG and MSG+ networks.

9. Despite the cessation of delivery to defendant's subscribers of such valuable and highly coveted sporting events and games broadcast on the MSG and MSG+ networks, Defendant continued to assess and collect the same monthly charge for its services as was in effect prior to cessation of delivery of events and sports programming broadcast on the MSG and MSG+ networks.

10. Defendant's affirmative promises and representations that subscribers would receive – in exchange for the monthly charges assessed by defendant – sports programming broadcast on the MSG and MSG+ networks, are false.

11. Plaintiff and members of the putative class made decisions with respect to their cable television services, and the fees paid to Defendant therefor, based upon defendant's false affirmative promises and representations.

12. Upon information and belief, commencing in or about December of 2011, Defendant ceased to pay sums to the owners of the MSG and MSG+ broadcast networks for the right to broadcast such MSG and MSG+ programming on Defendant's cable television networks to Defendant's cable television subscribers, resulting in a significant financial windfall for Defendant. This financial gain has not been shared with Defendant's subscribers who have suffered a significant downgrade in the breadth of cable television broadcast services promised and previously provided by Defendant, while still paying the same monthly charge to Defendant.

13. Defendant's promises and representations to Plaintiff and members of the putative class that they would be provided by Defendant with programming broadcast on the MSG and MSG+ networks in exchange for the monthly charge assessed by Defendant, constitute a deception; a misrepresentation; an unconscionable trade practice; a sharp and deceitful marketplace practice, and a false promise.

4

14. Defendant's false representations to Plaintiff and members of the putative class result in consumers being subjected to misrepresentation, false promise, fraud, deceit, trickery and false and deceptive business practices.

15. Defendant has made affirmative misrepresentations in connection with the marketing and sale of its cable television services.

16. Plaintiff and members of the putative class suffered ascertainable loss in the form of out of pocket loss as a result of Defendant's unlawful conduct as aforesaid. Plaintiff and members of the putative class continue to pay hard earned money for delivery of promised cable television programming, which is not being provided by Defendant.

17. Here, Plaintiff and members of the class suffered ascertainable loss when they received a product/service less than and different from that promised by Defendant.

18. Additionally, at bar, Plaintiff and members of the putative class suffered a further element of loss. They lost the benefit-of-the-bargain represented by Defendant – the difference between the price paid by the consumer-subscriber to Defendant's product/service and the product/service promised by Defendant.

19. As alleged herein, there is a direct causal relationship between the Defendant's misrepresentations as to the scope of cable television services promised to its subscribers and the loss suffered by Plaintiff and class members.

5

## Allegations Pertinent to the Class

20.   In the instant action, the class is defined as those consumer who are subscribers to Defendant's cable television service a of December 2011.  The putative class is believed to be so numerous that joinder of all members is impracticable; there are questions of law common to all members of the class; the claims and defenses of the parties are typical of the claims and defenses of the class; and, the party-plaintiff will fairly and adequately protect the interests of the class.

21.  Moreover, the prosecution of separate actions by members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for the party opposing the class.  Further, the party opposing the class has acted on grounds and in a manner generally applicable to the class.  Additionally, questions of law common to members of the class predominate over any questions affecting only individual members and a class action is superior to other available methods for fair and efficient adjudication of the controversy.

## COUNT I

22.  Plaintiff repeats and realleges the prior allegations of this complaint as if fully set forth at length.

23.  Defendant's conduct constitutes an unconscionable commercial practice in violation of the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8-2.

6

24. As a proximate result of Defendant's conduct, Plaintiff and members of the class were damaged.

**WHEREFORE**, Plaintiff, individually and on behalf of the class, demands judgment against the Defendant for treble damages together with pre-judgment and post-judgment interest, fees, costs, attorney's fees, civil penalties mandated by *N.J.S.A.* 56:8-19, and any other and further relief as the Court deems just and proper.

## COUNT II

25. Plaintiff repeats and realleges the prior allegations of this complaint as if fully set forth at length.

26. Defendant's conduct constitutes deception in violation of the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8-2.

27. As a proximate result of Defendant's conduct, Plaintiff and members of the class were damaged.

**WHEREFORE**, Plaintiff, individually and on behalf of the class, demands judgment against the Defendant for treble damages together with pre-judgment and post-judgment interest, fees, costs, attorney's fees, civil penalties mandated by *N.J.S.A.* 56:8-19, and any other and further relief as the Court deems just and proper.

