UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

HAROLD M. HOFFMAN, individually and on behalf of those similarly situated,

                              Plaintiff,

- against -

TIME WARNER CABLE INC.,

                             Defendant.

Civil Action: 2:12-cv-00978-ES-CLW

**ORAL ARGUMENT REQUESTED**
**MOTION DATE: APRIL 2, 2012**

DOCUMENT ELECTRONICALLY FILED

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TIME WARNER CABLE INC.'S MOTION TO DISMISS

William E. Goydan
Mindy P. Fox
Wolff & Samson PC
One Boland Drive
West Orange, New Jersey 07052
(973) 325-1500

Jonathan D. Thier (*pro hac vice* pending)
Brian T. Markley (*pro hac vice* pending)
John A. Eakins (*pro hac vice* pending)
Cahill Gordon & Reindel LLP
80 Pine Street
New York, New York 10005
(212) 701-3000

*Attorneys for Time Warner Cable Inc.*

March 9, 2012

# **TABLE OF CONTENTS**

Preliminary Statement ........................................................................................................... 1

Allegations of the Complaint ................................................................................................ 3

Argument ............................................................................................................................... 5

I. The Complaint Fails To State A Claim Under The NJCFA ................................. 6

    A. The Complaint Fails To Identify Any Unlawful Conduct ..................................... 6

    B. The Complaint Does Not Sufficiently Allege An Ascertainable Loss ................. 9

    C. Plaintiff Cannot Demonstrate Any Causal Link Between His Alleged Loss And Defendant's Alleged Conduct ................................ 12

II. The Complaint Should Be Dismissed With Prejudice ........................................ 14

Conclusion ........................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Arcand* v. *Brother International Corp.*, 673 F. Supp. 2d 282 (D.N.J. 2009) ................ 7, 7n, 10, 12

*Ashcroft* v. *Iqbal*, 556 U.S. 662 (2009) ................................................................... 5, 9

*Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544 (2007) ...................................................... 5

*Benak* v. *Alliance Capital Management, L.P.*, 349 F. Supp. 2d 882 (D.N.J. 2004), *aff'd*, 435 F.3d 396 (3d Cir. 2006) ................................................................................. 1n

*California Public Employees' Retirement System* v. *Chubb Corp.*, 394 F.3d 126 (3d Cir. 2004) ..................................................................................................... 14

*Cox* v. *Sears Roebuck & Co.*, 647 A.2d 454 (N.J. 1994) ................................................. 7

*Dewey* v. *Volkswagen AG*, 558 F. Supp. 2d 505 (D.N.J. 2008) ......................................... 8

*Fink* v. *Ricoh Corp.*, 839 A.2d 942 (N.J. Super. Ct. Law Div. 2003) .................................. 13

*Franulovic* v. *Coca-Cola Co.*, 2007 WL 3166953 (D.N.J. Oct. 25, 2007) ............................. 10

*Frederico* v. *Home Depot*, 507 F.3d 188 (3d Cir. 2007) .......................................... 5, 6, 7, 8

*Glass* v. *BMW of North America, LLC,* 2011 WL 6887721 (D.N.J. Dec. 29, 2011) ............. passim

*Green* v. *Green Mountain Coffee Roasters, Inc.*, 2011 WL 6372617 (D.N.J. Dec. 20, 2011) ...................................................................................................... 11

*Hoffman* v. *AsSeenOnTv.com, Inc.*, 962 A.2d 532 (N.J. Super. Ct. App. Div. 2009) ............. 2, 10

*Hoffman* v. *Hampshire Labs, Inc.*, 963 A.2d 849 (N.J. Super. Ct. App. Div. 2009) ...................... 2

*Hoffman* v. *Macy's, Inc.*, 2011 WL 6585 (N.J. Super. Ct. App. Div. June 28, 2010), *cert. denied*, 6 A.3d 441 (N.J. 2010) ............................................................................. 2

*Hoffman* v. *Palo Alto Laboratories, Inc.*, 2009 WL 62947 (N.J. Super. Ct. App. Div. Jan. 12, 2009) ....................................................................................................... 2

*Holiday Village East Home Owners Ass'n, Inc.* v. *QBE INS Corp.*, 2011 WL 6322978 (D.N.J. Dec. 19, 2011) ..................................................................................... 13n

*Hughes* v. *Panasonic Consumer Electronics Co.*, 2011 WL 2976839 (D.N.J. July 21, 2011) .................................................................................................................. 8, 9, 11

*Kalow & Springnut, LLP* v. *Commence Corp.*, 2008 WL 2557506 (D.N.J. June 23, 2008) ......................................................................................................................... 8, 9

*Knapp* v. *Potamkin Motors Corp.*, 602 A.2d 302 (N.J. Super. Ct. Law Div. 1991) ..................... 13