## COUNT III

7

Appendix XII-B1

# CIVIL CASE INFORMATION STATEMENT
## (CIS)

### Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),
if information above the black bar is not completed
or attorney's signature is not affixed**



| | |
|---|---|
| PAYMENT TYPE: ☐ CK ☐ CG ☐ CA | |
| CH3/CK NO. | |
| AMOUNT: | |
| OVERPAYMENT: | |
| BATCH NUMBER: | |

| ATTORNEY / PRO SE NAME<br>Philip C. Chronakis, Esq. | TELEPHONE NUMBER<br>201-792-7777 | COUNTY OF VENUE<br>Bergen |
|---|---|---|
| FIRM NAME (if applicable)<br>Chronakis Siachos, LLC | | DOCKET NUMBER (when available)<br>L-665-12 |
| OFFICE ADDRESS<br>50 Harrison Street, Suite 315<br>Hoboken, NJ 07030 | | DOCUMENT TYPE<br>Complaint |
| | | JURY DEMAND ■ YES ☐ NO |

| NAME OF PARTY (e.g., John Doe, Plaintiff)<br>Harold Hoffman, Plaintiff | CAPTION<br>Harold HOFFMAN v. TIME WARNER CABLE, INC. |
|---|---|
| CASE TYPE NUMBER (See reverse side for listing)<br>699 | IS THIS A PROFESSIONAL MALPRACTICE CASE? ☐ YES ■ NO<br>IF YOU HAVE CHECKED "YES," SEE N.J.S.A. 2A:53 A-27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
| RELATED CASES PENDING?<br>☐ YES ■ No | IF YES, LIST DOCKET NUMBERS |
| DO YOU ANTICIPATE ADDING ANY PARTIES<br>(arising out of same transaction or occurrence)?<br>☐ YES ■ No | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)<br>☐ NONE<br>■ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

| CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION | |
|---|---|
| DO PARTIES HAVE A CURRENT, PAST OR<br>RECURRENT RELATIONSHIP?<br>■ YES ☐ No | IF YES, IS THAT RELATIONSHIP:<br>☐ EMPLOYER/EMPLOYEE ☐ FRIEND/NEIGHBOR ☐ OTHER (explain)<br>☐ FAMILIAL ■ BUSINESS |
| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? | ■ YES ☐ No |

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

| | DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>☐ YES ■ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|---|
| | WILL AN INTERPRETER BE NEEDED?<br>☐ YES ■ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE: *PCC*

page 1 of 2



Side 2

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I - 150 days' discovery**
- 151 NAME CHANGE
- 175 FORFEITURE
- 302 TENANCY
- 399 REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
- 502 BOOK ACCOUNT (debt collection matters only)
- 505 OTHER INSURANCE CLAIM (including declaratory judgment actions)
- 506 PIP COVERAGE
- 510 UM or UIM CLAIM (coverage issues only)
- 511 ACTION ON NEGOTIABLE INSTRUMENT
- 512 LEMON LAW
- 801 SUMMARY ACTION
- 802 OPEN PUBLIC RECORDS ACT (summary action)
- 999 OTHER (briefly describe nature of action)

**Track II - 300 days' discovery**
- 305 CONSTRUCTION
- 509 EMPLOYMENT (other than CEPA or LAD)
- 599 CONTRACT/COMMERCIAL TRANSACTION
- 603N AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
- 603Y AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
- 605 PERSONAL INJURY
- 610 AUTO NEGLIGENCE – PROPERTY DAMAGE
- 621 UM or UIM CLAIM (includes bodily injury)
- 699 TORT – OTHER

**Track III - 450 days' discovery**
- 005 CIVIL RIGHTS
- 301 CONDEMNATION
- 602 ASSAULT AND BATTERY
- 604 MEDICAL MALPRACTICE
- 606 PRODUCT LIABILITY
- 607 PROFESSIONAL MALPRACTICE
- 608 TOXIC TORT
- 609 DEFAMATION
- 616 WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
- 617 INVERSE CONDEMNATION
- 618 LAW AGAINST DISCRIMINATION (LAD) CASES