*Lieberson* v. *Johnson & Johnson Consumer Cos., Inc.*, 2011 WL 4414214 (D.N.J. Sept. 21, 2011) ............................................................................................................... 11

*Lum* v. *Bank of America*, 361 F.3d 217 (3d Cir. 2004) ......................................................... 6, 8, 13n

*Luppino* v. *Mercedes-Benz USA, LLC*, 2011 WL 2470625 (D.N.J. June 20, 2011) ..................... 12

*Mann* v. *TD Bank, N.A.*, 2010 WL 4226526 (D.N.J. Oct. 20, 2010) ............................................ 10

*Mason* v. *Coca-Cola Co.*, 774 F. Supp. 2d 699 (D.N.J. 2011) ...................................................... 11

*Naporano Iron & Metal Co.* v. *American Crane Corp.*, 79 F. Supp. 2d 494 (D.N.J. 1999) .......... 6

*Payan* v. *Greenpoint Mortgage Funding*, 681 F. Supp. 2d 564 (D.N.J. 2010) .......................... 3, 6

*Solo* v. *Bed Bath & Beyond, Inc.*, 2007 WL 1237825 (D.N.J. Apr. 26, 2007) .............................. 10

*Thiedemann* v. *Mercedes-Benz USA, LLC*, 872 A.2d 783 (N.J. 2005) ...................................... 9, 10

*Torres-Hernandez* v. *CVT Prepaid Solutions, Inc.,* 2008 WL 5381227 (D.N.J. Dec. 17, 2008) ......................................................................................................................... 6, 8

*Zebersky* v. *Bed Bath & Beyond, Inc.*, 2006 WL 3454993 (D.N.J. Nov. 29, 2006) ...................... 13

**<u>Rules</u>**

Fed. R. Civ. P. 9(b) .......................................................................................................................... 5, 6

Fed. R. Civ. P. 12(b)(6) ..................................................................................................................... 5

## **Statutes**

New Jersey Consumer Fraud Act., N.J. Stat. Ann. § 56:8-1 *et. seq.* (Thomson Reuters 2012) ................................................................................................................................ passim

N.J. Stat. Ann. § 56: 8-2 (Thomson Reuters 2012) ..................................................................... 6, 7

## **Other Authorities**

Editorial, *Consumers Buy Goods, Not Lawsuits*, N.J.L.J., May 23, 2011, at 22 ........................... 2n

Richard Sandomir, *MSG and Time Warner Face Off*, N.Y. Times, Dec. 17, 2011, at D4 ....... 1, 13

*Time Warner Cable Pulls Plug on MSG*, Star-Ledger, Jan. 2, 2012 ........................................ 1, 13

*Time Warner Subscribers Face Cutoff of MSG*, Herald News (West Paterson, N.J.), Dec. 31, 2011 ................................................................................................................... 1, 13

Time Warner Cable Inc. ("TWC") respectfully submits this Memorandum of Law in support of its Motion to Dismiss.

## PRELIMINARY STATEMENT

Plaintiff Harold Hoffman ("Hoffman"), who purports to serve both as class counsel and class representative, is a subscriber to TWC's video services. After TWC's rights to carry two affiliated regional sports networks, the MSG and MSG+ networks (collectively the "MSG Networks"), expired in early January 2012, Hoffman filed this action alleging consumer fraud. New Jersey and national media had prominently reported in late 2011 and early 2012 that TWC would not be able to offer the MSG Networks' programming to its subscribers when TWC's right to distribute those networks expired on January 1, 2012. *See, e.g., Time Warner Cable Pulls Plug on MSG*, Star-Ledger, Jan. 2, 2012; *Time Warner Subscribers Face Cutoff of MSG*, Herald News (West Paterson, N.J.), Dec. 31, 2011; Richard Sandomir, *MSG and Time Warner Face Off*, N.Y. Times, Dec. 17, 2011, at D4.[1] After TWC's carriage rights expired, the networks were unavailable on TWC's cable systems for 49 days until February 19, 2012, at which point a new agreement was reached with the MSG Networks' owner, and TWC was permitted once again to carry the MSG Networks.

Hoffman filed his complaint on January 19, 2012 (the "Complaint") in the Superior Court of New Jersey. TWC removed the action to this Court on February 17, 2012. *See* Dkt. #1. The Complaint alleges, on behalf of a purported class of TWC subscribers, that TWC violated the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1 *et. seq.*, through unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentation, knowing concealment, suppression, and omission of material facts. *See* Compl. ¶¶ 22–36. The crux of the NJCFA claims, reading them generously, is that TWC allegedly "promised" and "represented"

---

[1] The Court may take judicial notice of these publicly available articles to demonstrate that Plaintiff was on notice of the relevant public information. *Benak* v. *Alliance Capital Management, L.P.*, 349 F. Supp. 2d 882, 888 n.8 (D.N.J. 2004), *aff'd* 435 F.3d 396 (3d Cir. 2006).

that it would provide the MSG Networks to its subscribers—though the Complaint does not allege any particular statement, promise or representation by TWC to that effect—and that Plaintiff suffered a loss (again not specified) because he could no longer watch the MSG Networks' programming through his TWC video subscription.