**Track IV - Active Case Management by Individual Judge / 450 days' discovery**
- 156 ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
- 303 MT. LAUREL
- 508 COMPLEX COMMERCIAL
- 513 COMPLEX CONSTRUCTION
- 514 INSURANCE FRAUD
- 620 FALSE CLAIMS ACT
- 701 ACTIONS IN LIEU OF PREROGATIVE WRITS

**Centrally Managed Litigation (Track IV)**
- 280 ZELNORM
- 285 STRYKER TRIDENT HIP IMPLANTS
- 288 PRUDENTIAL TORT LITIGATION
- 289 REGLAN

- 290 POMPTON LAKES ENVIRONMENTAL LITIGATION
- 291 PELVIC MESH/GYNECARE
- 292 PELVIC MESH/BARD
- 293 DEPUY ASR HIP IMPLANT LITIGATION

**Mass Tort (Track IV)**
- 248 CIBA GEIGY
- 266 HORMONE REPLACEMENT THERAPY (HRT)
- 271 ACCUTANE/ISOTRETINOIN
- 274 RISPERDAL/SEROQUEL/ZYPREXA
- 278 ZOMETA/AREDIA
- 279 GADOLINIUM

- 281 BRISTOL-MYERS SQUIBB ENVIRONMENTAL
- 282 FOSAMAX
- 284 NUVARING
- 286 LEVAQUIN
- 287 YAZ/YASMIN/OCELLA
- 601 ASBESTOS

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics.

Please check off each applicable category    ☒ **Putative Class Action**      ☐ **Title 59**

From: (201) 569-0086          Origin ID: TEBA
Harold M. Hoffman

240 Grand Avenue

Englewood, NJ 07631

**FedEx**
Express

J121011219O225

SHIP TO: (000) 000-0000          BILL SENDER

**Time Warner Cable Inc.**
**c/o The Corporation Trust Company**
**1209 N ORANGE ST**

**WILMINGTON, DE 19801**

Ship Date: 23JAN12
ActWgt: 0.5 LB
CAD: 9414632/INET3250

Delivery Address Bar Code

Ref #
Invoice #
PO #
Dept #



**TUE - 24 JAN  A1**
**STANDARD OVERNIGHT**

TRK#    **7931 4226 3554**
0201

**ZR ZWIA**

**19801**
DE-US
**PHL**

512G2JA78E/A278

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.



1/22/2012 11:54 A

# Exhibit B

CHRONAKIS SIACHOS, LLC
50 Harrison Street, Suite 315
Hoboken, NJ 07030
(201) 792-7777
e-mail: Phil@CSLawLLC.com

HAROLD M. HOFFMAN, ESQ.
240 Grand Avenue
Englewood NJ 07631
(201) 569-0086
e-mail: Hoffman.Esq@Verizon.Net

SUPERIOR COURT BERGEN COUNTY
F I L E D

JAN 1 9 2012

*[signature]*
DEPUTY CLERK

*Attorneys for Plaintiff individually and on behalf of the class of persons similarly situated*

| | |
|---|---|
| **HAROLD M. HOFFMAN**, individually and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>**TIME WARNER CABLE INC.,**<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY<br>BERGEN COUNTY - LAW DIVISION<br><br>DOCKET NO.:**BER-L- 665 -12**<br><br>CIVIL ACTION<br><br>**COMPLAINT AND JURY<br>DEMAND IN CLASS ACTION** |

Plaintiff Harold M. Hoffman, a resident of the State of New Jersey, County of Bergen, individually and on behalf of the class of persons who are subscribers to Defendant's cable television services, by way of class action complaint against the Defendant above named, respectfully alleges as follows:

### Relevant Factual Allegations

1. At all relevant times, Plaintiff was and is a consumer, residing in the State of New Jersey, County of Bergen. At all relevant times, Plaintiff was a subscriber to Defendant's cable television services.

2. Upon information and belief, at all relevant times, Defendant was a corporation organized and existing under the laws of the State of Delaware with a place of business in the State of New Jersey, County of Bergen. Upon information and belief, Defendant is among the largest providers of video, high-speed data and phone services in the United States, connecting more than 14 million customers to, among other things, televised entertainment and sports-based programming.