Hoffman is a serial plaintiff with a history of bringing claims under the NJCFA. *See, e.g., Hoffman* v. *AsSeenOnTv.com, Inc.*, 962 A.2d 532, 542 (N.J. Super. Ct. App. Div. 2009) (observing that Hoffman had filed "over 40 purported class-action, consumer fraud lawsuits in Bergen County") (emphasis added) (internal quotation marks omitted). In this case, as in others he has filed, Hoffman's claims are utterly devoid of any of the predicate factual allegations to sustain a cause of action under the NJCFA. *See, e.g., Hoffman* v. *Hampshire Labs, Inc.*, 963 A.2d 849, 854 (N.J. Super. Ct. App. Div. 2009) (affirming dismissal of NJCFA claims because "Plaintiff's allegations, however, are merely statements of a legal conclusion"); *Hoffman* v. *AsSeenOnTv.com, Inc.*, 962 A.2d at 538; *Hoffman* v. *Palo Alto Laboratories, Inc.*, 2009 WL 62947, at *2, *5 (N.J. Super. Ct. App. Div. Jan. 12, 2009) (affirming dismissal of NJCFA of claims with prejudice); *Hoffman* v. *Macy's, Inc.*, 2011 WL 6585, at *4 (N.J. Super. Ct. App. Div. June 28, 2010) (affirming dismissal of NJCFA claims for failure to state an ascertainable loss), *cert. denied*, 6 A.3d 441 (N.J. 2010). Indeed, rather than making specific, concrete allegations to establish the requisite elements of an NJCFA claim, Hoffman's Complaint merely recites legal conclusions that, as a frequent litigator of NJCFA claims, he should know are wholly insufficient to state a claim.[2]

---

[2] It has been stated in press reports that Hoffman generates NJCFA claims by seeking out products and services to purchase for the sole purpose of bringing an NJCFA class action, without any intention of ever using the product. Editorial, *Consumers Buy Goods, Not Lawsuits*, N.J.L.J., May 23, 2011, at 22 ("[Hoffman] was buying what he thought to be a simple and lucrative lawsuit."). Similarly here, Hoffman could have simply cancelled his TWC subscription to avoid any alleged loss when he learned that TWC could no longer carry the MSG Networks. Hoffman's tactics in bringing these types of NJCFA claims have been criticized, with the New Jersey Law Journal editorial board urging the New Jersey Supreme Court or legislature to clarify that the NJCFA is only available to "people who have been actually victimized," rather than providing "business for opportunistic intermeddlers," with reference to Hoffman, "who deliberately create their own victimhood." *Id.* at 22.

Specifically, the Complaint lacks factual allegations sufficient to plead all three elements of an NJCFA claim, *i.e.* "(1) unlawful conduct by the defendant; (2) an ascertainable loss by plaintiff; and (3) a causal connection between the defendant's unlawful practice and the plaintiff's ascertainable loss." *Glass* v. *BMW of North America, LLC*, 2011 WL 6887721, at *3 (D.N.J. Dec. 29, 2011) (citing *Payan* v. *Greenpoint Mortgage Funding*, 681 F. Supp. 2d 564, 572 (D.N.J. 2010)). Of these elements, perhaps most notably, Hoffman fails to allege any specific *statement, promise or representation* made by TWC that it would provide the MSG Networks to its subscribers for any set duration, much less in perpetuity. If such a contractual undertaking had been made by TWC, one would suppose that Hoffman would assert a claim under the subscriber agreement and terms of service that govern his use of TWC's video services. Of course, no such claim is alleged. As logic dictates, TWC cannot and would not promise that it could provide any particular network or programming as part of its video services in perpetuity. TWC can only provide its video subscribers with networks and programming that it has the right to distribute based upon carriage agreements with programming providers. Simply put, the reason Hoffman has not identified any statement made by TWC promising to provide the MSG Networks is that there is none. For the reasons set forth below, the Complaint should be dismissed with prejudice.

## ALLEGATIONS OF THE COMPLAINT

The Complaint purports to plead five separate counts of violations of the NJCFA alleged, respectively, as unconscionable commercial practices (Compl. ¶ 23), deception (Compl. ¶ 26), fraud (Compl. ¶ 29), false pretense, false promise, and misrepresentation (Compl. ¶ 32), and knowing concealment, suppression, and omission of material facts with the intent that others rely upon such concealment, suppression, and omission in connection with the sale or advertisement of any merchandise (Compl. ¶ 35). All five counts rely upon and reallege the same facts, which are summarized below.