3. At all relevant times, Defendant constituted a "person" as defined in the Consumer Fraud Act, *N.J.S.A.* 56:8-1(d).

4. For many years prior to the filing of the instant suit, Defendant provided Plaintiff and members of the putative class, at a fixed monthly charge, with cable television services that promised to deliver, in superior broadcast video quality, a variety of programming, including sports programming broadcast on the MSG and MSG+ networks.

5. Defendant had affirmatively induced Plaintiff and members of the putative class to subscribe to its cable television services and to pay the monthly charges established by defendant, through affirmative promises and representations by

defendant that subscribers would receive sports programming broadcast on the MSG and MSG+ networks.

6.  Sports programming on the MSG and MSG+ networks included, without limitation, the regular season and post-season playoff games of both the New York Knickerbockers basketball team and the New York Rangers hockey team, two iconic New York sports franchises with a significant following in this State and throughout the United States, as well as National Hockey League games involving extremely popular teams such as the New Jersey Devils and the New York Islanders.

7.  A highly material selling ingredient of the Defendant's cable television services and a highly material component of the monthly charges assessed by Defendant for its services, was the affirmatively promised delivery of the sporting events and games broadcast on the MSG and MSG+ networks.

8.  In December of 2011, Defendant ceased to deliver to its subscribers the sporting events and games broadcast on the MSG and MSG+ networks.

9.  Despite the cessation of delivery to defendant's subscribers of such valuable and highly coveted sporting events and games broadcast on the MSG and MSG+ networks, Defendant continued to assess and collect the same monthly charge for its services as was in effect prior to cessation of delivery of events and sports programming broadcast on the MSG and MSG+ networks.

10. Defendant's affirmative promises and representations that subscribers would receive – in exchange for the monthly charges assessed by defendant – sports programming broadcast on the MSG and MSG+ networks, are false.

11. Plaintiff and members of the putative class made decisions with respect to their cable television services, and the fees paid to Defendant therefor, based upon defendant's false affirmative promises and representations.

12. Upon information and belief, commencing in or about December of 2011, Defendant ceased to pay sums to the owners of the MSG and MSG+ broadcast networks for the right to broadcast such MSG and MSG+ programming on Defendant's cable television networks to Defendant's cable television subscribers, resulting in a significant financial windfall for Defendant. This financial gain has not been shared with Defendant's subscribers who have suffered a significant downgrade in the breadth of cable television broadcast services promised and previously provided by Defendant, while still paying the same monthly charge to Defendant.

13. Defendant's promises and representations to Plaintiff and members of the putative class that they would be provided by Defendant with programming broadcast on the MSG and MSG+ networks in exchange for the monthly charge assessed by Defendant, constitute a deception; a misrepresentation; an unconscionable trade practice; a sharp and deceitful marketplace practice, and a false promise.

4

14. Defendant's false representations to Plaintiff and members of the putative class result in consumers being subjected to misrepresentation, false promise, fraud, deceit, trickery and false and deceptive business practices.

15. Defendant has made affirmative misrepresentations in connection with the marketing and sale of its cable television services.

16. Plaintiff and members of the putative class suffered ascertainable loss in the form of out of pocket loss as a result of Defendant's unlawful conduct as aforesaid. Plaintiff and members of the putative class continue to pay hard earned money for delivery of promised cable television programming, which is not being provided by Defendant.

17. Here, Plaintiff and members of the class suffered ascertainable loss when they received a product/service less than and different from that promised by Defendant.

18. Additionally, at bar, Plaintiff and members of the putative class suffered a further element of loss. They lost the benefit-of-the-bargain represented by Defendant – the difference between the price paid by the consumer-subscriber to Defendant's product/service and the product/service promised by Defendant.

19. As alleged herein, there is a direct causal relationship between the Defendant's misrepresentations as to the scope of cable television services promised to its subscribers and the loss suffered by Plaintiff and class members.

## Allegations Pertinent to the Class

20. In the instant action, the class is defined as those consumer who are subscribers to Defendant's cable television service a of December 2011. The putative class is believed to be so numerous that joinder of all members is impracticable; there are questions of law common to all members of the class; the claims and defenses of the parties are typical of the claims and defenses of the class; and, the party-plaintiff will fairly and adequately protect the interests of the class.

21. Moreover, the prosecution of separate actions by members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for the party opposing the class. Further, the party opposing the class has acted on grounds and in a manner generally applicable to the class. Additionally, questions of law common to members of the class predominate over any questions affecting only individual members and a class action is superior to other available methods for fair and efficient adjudication of the controversy.