Hoffman subscribed to TWC's video services. Compl. ¶ 1. He alleges that TWC provided him, for many years, with video services "that promised to deliver, in superior broadcast video quality, a variety of programming, including sports programming broadcast on the MSG and MSG+ networks." Compl. ¶ 4. Plaintiff further alleges that TWC "affirmatively induced" him to subscribe to its video services "through affirmative promises and representations by defendant that subscribers would receive sports programming broadcast on the MSG and MSG+ networks," and that a "highly material selling ingredient" of TWC's video services and a "highly material component of the monthly charges assessed by Defendant for its services, was the affirmatively promised delivery of the sporting events and games broadcast on the MSG and MSG+ networks." Compl. ¶¶ 5, 7.

Apparently attempting to plead unlawful conduct, Hoffman alleges that TWC's "affirmative promises and representations" that he would receive MSG Networks' programming are false and that he "made decisions with respect to [his] cable television services, and the fees paid to Defendant therefor, based upon defendant's false affirmative promises and representations." Compl. ¶¶ 10–11. Plaintiff next alleges that TWC's "promises and representations" to him that he would "be provided by Defendant with programming broadcast on the MSG and MSG+ networks . . . constitute a deception; a misrepresentation; an unconscionable trade practice; a sharp and deceitful marketplace practice, [sic] and a false promise," which allegedly "result in consumers being subjected to misrepresentation, false promise, fraud, deceit, trickery and false and deceptive business practices," and that TWC "has made affirmative misrepresentations in connection with the marketing and sale of its cable television services." Compl. ¶¶ 13–15. Hoffman also alleges that after TWC was no longer able to provide the MSG Networks, "Defendant continued to assess and collect the same monthly charge," though TWC ceased paying carriage fees for the MSG Networks and that this "financial gain has not been shared with Defendant's subscribers who have suffered a significant downgrade in the breadth of cable television broadcast services promised and previously provided by Defendant . . . ." Compl. ¶¶ 9, 12.

To plead an ascertainable loss, Plaintiff alleges that he suffered an ascertainable loss "in the form of out of pocket loss as a result of Defendant's unlawful conduct as aforesaid," because he "continue[s] to pay hard earned money for delivery of promised cable television programming, which is not being provided," and also pleads that he "received a product/service less than and different from that promised." Compl. ¶ 16–17. Plaintiff also alleges an ascertainable loss of the "the benefit-of-the-bargain represented by Defendant – the difference between the price paid by the consumer-subscriber to Defendant's product/service and the product/service promised . . . ." Compl. ¶ 18.

Finally, as it relates to the causal connection element of an NJCFA claim, Plaintiff alleges that "there is a direct causal relationship between Defendant's misrepresentations as to the scope of cable television services promised to its subscribers and the loss suffered by Plaintiff . . . ." Compl. ¶ 18. Additionally, in each of the five counts, Plaintiff alleges that TWC's conduct proximately cause his damage. *See* Compl. ¶¶ 24, 27, 30, 33, 36.

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

As this Court has held in actions alleging violations of the NJCFA, a plaintiff must also satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b) by "'stat[ing] the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged,'" in order to survive a motion to dismiss. *Glass* v. *BMW of North America, LLC*, 2011 WL 6887721, at *4 (D.N.J. Dec. 29, 2011) (quoting *Frederico* v. *Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)); *see* Fed. R. Civ. P. 12(b)(6). Rule

9(b), of course, requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b)'s purpose is to provide defendants with notice of the precise misconduct that is alleged and to protect defendants' reputations by safeguarding them against spurious allegations of immoral and fraudulent behavior." *Naporano Iron & Metal Co.* v. *American Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 1999). "'To satisfy this heightened standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Glass* v. *BMW*, 2011 WL 6887721, at *4 (quoting *Frederico*, 507 F.3d at 200). "'Plaintiff must also allege who made the misrepresentation to whom and the general content of the misrepresentation.'" *Glass* v. *BMW*, 2011 WL 6887721, at *4 (quoting *Lum* v. *Bank of America*, 361 F.3d 217, 224 (3d Cir. 2004)); *see Naporano Iron & Metal Co.*, 79 F. Supp. 2d at 512 (dismissing complaint under Rule 9(b) for failure "to inform defendants of the substance of these alleged misrepresentations").

As demonstrated below, Plaintiff plainly cannot satisfy these exacting standards.