## COUNT I

22. Plaintiff repeats and realleges the prior allegations of this complaint as if fully set forth at length.

23. Defendant's conduct constitutes an unconscionable commercial practice in violation of the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8-2.

24. As a proximate result of Defendant's conduct, Plaintiff and members of the class were damaged.

**WHEREFORE**, Plaintiff, individually and on behalf of the class, demands judgment against the Defendant for treble damages together with pre-judgment and post-judgment interest, fees, costs, attorney's fees, civil penalties mandated by *N.J.S.A.* 56:8-19, and any other and further relief as the Court deems just and proper.

## COUNT II

25. Plaintiff repeats and realleges the prior allegations of this complaint as if fully set forth at length.

26. Defendant's conduct constitutes deception in violation of the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8-2.

27. As a proximate result of Defendant's conduct, Plaintiff and members of the class were damaged.

**WHEREFORE**, Plaintiff, individually and on behalf of the class, demands judgment against the Defendant for treble damages together with pre-judgment and post-judgment interest, fees, costs, attorney's fees, civil penalties mandated by *N.J.S.A.* 56:8-19, and any other and further relief as the Court deems just and proper.

## COUNT III

28. Plaintiff repeats and realleges the prior allegations of this complaint as if fully set forth at length.

29. Defendant's conduct constitutes fraud in violation of the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8-2.

30. As a proximate result of Defendant's conduct, Plaintiff and members of the class were damaged.

**WHEREFORE**, Plaintiff, individually and on behalf of the class, demands judgment against the Defendant for treble damages together with pre-judgment and post-judgment interest, fees, costs, attorney's fees, civil penalties mandated by *N.J.S.A.* 56:8-19, and any other and further relief as the Court deems just and proper.

## <u>COUNT IV</u>

31. Plaintiff repeats and realleges the prior allegations of this complaint as if fully set forth at length.

32. Defendant's conduct constitutes false pretense, false promise and/or misrepresentation, in violation of the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8-2.

33. As a proximate result of Defendant's conduct, Plaintiff and members of the class were damaged.

**WHEREFORE**, Plaintiff, individually and on behalf of the class, demands judgment against the Defendant for treble damages together with pre-judgment and

post-judgment interest, fees, costs, attorney's fees, civil penalties mandated by *N.J.S.A.* 56:8-19, and any other and further relief as the Court deems just and proper.

## COUNT V

34.  Plaintiff repeats and realleges the prior allegations of this complaint as if fully set forth at length.

35.  Defendant's conduct constitutes knowing concealment, suppression and/or omission of material facts with the intent that others, including members of the plaintiff-class, rely upon such concealment, suppression and/or omission, in connection with the sale or advertisement of any merchandise in violation of the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8-2.

36.  As a proximate result of Defendant's conduct, Plaintiff and members of the class were damaged.

**WHEREFORE**, Plaintiff, individually and on behalf of the class, demands judgment against the Defendant for treble damages together with pre-judgment and post-judgment interest, fees, costs, attorney's fees, civil penalties mandated by *N.J.S.A.* 56:8-19, and any other and further relief as the Court deems just and proper.

PHILIP C. CHRONAKIS
*Co-Counsel for Plaintiff*

Dated: **January 19, 2012**

## JURY DEMAND

Pursuant to Rule 4:35-1, Plaintiff demands a trial by jury as to all issues.

## TRIAL COUNSEL DESIGNATION

Pursuant to Rule 4:25-4, the Court is respectfully advised that Philip C. Chronakis, Esq., is hereby designated as trial counsel on behalf of Plaintiff and the class.

## CERTIFICATION PURSUANT TO RULE 4:5-1

Philip C. Chronakis, counsel for Plaintiff and the class, hereby certifies that the matter in controversy is not the subject of any other known pending action in this or any other Court or any pending arbitration, nor is any other action or arbitration known to be contemplated. At this time, no other known party, other than members of the class, are anticipated for joinder. I certify that the foregoing is true to the best of my knowledge. I am aware that if any of the foregoing is willfully false, I am subject to punishment.