### I.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE NJCFA

It is well-settled in this Court that "[t]o establish a *prima facie* case under the NJCFA, a plaintiff must allege: (1) unlawful conduct by the defendant; (2) an ascertainable loss by plaintiff; and (3) a causal connection between the defendant's unlawful practice and the plaintiff's ascertainable loss." *Glass* v. *BMW*, 2011 WL 6887721, at *3 (citing *Payan* v. *Greenpoint Mortgage Funding*, 681 F. Supp. 2d 564, 572 (D.N.J. 2010)). Rule 9(b)'s "heightened pleading standard applies to all three prongs of an NJCFA claim." *Torres-Hernandez* v. *CVT Prepaid Solutions, Inc.*, 2008 WL 5381227, at *6 (D.N.J. Dec. 17, 2008).

#### A.   The Complaint Fails To Identify Any Unlawful Conduct

This Court is familiar with the elements of an NJCFA claim. *See Glass*, 2011 WL 6887721, at *3–*13. First, the NJCFA defines unlawful conduct as:

-6-

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . . .

N.J.S.A. § 56:8-2. Unlawful conduct "'fall[s] into one of three general categories: affirmative acts, knowing omissions, and regulatory violations.'" *Glass* v. *BMW*, 2011 WL 6887721, at *4 (quoting *Frederico*, 507 F.3d at 202).[3] "The 'prime ingredient' underlying all types of unlawful conduct is '[its] capacity to mislead.'" *Glass* v. *BMW*, 2011 WL 6887721, at *4 (quoting *Arcand* v. *Brother International Corp.*, 673 F. Supp. 2d 282, 296 (D.N.J. 2009) (additional quotations omitted). "'Importantly, *the conduct*, whether it be an omission or active misrepresentation, *must be made in connection with the sale or advertisement* of a product or service.'" *Glass* v. *BMW*, 2011 WL 6887721, at *4 (quoting *Arcand*, 673 F. Supp. 2d at 296) (emphasis in original).

"[A]llegations of an affirmative act, *i.e.*, a misrepresentation, do not require a showing of intent or even actual deceit or fraud." *Glass* v. *BMW*, 2011 WL 6887721, at *5 (citing *Cox* v. *Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994)). While affirmative acts require no showing of intent, "[a]n omission, on the other hand, 'occurs where the defendant (1) knowingly concealed (2) a material fact (3) with the intention that the consumer rely upon the concealment.'" *Glass* v. *BMW*, 2011 WL 6887721, at *5 (quoting *Arcand*, 673 F. Supp. 2d at 297). "Implicit in the showing of an omission is the underlying duty on the part of the defendant to disclose what he concealed to induce the purchase." *Arcand*, 673 F. Supp. 2d at 297. "'Obviously, there can be no [unlawful conduct], or reliance for that matter, if the defendant was under no obligation to disclose the information in the first place." *Glass* v. *BMW*, 2011 WL 6887721, at *5 (quoting *Arcand*, 673 F. Supp. 2d at 297). It is impossible to discern based upon the scant factual allega-

---

[3] "[T]o fall within the third category of unlawful acts, it is clear that a plaintiff must allege 'violations of specific regulations promulgated under the Act.'" *Arcand* v. *Brother International Corp.*, 2010 WL 3907333, at *12 (D.N.J. Sept. 29, 2010) (quoting *Cox* v. *Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994)). The Complaint includes no allegation that TWC violated any regulation. Therefore, this category cannot provide the basis for an unlawful act.

tions in the Complaint whether Hoffman alleges affirmative acts or omissions. But under either theory, Plaintiff's Complaint fails to provide anywhere near the detail required to state a claim.

To properly allege an affirmative act, a complaint must allege a specific misrepresentation and "the date, time, and place" of such misrepresentation. *Glass* v. *BMW*, 2011 WL 6887721, at *4 ("'[T]he plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject some measure of substantiation into a fraud allegation.'") (quoting *Frederico*, 507 F.3d at 200). Moreover, the Plaintiff must plead the "'general content of the misrepresentation.'" *Glass* v. *BMW*, 2011 WL 6887721, at *4 (quoting *Lum* v. *Bank of America*, 361 F.3d at 224). As this Court has held, plaintiffs must "allege the specific advertisements, marketing materials, warranties or product guides that they each reviewed, which included this misrepresentation and when it was advertised.'" *Glass* v. *BMW*, 2011 WL 6887721, at *7 (quoting *Hughes* v. *Panasonic Consumer Electronics Co.*, 2011 WL 2976839, at *13 (D.N.J. July 21, 2011)). Plaintiffs' failure to allege the necessary details required by Rule 9(b) regarding the alleged misstatement has frequently provided a basis for dismissal. *See, e.g.*, *Glass* v. *BMW*, 2011 WL 6887721, at *7; *Dewey* v. *Volkswagen AG*, 558 F. Supp. 2d 505, 526 (D.N.J. 2008); *Hughes*, 2011 WL 2976839, at *13; *Torres-Hernandez* v. *CVT Prepaid Solutions, Inc.*, 2008 WL 5381227, at *6 (D.N.J. Dec. 17, 2008); *Kalow & Springnut, LLP* v. *Commence Corp.*, 2008 WL 2557506, at *5 (D.N.J. June 23, 2008).