PHILIP C. CHRONAKIS
*Co-Counsel for Plaintiff*

Dated: **January 19, 2012**

## NOTIFICATION TO ATTORNEY GENERAL

Pursuant to *N.J.S.A.* 56:8-20, I certify that a copy of this complaint will be served

on the Office of the Attorney General, CN 080, Trenton, NJ, 08625, as well as the

Division of Consumer Affairs, 124 Halsey Street, PO Box 45027, Newark, NJ, 07101.

PHILIP C. CHRONAKIS
*Co-Counsel for Plaintiff*

Dated: **January 19, 2012**

Appendix XII-B1

| CIVIL CASE INFORMATION STATEMENT (CIS) | FOR USE BY CLERK'S OFFICE ONLY |
|---|---|



## CIVIL CASE INFORMATION STATEMENT
## (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),
if information above the black bar is not completed
or attorney's signature is not affixed**

FOR USE BY CLERK'S OFFICE ONLY
PAYMENT TYPE: ☐ CK ☐ CG ☐ CA
CHG/CK NO.
AMOUNT:
OVERPAYMENT:
BATCH NUMBER:

| ATTORNEY / PRO SE NAME<br>Philip C. Chronakis, Esq. | TELEPHONE NUMBER<br>201-792-7777 | COUNTY OF VENUE<br>Bergen |
|---|---|---|
| FIRM NAME (if applicable)<br>Chronakis Siachos, LLC | | DOCKET NUMBER (when available) |
| OFFICE ADDRESS<br>50 Harrison Street, Suite 315<br>Hoboken, NJ 07030 | | DOCUMENT TYPE<br>Complaint |
| | | JURY DEMAND ■ YES ☐ No |

| NAME OF PARTY (e.g., John Doe, Plaintiff)<br>Harold Hoffman, Plaintiff | CAPTION<br>Harold HOFFMAN v. TIME WARNER CABLE, INC. |
|---|---|
| CASE TYPE NUMBER (See reverse side for listing)<br>699 | IS THIS A PROFESSIONAL MALPRACTICE CASE? ☐ YES ■ NO<br>IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
| RELATED CASES PENDING?<br>☐ YES ■ No | IF YES, LIST DOCKET NUMBERS |
| DO YOU ANTICIPATE ADDING ANY PARTIES<br>(arising out of same transaction or occurrence)?<br>☐ YES ■ No | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known) ☐ NONE<br>■ UNKNOWN |

THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR<br>RECURRENT RELATIONSHIP?<br>■ YES ☐ No | IF YES, IS THAT RELATIONSHIP?<br>☐ EMPLOYER/EMPLOYEE ☐ FRIEND/NEIGHBOR ☐ OTHER (explain)<br>☐ FAMILIAL ■ BUSINESS |
|---|---|

DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? ■ YES ☐ No

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>☐ YES ■ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|
| WILL AN INTERPRETER BE NEEDED?<br>☐ YES ■ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE: *PCC*



**Side 2**

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I - 150 days' discovery**
151 NAME CHANGE
175 FORFEITURE
302 TENANCY
399 REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
502 BOOK ACCOUNT (debt collection matters only)
505 OTHER INSURANCE CLAIM (including declaratory judgment actions)
506 PIP COVERAGE
510 UM or UIM CLAIM (coverage issues only)
511 ACTION ON NEGOTIABLE INSTRUMENT
512 LEMON LAW
801 SUMMARY ACTION
802 OPEN PUBLIC RECORDS ACT (summary action)
999 OTHER (briefly describe nature of action)

**Track II - 300 days' discovery**
305 CONSTRUCTION
509 EMPLOYMENT (other than CEPA or LAD)
599 CONTRACT/COMMERCIAL TRANSACTION
603N AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
603Y AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
605 PERSONAL INJURY
610 AUTO NEGLIGENCE – PROPERTY DAMAGE
621 UM or UIM CLAIM (includes bodily injury)
699 TORT – OTHER

**Track III - 450 days' discovery**
005 CIVIL RIGHTS
301 CONDEMNATION
602 ASSAULT AND BATTERY
604 MEDICAL MALPRACTICE
606 PRODUCT LIABILITY
607 PROFESSIONAL MALPRACTICE
608 TOXIC TORT
609 DEFAMATION
616 WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
617 INVERSE CONDEMNATION
618 LAW AGAINST DISCRIMINATION (LAD) CASES