Here the Complaint never alleges *any identifiable statement, promise or representation* made by TWC, much less a specific misstatement or the necessary details of such a misstatement. The Complaint repeatedly makes conclusory allegations that TWC "promised" or "represented" that it would provide certain services, but never alleges any actual, specific statements to that effect. Compl. ¶¶ 4, 5, 7, 10, 11, 13, 14, 15 16, 17, 18, 19. While the Complaint broadly asserts that "Defendant has made affirmative misrepresentations in connection with the marketing and sale of its cable television services," (Compl. ¶ 15), there is simply no indication what those statements were. Similarly, Plaintiff includes boiler-plate allegations that "Defendant's

false representations to Plaintiff and member of the putative class result in consumers being subjected to misrepresentation, false promise, fraud, deceit, trickery and false and deceptive business practices," without ever explaining the what, where and when regarding the allegedly false representation. Compl. ¶ 14. The Complaint is thus a model of "[t]hreadbare recitals of the elements of a cause of action," *Iqbal*, 129 S. Ct. at 1949, that are insufficient to sustain a pleading under Rule 8, much less the heightened pleading standards of Rule 9(b). *Id.*

Similarly, Plaintiff has made no attempt to identify (nor can he) any omission by TWC that would give rise to liability. The Complaint fails to allege *any* of the three elements necessary to plead an omission: (1) that TWC knowingly concealed (2) a material fact (3) with the intent that consumers rely upon such material fact. *Glass* v. *BMW*, 2011 WL 6887721, at *4. "While the heightened pleading standard of Rule 9(b) allows essential elements of the omission under the NJCFA, such as intent, to be alleged generally, such elements need *to be alleged*." *Kalow & Springnut, LLP* v. *Commence Corp.*, 2008 WL 2557506, at *4 (D.N.J. June 23, 2008) (emphasis in original). Without identifying what fact TWC allegedly omitted, Plaintiff obviously fails to establish that fact's materiality or that TWC knowingly concealed such a fact with the intent that consumers rely upon it. Simply put, there can be no omission where Plaintiff fails to identify what fact was omitted.

## B. The Complaint Does Not Sufficiently Allege An Ascertainable Loss

Nor does Plaintiff properly allege "ascertainable loss," the next element necessary to state a claim. *Glass* v. *BMW*, 2011 WL 6887721, at *10. "'To give effect to the legislative language describing the requisite loss for private standing under the [NJ]CFA, . . . a private plaintiff must produce evidence that a fact finder could find or infer that the plaintiff suffered an *actual* loss.'" *Glass*, 2011 WL 6887721, at *10 (quoting *Thiedemann* v. *Mercedes-Benz USA, LLC*, 872 A.2d 783, 792 (N.J. 2005)) (emphasis added). A "plaintiff must suffer a definite, certain and measurable loss, rather than one that is merely theoretical." *Hughes*, 2011 WL 2976839, at *15 (citation

and internal quotation marks omitted). Moreover, "the certainty implicit in the concept of an 'ascertainable loss' is that it is quantifiable or measureable." *Id.* (citation and internal quotation marks omitted). For example, "[w]hen pleading a benefit-of-the-bargain loss, the plaintiff must allege the difference between the [product] she received and the [product] as represented at purchase." *Arcand*, 673 F. Supp. 2d at 300 (citation and internal quotation marks omitted). "Simply asserting that a seller harmed consumers by tricking them into purchasing misrepresented products is insufficient to satisfy the NJCFA's ascertainable-loss requirement." *Mann* v. *TD Bank, N.A.*, 2010 WL 4226526, at *6 (D.N.J. Oct. 20, 2010) (citing *Hoffman* v. *AsSeenOnTv.Com, Inc.*, 962 A.2d 532, 538 (N.J. Super. Ct. App. Div. 2009)). Instead, "Plaintiffs must provide some evidence of the *quantity* and nature of the alleged loss-in-value; otherwise the purported loss is not 'real' and 'capable of calculation.'" *Id.* (quoting *Thiedemann*, 872 A.2d at 792–93) (emphasis added).