**Track IV - Active Case Management by Individual Judge / 450 days' discovery**
156 ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
303 MT. LAUREL
508 COMPLEX COMMERCIAL
513 COMPLEX CONSTRUCTION
514 INSURANCE FRAUD
620 FALSE CLAIMS ACT
701 ACTIONS IN LIEU OF PREROGATIVE WRITS

**Centrally Managed Litigation (Track IV)**
280 ZELNORM
285 STRYKER TRIDENT HIP IMPLANTS
288 PRUDENTIAL TORT LITIGATION
289 REGLAN

290 POMPTON LAKES ENVIRONMENTAL LITIGATION
291 PELVIC MESH/GYNECARE
292 PELVIC MESH/BARD
293 DEPUY ASR HIP IMPLANT LITIGATION

**Mass Tort (Track IV)**
248 CIBA GEIGY
266 HORMONE REPLACEMENT THERAPY (HRT)
271 ACCUTANE/ISOTRETINOIN
274 RISPERDAL/SEROQUEL/ZYPREXA
278 ZOMETA/AREDIA
279 GADOLINIUM

281 BRISTOL-MYERS SQUIBB ENVIRONMENTAL
282 FOSAMAX
284 NUVARING
286 LEVAQUIN
287 YAZ/YASMIN/OCELLA
601 ASBESTOS

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics.

**Please check off each applicable category**   ☒ **Putative Class Action**   ☐ **Title 59**

```
BERGEN COUNTY COURTHOUSE
SUPERIOR COURT LAW DIV
BERGEN COUNTY JUSTICE CTR RM 415
HACKENSACK        NJ 07601-7680
                                        TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (201) 527-2600
COURT HOURS
```

```
                        DATE:  JANUARY 20, 2012
                        RE:    HOFFMAN VS TIME WARNER CABLE INC
                        DOCKET: BER L -000665 12
```

THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 2.

    DISCOVERY IS   300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

    THE PRETRIAL JUDGE ASSIGNED IS:  HON KENNETH J. SLOMIENSKI

    IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      003
AT:  (201) 527-2600.

    IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
    PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                        ATTENTION:

                        ATT: PHILIP C. CHRONAKIS
                        CHRONAKIS SIACHOS LLC
                        50 HARRISON ST STE 304
                        HOBOKEN         NJ 07030

JUBLE00
```

# Exhibit C

Wolff & Samson PC
One Boland Drive
West Orange, NJ 07052
(973) 325-1500
Attorneys for Defendant Time Warner Cable Inc.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

HAROLD M. HOFFMAN, individually and on behalf of
those similarly situated,

Plaintiff,

- *against* -

TIME WARNER CABLE INC.,

Defendant.

Civil Action:

## DECLARATION OF MICHAEL ANGUS IN SUPPORT OF
## DEFENDANT TIME WARNER CABLE, INC.'s NOTICE OF REMOVAL

I, Michael Angus, declare as follows:

1.     I serve as Senior Vice President for Video Services at Time Warner Cable Inc.

("TWC"), a provider of cable television services.  I make this declaration to put before the Court

certain factual information for purposes of supporting the Notice of Removal filed concurrently

herewith by TWC.  I am fully familiar with the facts set forth herein and make this declaration

based upon my personal knowledge.

2.     TWC is incorporated in Delaware with its principal place of business in New

York, New York.

3.      Until recently, TWC had distributed the MSG and MSG+ networks (the "MSG
Networks") over TWC's cable systems to approximately 2.4 million subscribers in New Jersey,
New York and Pennsylvania.

4.      The agreement between TWC and Madison Square Garden, L.P. ("MSG") that
authorized this distribution contains a confidentiality provision prohibiting public disclosure of
the per-subscriber fees paid by TWC to MSG.

5.      I can state, however, that as of December 2011, TWC paid far in excess of $5
million per month to MSG for the right to carry the MSG Networks on TWC's cable systems.

6.      As publicly reported by TWC, for the quarter ended December 31, 2011, TWC's
average monthly revenue per residential video subscriber was $73.56.

7.      TWC is no longer distributing the MSG Networks to its subscribers and has
ceased paying fees to MSG.


        I declare under penalty of perjury under the laws of the United States of America
that the foregoing is true and correct and that this declaration was executed on the 16 day of
February 2012 at New York, New York.

_____
Michael Angus