   While Plaintiff includes the words "ascertainable loss" (Compl. ¶¶ 16–17), "out of pocket loss" (Compl. ¶ 16), and "benefit-of-the-bargain" (Compl. ¶18) in his Complaint, these bald assertions fall well short of what is required to establish an ascertainable loss under the NJCFA. *See, e.g.*, *Franulovic* v. *Coca-Cola Co.*, 2007 WL 3166953, at *8–*9 (D.N.J. Oct. 25, 2007) (holding that "conclusory statement that [plaintiff] and other consumers have suffered an 'ascertainable loss' is insufficient," and dismissing an NJCFA claim where the plaintiff "actually received a beverage for her money, and [did] not allege[] how the purchase of that beverage constituted a specific loss"); *Solo* v. *Bed Bath & Beyond, Inc.*, 2007 WL 1237825, at *3 (D.N.J. Apr. 26, 2007) (granting motion to dismiss NJCFA claim where the plaintiff failed to allege that "the sheets he received were worth an amount of money less than the sheets he was promised, or that he experienced a measurable out-of-pocket loss because of his purchase").

   Nowhere does Plaintiff allege, as he must to state a claim, just what quantifiable loss he—and the members of his disparate putative class—suffered as a result of losing the MSG Networks for 49 days. Instead, the Complaint includes vague allegations that Hoffman suffered

an ascertainable loss "in the form of out of pocket loss as a result of Defendant's unlawful conduct as aforesaid" when he "received a product/service less than and different from that promised by Defendant," and that he "lost the benefit-of-the-bargain" represented by "the difference between the price paid by the consumer-subscriber to Defendant's product/service and the product/service promised by Defendant." Compl. ¶¶ 16–18.

Plaintiff's allegations therefore lack the foundational predicate to establish that there is a "certain and measurable loss," *Hughes*, 2011 WL 2976839, at *15, that "is quantifiable or measureable." *Id.* (citation and internal quotation marks omitted). Among other things, Plaintiff never states how much he paid for his video subscription, much less does he attempt to quantify the loss he allegedly suffered. *See Green* v. *Green Mountain Coffee Roasters, Inc.*, 2011 WL 6372617 at *6 (D.N.J. Dec. 20, 2011) (holding that an ascertainable loss was insufficiently stated where there was no allegation regarding the purchase price of the allegedly defective product). Nor does Plaintiff specify that he paid a premium to TWC over comparable services in order to access the MSG Networks. *See Lieberson* v. *Johnson & Johnson Consumer Cos., Inc.*, 2011 WL 4414214, at *8 (D.N.J. Sept. 21, 2011) (dismissing a complaint for lack of a sufficiently alleged ascertainable loss where "although Plaintiff alleges that comparable products cost twenty five percent less than the J & J products, Plaintiff has not alleged the identity or the cost of any allegedly comparable products"). Plaintiff's alleged "loss" of the ability to watch the Knicks, Rangers and other sports teams is a highly speculative and ultimately unquantifiable loss for which the NJCFA does not permit recovery. *See Mason* v. *Coca-Cola Co.*, 774 F. Supp. 2d 699, 704 (D.N.J. 2011) ("At most, plaintiffs simply claim that their expectations of the soda were disappointed. Dissatisfaction with a product, however, is not a quantifiable loss that can be remedied under the NJCFA."). Put simply, Plaintiff's general dissatisfaction at the loss of the MSG Networks is not, standing alone, an "ascertainable loss" recoverable under the NJCFA.

### C. Plaintiff Cannot Demonstrate Any Causal Link Between His Alleged Loss And Defendant's Alleged Conduct

Finally, Plaintiff fails to allege a causal relationship between the alleged ascertainable loss and TWC's alleged misconduct. *See Glass* v. *BMW*, 2011 WL 6887721, at *11 ("'In order to properly plead this element, plaintiffs must allege facts establishing a causal nexus with the particularity required by Rule 9(b).'") (quoting *Arcand*, 673 F. Supp. 2d at 303). This Court has observed that to establish a causal nexus, it is "'critical that a plaintiff allege when misstatements were made and at what point a plaintiff was exposed to one or more of those statements.'" *Glass* v. *BMW*, 2011 WL 6887721, at *11 (quoting *Luppino* v. *Mercedes-Benz USA, LLC*, 2011 WL 2470625, at *3 (D.N.J. June 20, 2011)). The law is well-settled that causation is not to be presumed and that the causal nexus requirement of the NJCFA cannot be satisfied by "general and vague terms." *Glass* v. *BMW*, 2011 WL 6887721, at *12.

Again, the Complaint parrots the language of the statute in the most general and vague terms by stating simply that "there is a direct causal relationship between the Defendant's misrepresentations as to the scope of cable television services promised to its subscribers and the loss suffered by Plaintiff and class members," yet never connects the dots to explain how that is the case. Compl. ¶ 19. Additionally, Plaintiff includes insufficient boiler-plate allegations that "[a]s a proximate result of Defendant's conduct, Plaintiff and members of the class were damaged." *See* Compl. ¶¶ 24, 27, 30, 33, 36. In this respect, the allegations of causation in Plaintiff's Complaint are similar to the conclusory allegations that this Court recently held to be insufficient in *Glass*. *See Glass* v. *BMW*, 2011 WL 6887721, at *12 (holding that broad allegation that plaintiff "reasonably relied upon and believed" alleged misrepresentations were insufficient to state a causal nexus). This Court reasoned that the allegations in *Glass* failed to sufficiently state a causal nexus because "Plaintiff does not allege with specificity when the statements were made, or articulate at what point—if ever—she was exposed to the advertisements or the statement on BMW NA's website." *Glass* v. *BMW*, 2011 WL 6887721, at *12.

Additionally, to establish a causal nexus, Plaintiff must demonstrate "'proof that the prohibited act must in fact have misled, deceived, induced or persuaded the plaintiff to purchase defendant's product or service.'" *Zebersky* v. *Bed Bath & Beyond, Inc.*, 2006 WL 3454993, at *3 (D.N.J. Nov. 29, 2006) (quoting *Fink* v. *Ricoh Corp.*, 839 A.2d 942, 976 (N.J. Super. Ct. Law Div. 2003)); *see also Glass* v. *BMW*, 2011 WL 6887721, at *4 (holding that the alleged unlawful conduct must be "*in connection*" with Plaintiff's purchase) (emphasis in original). Nowhere does the Complaint contain any such allegation. Moreover, Plaintiff must allege that once he was allegedly misled, the harm suffered was a direct result of TWC's actions. *See Fink* v. *Ricoh Corp*, 839 A.2d at 977 ("The burden imposed upon a private plaintiff on the issue of proximate cause has been held to require proof that said person has been '… misled and damaged as a proximate result of a violation of the act in order to have standing to sue.'") (quoting *Knapp* v. *Potamkin Motors Corp.*, 602 A.2d 302, 303 (N.J. Super. Ct. Law Div. 1991)).

Hoffman does not, and cannot, make any such allegation because he was free to cancel his subscription at any time to avoid all of his alleged loss.[4] Plaintiff has not alleged (because he cannot) that TWC made any statement to induce him to continue subscribing to its services once it became obvious that TWC would cease carrying MSG. *See Time Warner Cable Pulls Plug on MSG*, Star-Ledger, Jan. 2, 2012; *Time Warner Subscribers Face Cutoff of MSG*, Herald News (West Paterson, N.J.), Dec. 31, 2011; Richard Sandomir, *MSG and Time Warner Face Off*, N.Y. Times, Dec. 17, 2011, at D4. Instead, perhaps informed by his penchant for suit, Hoffman made

---

[4] The Terms of Service, attached hereto as Exhibit A to the Declaration of Christine Dzujna, provide in relevant part that "[y]ou may request that your services be disconnected at any time" and "billing for any disconnected services will stop on the date that the service disconnection takes effect and all equipment is returned."). *See* Exhibit A at 2. The Court may consider the impact of the Terms of Service on this motion because they are integral to Hoffman's claims. "When evaluating a Rule 12(b)(6) motion to dismiss, the Court considers 'only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.'" *Holiday Village East Home Owners Ass'n, Inc.* v. *QBE INS Corp.*, 2011 WL 6322978, at *2 (D.N.J. Dec. 19, 2011) (quoting *Lum* v. *Bank of America*, 361 F.3d 217, 221 n. 3 (3d Cir. 2004)). "A document that forms the basis of a claim is one that is 'integral to or explicitly relied upon in the complaint.'" *Id.* (quoting *Lum*, 361 F.3d at 221 n. 3)). Here, Plaintiff's claim is obviously based upon his subscription to TWC's services (*see* Compl. ¶¶4–5).

the conscious choice to continue purchasing TWC's services with the full knowledge that MSG would not be, and was not, carried on TWC for a 49-day period. Under these circumstances, there can be no causal connection between Plaintiff's alleged loss and TWC's conduct.

## II. THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

For the reasons set forth above, it is clear that Plaintiff cannot allege the facts necessary to state a claim under the NJCFA, rendering any potential amendment to his Complaint futile. Under these circumstances, it is appropriate for the Court to dismiss this action with prejudice. *California Public Employees' Retirement System* v. *Chubb Corp.*, 394 F.3d 126, 165 (3d Cir. 2004) (noting that dismissal with prejudice may be granted for reasons "such as undue delay, bad faith, dilatory motive, prejudice and futility").

## CONCLUSION

For the reasons set forth above, the Complaint should be dismissed in its entirety with prejudice.

By: /s/    William E. Goydan
   WILLIAM E. GOYDAN

WOLFF & SAMSON PC
One Boland Drive
West Orange, New Jersey 07052
(973) 325-1500

Attorneys for *Defendant Time Warner Cable Inc.*

OF COUNSEL:

Cahill Gordon & Reindel LLP
80 Pine Street
New York, New York  10005
(212) 701-3000

Dated:  March 9, 2012

-14-