UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

HAROLD M. HOFFMAN, individually and on
behalf of those similarly situated,

                                    Plaintiff,

              - *against* -

TIME WARNER CABLE INC.,

                                    Defendant.

Civil Action: 2:12-cv-00978-ES-CLW

**ORAL ARGUMENT REQUESTED
MOTION DATE: JUNE 18, 2012**

DOCUMENT ELECTRONICALLY FILED

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
TIME WARNER CABLE INC.'S MOTION TO DISMISS THE
AMENDED COMPLAINT**

---

William E. Goydan
Mindy P. Fox
Wolff & Samson PC
One Boland Drive
West Orange, New Jersey 07052
(973) 325-1500

Jonathan D. Thier (*pro hac vice* pending)
Brian T. Markley (*pro hac vice* pending)
John A. Eakins (*pro hac vice* pending)
Cahill Gordon & Reindel LLP
80 Pine Street
New York, New York  10005
(212) 701-3000

*Attorneys for Time Warner Cable Inc.*

April 13, 2012

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Table of Authorities ........................................................................................................ ii

Preliminary Statement ..................................................................................................... 1

Allegations of the Amended Complaint ........................................................................ 4

Argument ........................................................................................................................ 7

    I.      The Amended Complaint Fails To State A Claim Under The NJCFA (Counts I, II, III, IV and V) ................................................................................ 7

          A.      TWC Did Not Engage In Any Unlawful Conduct ..................................... 8

                  1.      Plaintiff Has Failed To Sufficiently Allege Any Statements Made By TWC Promising To Provide The MSG Networks .......... 9

                  2.      Plaintiff Fails To Identify Any Omission On TWC's Part ........... 12

          B.      The Amended Complaint Does Not Sufficiently Allege An Ascertainable Loss ..................................................................................... 13

          C.      Plaintiff Cannot Demonstrate Any Causal Link Between His Alleged Loss And Defendant's Alleged Conduct ............................... 15

    II.      Plaintiff's Breach Of Contract Claim (Count VII) Fails As A Matter Of Law Because The Parties' "Contractual Arrangement" Contains No Promise To Provide Any Particular Programming For A Given Period Of Time .......................................................................................................... 17

    III.    Plaintiff's Unjust Enrichment Claim (Count VI) Cannot Be Maintained Because The Parties' Relationship Is Governed By An Enforceable Contract ........................................................................................................ 22

    IV.    The Amended Complaint Should Be Dismissed With Prejudice ......................... 24

Conclusion .................................................................................................................... 24

-i-

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Aequus Technologies, L.L.C.* v. *gh, L.L.C.,* 2011 WL 310668 (D.N.J. Jan. 28, 2011)............... 21n

*Arcand* v. *Brother International Corp.,* 673 F. Supp. 2d 282 (D.N.J. 2009)................... 8-9, 13, 15

*Arcand* v. *Brother International Corp.,* 2010 WL 3907333 (D.N.J. Sept. 29, 2010)................... 8n

*Ashcroft* v. *Iqbal,* 556 U.S. 662 (2009)...................................................................... 7, 12

*Assisted Living Assocs.* v. *Moorestown Township,* 31 F. Supp. 2d 389 (D.N.J. 1998) ................ 17

*Bayer Chemicals Corp.* v. *Albermarle Corp.,* 171 Fed. Appx. 392 (3d Cir. 2006)...................... 19

*Bell Atlantic Corp.* v. *Twombly,* 550 U.S. 544 (2007).................................................... 7

*Benak* v. *Alliance Capital Management, L.P.,* 349 F. Supp. 2d 882 (D.N.J. 2004), *aff'd,*
   435 F.3d 396 (3d Cir. 2006)..........................................................................1n, 20n

*In re Burlington Coat Factory Securities Litigation,* 114 F.3d 1410 (3d Cir. 1997)................. 19n

*Buschbaum* v. *Barron,* 61 A.2d 512 (N.J. Super. Ct. App. Div. 1948) ......................... 23

*California Public Employees' Retirement System* v. *Chubb Corp.,* 394 F.3d 126 (3d Cir.
   2004) ...............................................................................................................24

*Click Corp. of America* v. *Redco Foods, Inc.,* 424 F. Supp. 2d 753 (D.N.J. 2006)..................... 18

*Connecticut General Life Insurance Co.* v. *Punia,* 884 F. Supp. 148 (D.N.J. 1995) ................. 17

*Cox* v. *Sears Roebuck & Co.,* 647 A.2d 454 (N.J. 1994)......................................... 8n, 9

*Dewey* v. *Volkswagen AG,* 558 F. Supp. 2d 505 (D.N.J. 2008)..................................... 10

*Duffy* v. *Charles Schwab & Co., Inc.,* 123 F. Supp. 2d 802 (D.N.J. 2000) ................................. 22

*Fink* v. *Ricoh Corp.,* 839 A.2d 942 (N.J. Super. Ct. Law Div. 2003) ......................... 16

*Flammia* v. *Maller,* 169 A.2d 488 (N.J. Super. Ct. App. Div. 1961) ...................... 21-22

*Franulovic* v. *Coca-Cola Co.,* 2007 WL 3166953 (D.N.J. Oct. 25, 2007)................................. 14

*Frederico* v. *Home Depot,* 507 F.3d 188 (3d Cir. 2007) ......................................................7-10, 17

*Glass* v. *BMW of North America, LLC*, 2011 WL 6887721 (D.N.J. Dec. 29, 2011)............. passim

*Green* v. *Green Mountain Coffee Roasters, Inc.,* 2011 WL 6372617 (D.N.J. Dec. 20, 2011)..... 14

*Hoffman* v. *AsSeenOnTV.com, Inc.,* 962 A.2d 532 (N.J. Super. Ct. App. Div. 2009)............. 3, 13

*Hoffman* v. *Hampshire Labs, Inc.,* 963 A.2d 849 (N.J. Super. Ct. App. Div. 2009)...................... 3

*Hoffman* v. *Macy's, Inc.,* 2011 WL 6585 (N.J. Super. Ct. App. Div. June 28, 2010), *cert. denied*, 6 A.3d 441 (Table) (N.J. 2010) ......................................................................................4

*Hoffman* v. *Palo Alto Laboratories, Inc.,* 2009 WL 62947 (N.J. Super. Ct. App. Div. Jan. 12, 2009) ..................................................................................................................................3

*Hughes* v. *Panasonic Consumer Electronics Co.,* 2011 WL 2976839 (D.N.J. July 21, 2011) ................................................................................................................10, 13, 14

*James* v. *Federal Insurance Co.,* 73 A.2d 720 (N.J. 1950) ...................................................17-18

*JPMorgan Chase Bank, N.A.* v. *Republic Mortgage Insurance Co.,* 2011 WL 1750439 (D.N.J. May 4, 2011) .................................................................................................................17

*Kalow & Springnut, LLP* v. *Commence Corp.,* 2008 WL 2557506 (D.N.J. June 23, 2008).. 10, 12

*Knapp* v. *Potamkin Motors Corp.,* 602 A.2d 302 (N.J. Super. Ct. Law Div. 1991).................... 16

*Lieberson* v. *Johnson & Johnson Consumer Cos.,* 2011 WL 4414214 (D.N.J. Sept. 21, 2011) ..........................................................................................................................................15

*Lum* v. *Bank of America,* 361 F.3d 217 (3d Cir. 2004)......................................................... 8, 10

*Luppino* v. *Mercedes-Benz USA, LLC,* 2011 WL 2470625 (D.N.J. June 20, 2011).................... 15

*Mann* v. *TD Bank, N.A.,* 2010 WL 4226526 (D.N.J. Oct. 20, 2010)........................................... 13

*Mason* v. *Coca-Cola Co.,* 774 F. Supp. 2d 699 (D.N.J. 2011) .................................................... 15

*Morgan* v. *Markerdowne Corp.,* 201 F.R.D. 341 (D.N.J. 2001) ............................................. 11n

*Naporano Iron & Metal Co.* v. *American Crane Corp.,* 79 F. Supp. 2d 494 (D.N.J. 1999) ....... 7-8

*Panaccione* v. *Holowiak,* 2008 WL 4876577 (N.J. Super. Ct. App. Div. Nov. 12, 2008)......... 21n

*Payan* v. *Greenpoint Mortgage Funding,* 681 F. Supp. 2d 564 (D.N.J. 2010) ............................. 7

*Professional Cleaning and Innovative Building Services, Inc.* v. *Kennedy Funding, Inc.,* 2005 WL 1924344 (D.N.J. Aug. 11, 2005) ........................................................................21n

*Realty Asset Properties, Ltd.* v. *Township of Millstone,* 2006 WL 3456490 (N.J. Super. Ct. App. Div. Dec. 1, 2006) .....................................................................................23

*Samukai* v. *Emily Fisher Charter School of Advanced Studies,* 2007 WL 316449  (D.N.J. Jan. 30, 2007).........................................................................................................19n

*Solo* v. *Bed Bath & Beyond, Inc.,* 2007 WL 1237825 (D.N.J. Apr. 26, 2007) ............................ 14

*Suburban Transfer Service, Inc.* v. *Beech Holdings, Inc.,* 716 F.2d 220 (3d Cir. 1983).............. 22

*Sutton* v. *Metropolitan Casulty Insurance Co.,* 186 A. 465 (N.J. 1936) ...................................... 21

*Thiedemann* v. *Mercedes-Benz USA, LLC,* 872 A.2d 783 (N.J. 2005).......................................... 13

*Torres-Hernandez* v. *CVT Prepaid Solutions, Inc.*, 2008 WL 5381227 (D.N.J. Dec. 17, 2008) ................................................................................................................8, 10

*VRG Corp.* v. *GKN Realty Corp.,* 641 A.2d 519 (N.J. 1994)........................................................ 23

*Wiatt* v. *Winston & Strawn, LLP,* 2011 WL 2559567 (D.N.J. June 27, 2011)............................. 11

## <u>Rules</u>

Fed. R. Civ. P. 8 ................................................................................................................................ 8

Fed. R. Civ. P. 8(a).......................................................................................................................... 24

Fed. R. Civ. P. 9(b) ................................................................................................................. passim

Fed. R. Civ. P. 12(b)(6)............................................................................................................. 4, 24

## <u>Statutes</u>

New Jersey Consumer Fraud Act., N.J. Stat. Ann. § 56:8-1 *et seq.* (Thomson Reuters 2012) ...................................................................................................................... passim

**<u>Other Authorities</u>**

Editorial, *Consumers Buy Goods, Not Lawsuits*, N.J.L.J., May 23, 2011, at 22 ......................... 4n

Richard Sandomir, *MSG and Time Warner Face Off*, N.Y. Times, Dec. 17, 2011, at D4................................................................................................................ 1, 16-17, 20

*Time Warner Cable Pulls Plug on MSG*, Star-Ledger, Jan. 2, 2012 .................................. 1, 16, 20

*Time Warner Subscribers Face Cutoff of MSG*, Herald News (West Paterson, N.J.), Dec. 31, 2011 ...................................................................................................... 1, 16, 20

Time Warner Cable Inc. ("TWC") respectfully submits this Memorandum of Law in support of its Motion to Dismiss the Amended Complaint.

## PRELIMINARY STATEMENT

Plaintiff Harold Hoffman, who purports to serve both as class counsel and class representative, is a subscriber to TWC's video services.  Hoffman alleges that in 2008 he decided to subscribe to TWC based upon "affirmative promises and representations" that he would receive programming on two affiliated regional sports networks, the MSG and MSG+ networks (collectively the "MSG Networks").   Along with dozens of other network offerings, Hoffman did in fact receive the MSG Networks until TWC's rights to carry the MSG Networks' programming expired in January 2012.  Shortly thereafter, Hoffman filed this action alleging consumer fraud and, by subsequent amendment, breach of contract and unjust enrichment claims.[1]  New Jersey and national media had prominently reported in late 2011 and early 2012 that TWC would not be able to offer the MSG Networks' programming to its subscribers after TWC's right to distribute those networks expired on January 1, 2012.  *See, e.g., Time Warner Cable Pulls Plug on MSG*, Star-Ledger, Jan. 2, 2012; *Time Warner Subscribers Face Cutoff of MSG*, Herald News (West Paterson, N.J.), Dec. 31, 2011; Richard Sandomir, *MSG and Time Warner Face Off*, N.Y. Times, Dec. 17, 2011, at D4.[2]   After TWC's carriage rights expired, the networks were unavailable for distribution on TWC's cable systems for 49 days until February 19, 2012, at which point a new agreement was reached with the MSG Networks' owner and TWC was permitted once again to carry the MSG Networks.

---

[1]      Hoffman filed his original complaint on January 19, 2012 in the Superior Court of New Jersey.  TWC removed the action to this Court on February 17, 2012.  *See* Dkt. #1.  TWC filed its notice of motion to dismiss the original complaint and memorandum of law on March 9, 2012.  *See* Dkt. #6.  Hoffman then filed the Amended Complaint ("AC") on March 13, 2012. *See* Dkt. #7.  The Amended Complaint is the operative pleading and the subject of this motion to dismiss.

[2]      On a motion to dismiss, the court may take judicial notice of these publicly available news articles to demonstrate that Plaintiff was on notice of the relevant public information. *Benak* v. *Alliance Capital Management, L.P.*, 349 F. Supp. 2d 882, 888 n.8 (D.N.J. 2004), *aff'd*, 435 F.3d 396 (3d Cir. 2006).

The Amended Complaint, filed on behalf of a purported nationwide class of TWC subscribers, alleges the following claims: five separate counts of violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1 *et seq.*, (AC ¶¶ 33–47), unjust enrichment (AC ¶¶ 48–54), and breach of contract (AC ¶¶ 55–62).  The crux of these claims is that, when TWC could no longer carry the MSG Networks in 2012, TWC failed to uphold its "affirmative promise and representation" – allegedly made in 2008 directly to Hoffman – that he "would receive sports programming broadcast on" the MSG Networks (AC ¶ 9).

As explained below, each of Plaintiff's counts should be dismissed for failure to state a claim.  First, Plaintiff fails to adequately allege the elements of an NJCFA claim with the particularity required under Rule 9(b) and this Court's holding in *Glass* v. *BMW of North America, LLC*, 2011 WL 6887721, at *3–*13 (D.N.J. Dec. 29, 2011).  In particular:

- Plaintiff does not allege with particularity the "unlawful conduct" element of an NJCFA claim because he does not provide factual detail regarding the content of the statements allegedly made, who made the statement, or the time, date, and place of each statement.

- Additionally, there can be no "unlawful conduct" because Plaintiff's vague allegation that TWC "promised and represented" to provide the MSG Networks in November 2008 (AC ¶ 9) can only be plausibly interpreted to be a statement regarding the programming choices available as of 2008, not 2012.  The Amended Complaint contains no allegation to the contrary.

- Plaintiff fails to adequately allege the "ascertainable loss" element of an NJCFA claim.  Plaintiff specifically acknowledges that TWC provides subscribers, such as Hoffman, a package of a "variety of programming" at a set price. (AC ¶¶ 7, 15).  Thus, it is impossible to establish the relative value of each network within this package.

- Finally, the Amended Complaint includes none of the particularized details required to establish the "causal link" element.

Second, Plaintiff's breach of contract claim fails as a matter of law because, even accepting all of Plaintiff's allegations as true:

- Plaintiff has not plausibly alleged that TWC's "promise and representation" in 2008 regarding the MSG Networks was anything more than a statement of then-current programming choices and offerings.

- Moreover, the Court need not accept Plaintiff's interpretation of the "contractual arrangement" as true, because a review of the parties' written contract, which is permissible on a motion to dismiss, reveals no such promise.

- This claim is also barred under the voluntary payment doctrine as Plaintiff did not cancel or downgrade his service and instead voluntarily paid for his monthly subscription while the MSG Networks were unavailable.

Finally, Plaintiff's unjust enrichment claim fails as a matter of law because the parties' relationship, as Plaintiff recognizes, is governed by an enforceable contract. (*See* AC ¶ 57). Plaintiff's unjust enrichment claim is also barred by the voluntary payment doctrine.

It also bears brief mention that Hoffman is a serial plaintiff with a history of bringing claims under the NJCFA. *See, e.g., Hoffman* v. *AsSeenOnTV.com, Inc.*, 962 A.2d 532, 542 (N.J. Super. Ct. App. Div. 2009) (observing that Hoffman had filed "over 40 purported class-action, consumer fraud lawsuits in Bergen County") (emphasis added) (internal quotation marks omitted).  In this case, as in others he has filed, Hoffman's claims lack the predicate factual allegations to sustain a cause of action under the NJCFA.  *See, e.g., Hoffman* v. *Hampshire Labs, Inc.*, 963 A.2d 849, 854 (N.J. Super. Ct. App. Div. 2009) (affirming dismissal of NJCFA claims because "Plaintiff's allegations, however, are merely statements of a legal conclusion"); *Hoffman* v. *AsSeenOnTV.com, Inc.*, 962 A.2d at 538; *Hoffman* v. *Palo Alto Laboratories, Inc.*, 2009 WL 62947, at *2, *5 (N.J. Super. Ct. App. Div. Jan. 12, 2009) (affirming dismissal of NJCFA claims

with prejudice); *Hoffman* v. *Macy's, Inc.*, 2011 WL 6585, at *4 (N.J. Super. Ct. App. Div. June 28, 2010) (affirming dismissal of NJCFA claims for failure to state an ascertainable loss), *cert. denied*, 6 A.3d 441 (Table) (N.J. 2010).[3]  Rather than including sufficiently particularized allegations regarding TWC's alleged misrepresentations, the Amended Complaint relies entirely upon vague allegations and conclusions that are wholly insufficient as a matter of law to state a claim under the NJCFA or for common law claims sounding in breach of contract or unjust enrichment.

For the reasons set forth below, the Amended Complaint should be dismissed with prejudice for failure to state a claim under Rule 12(b)(6).

## ALLEGATIONS OF THE AMENDED COMPLAINT

The Amended Complaint purports to plead five separate counts of violations of the NJCFA (AC ¶¶ 33–47), unjust enrichment (AC ¶¶ 48–54), and breach of contract (AC ¶¶ 55–62).  The NJCFA violations are purportedly alleged, respectively, as unconscionable commercial practices (AC ¶ 34), deception (AC ¶ 37), fraud (AC ¶ 40), false pretense, false promise, and misrepresentation (AC ¶ 43), and knowing concealment, suppression, and omission of material facts with the intent that others rely upon such concealment, suppression, and omission in connection with the sale or advertisement of any merchandise (AC ¶ 46).  All of these seven counts incorporate and reallege common operative facts, which are summarized below.

---

[3]     It has been stated in press reports that Hoffman generates NJCFA claims by seeking out products to purchase for the sole purpose of bringing an NJCFA class action, without any intention of ever using the product.  Editorial, *Consumers Buy Goods, Not Lawsuits*, N.J.L.J., May 23, 2011, at 22 ("[Hoffman] was buying what he thought to be a simple and lucrative lawsuit.").  Similarly here, Hoffman could have simply cancelled his TWC subscription to avoid any alleged loss when he learned that TWC could no longer carry the MSG Networks. *See infra* Section II, at 20-21.  Hoffman's tactics in bringing these types of NJCFA claims have been criticized, with the New Jersey Law Journal editorial board urging the New Jersey Supreme Court or legislature to clarify that the NJCFA is only available to "people who have been actually victimized," rather than providing "business for opportunistic intermeddlers," with reference to Hoffman, "who deliberately create their own victimhood."   Editorial, *Consumers Buy Goods, Not Lawsuits*, N.J.L.J., May 23, 2011, at 22.

Hoffman subscribed to TWC's video services beginning in or around November 2008. (AC ¶¶ 7, 9).  He alleges that TWC provided him with video services "that promised to deliver, in superior broadcast video quality, a variety of programming, including sports programming broadcast on the MSG and MSG+ networks."  (AC ¶ 7).  Plaintiff further alleges that TWC "affirmatively induced" him to subscribe to its video services "through affirmative promises and representations by defendant that subscribers, including the named Plaintiff herein, would receive sports programming broadcast on the MSG and MSG+ networks," and that a "highly material selling ingredient" of TWC's video services and a "significant component of the monthly charges . . . was the affirmatively promised delivery" of the MSG Networks. (AC ¶¶ 8, 11). Plaintiff next alleges that TWC "made these affirmative promises and representations to the Named Plaintiff in or about November of 2008,"  (AC ¶ 9), that "a representative of Defendant contacted the named Plaintiff by telephone and actively solicited him to become a subscriber to Defendant's cable television services," (AC ¶ 9), and that "[a] material selling point and a material factor in Plaintiff's decision to subscribe to Defendant's cable television services was Defendant's affirmative promise and representation that Plaintiff . . . would receive sports programming broadcast" on the MSG Networks. (AC ¶ 9).  Plaintiff alleges that he "accepted Defendant's offer to provide cable television services . . . ." (AC ¶ 12).  Reviewing all of Plaintiff's allegations regarding TWC's alleged "promises and representations," Plaintiff fails to allege that TWC stated any fixed term for which it would provide the MSG Networks or any of the other programming, much less a promise or representation to provide that programming in perpetuity.

Hoffman next alleges that TWC's "affirmative promises and representations" proved false (AC ¶ 17), which "constitute[s] a deception; a misrepresentation; an unconscionable trade practice; a sharp and deceitful marketplace practice, [sic] and a false promise," that allegedly "result[s] in consumers being subjected to misrepresentation, false promise, fraud, deceit, trickery and false and deceptive business practices." (AC ¶¶ 20–22).  Plaintiff also alleges that "Defendant continued to collect, and retains to this day, the component of those monthly charges al-

locable to" the MSG Networks (AC ¶ 13), and that Hoffman "paid monthly fees to Defendant, and continued to pay such fees and charges even after January 1, 2012, based upon Defendant's affirmative promises and representations . . . ." (AC ¶ 18).  Plaintiff also alleges that TWC ceased paying carriage fees for the MSG Networks and that the "financial gain has been retained, in full, by Defendant, with accrued interest, and has not been rebated and/or reimbursed to Defendant's subscribers . . . ." (AC ¶ 19).

Plaintiff alleges that he suffered an ascertainable loss "in the form of out of pocket loss as a result of Defendant's unlawful conduct as aforesaid," because he "paid hard earned money for delivery of promised cable television programming, which was not provided," and also pleads that he "received a product/service less than and different from that promised by Defendant and less than and different from the service previously provided by Defendant consistent with its promise and representation." (AC ¶ 23–24).  Plaintiff also alleges an ascertainable loss of the "the benefit-of-the-bargain represented by Defendant – the difference between the price paid by the consumer-subscriber for Defendant's actually delivered product/service, and the product/service promised . . . ." (AC ¶ 25).  Plaintiff next alleges that "there is a direct causal relationship between Defendant's misrepresentations as to the scope of cable television services promised to its subscribers and the loss suffered by Plaintiff . . . ."  (AC ¶ 26).  Additionally, in each of the five counts, Plaintiff alleges that TWC's conduct proximately caused his damage. (*See* AC ¶¶ 35, 38, 41, 44, 47).

In the unjust enrichment count, Plaintiff alleges that he conferred a benefit on TWC by paying money "in connection with the agreement between the parties for the provision and receipt of cable television services," and that TWC's retention of that benefit would be unjust and inequitable. (AC ¶ 49–50).  The breach of contract count includes allegations that TWC and its subscribers are parties to contractual arrangements "under which Defendant was obliged to provide its subscribers, for a monthly fee, promised cable television programming, including but not

limited to MSG and MSG+ programming," (AC ¶ 56); a component of the monthly fees was al-

locable to the MSG Networks (AC ¶ 57); and TWC breached these obligations (AC ¶ 59).

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, ac-

cepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "Thread-

bare recitals of the elements of a cause of action, supported by mere conclusory statements, do

not suffice." *Id.*

As demonstrated below, Plaintiff's pleading fails to satisfy these standards.

## I.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE NJCFA (COUNTS I, II, III, IV AND V)

This Court is familiar with the elements and pleading requirements of an NJCFA claim.

*See Glass* v. *BMW of North America, LLC*, 2011 WL 6887721, at *3–*13 (D.N.J. Dec. 29,

2011).  It is well-settled that "[t]o establish a *prima facie* case under the NJCFA, a plaintiff must

allege: (1) unlawful conduct by the defendant; (2) an ascertainable loss by plaintiff; and (3) a

causal connection between the defendant's unlawful practice and the plaintiff's ascertainable

loss." *Glass*, 2011 WL 6887721, at *3 (citing *Payan* v. *Greenpoint Mortgage Funding*, 681 F.

Supp. 2d 564, 572 (D.N.J. 2010)).

To state an NJCFA claim, a plaintiff must satisfy the heightened pleading standards of

Federal Rule of Civil Procedure 9(b) by "'stat[ing] the circumstances of the alleged fraud with

sufficient particularity to place the defendant on notice of the precise misconduct with which it is

charged.'"  *Glass*, 2011 WL 6887721, at *4 (quoting *Frederico* v. *Home Depot*, 507 F.3d 188,

200 (3d Cir. 2007)); *see* Fed. R. Civ. P. 12(b)(6).  Rule 9(b), of course, requires that "[i]n alleg-

ing fraud or mistake, a party must state with particularity the circumstances constituting the fraud

or mistake."  Fed. R. Civ. P. 9(b).  "Rule 9(b)'s purpose is to provide defendants with notice of

the precise misconduct that is alleged and to protect defendants' reputations by safeguarding them against spurious allegations of immoral and fraudulent behavior." *Naporano Iron & Metal Co.* v. *American Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 1999).  "'To satisfy this heightened standard, the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'"  *Glass*, 2011 WL 6887721, at *4 (quoting *Frederico*, 507 F.3d at 200).  "'Plaintiff must also allege who made the misrepresentation to whom and the general content of the misrepresentation.'"  *Glass*, 2011 WL 6887721, at *4 (quoting *Lum* v. *Bank of America*, 361 F.3d 217, 224 (3d Cir. 2004)); *see Naporano Iron & Metal Co.*, 79 F. Supp. 2d at 512 (dismissing complaint under Rule 9(b) for failure "to inform defendants of the substance of these alleged misrepresentations").  Rule 9(b)'s "heightened pleading standard applies to all three prongs of an NJCFA claim." *Torres-Hernandez* v. *CVT Prepaid Solutions, Inc.*, 2008 WL 5381227, at *6 (D.N.J. Dec. 17, 2008).

A.       **TWC Did Not Engage In Any Unlawful Conduct**

The NJCFA defines unlawful conduct as:

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . . .

N.J.S.A. § 56:8-2.  Unlawful conduct "'fall[s] into one of three general categories: affirmative acts, knowing omissions, and regulatory violations.'"  *Glass*, 2011 WL 6887721, at *4 (quoting *Frederico*, 507 F.3d at 202).[4]  "The 'prime ingredient' underlying all types of unlawful conduct is '[its] capacity to mislead.'"  *Glass*, 2011 WL 6887721, at *4 (quoting *Arcand* v. *Brother In-*

---

[4]       "[T]o fall within the third category of unlawful acts, it is clear that a plaintiff must allege 'violations of specific regulations promulgated under the Act.'"  *Arcand* v. *Brother International Corp.*, 2010 WL 3907333, at *12 (D.N.J. Sept. 29, 2010) (quoting *Cox* v. *Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994)).  The Complaint includes no allegation that TWC violated any regulation.  Therefore, this category cannot provide the basis for an unlawful act.

*ternational Corp.*, 673 F. Supp. 2d 282, 296 (D.N.J. 2009) (additional quotations omitted). "'Importantly, *the conduct*, whether it be an omission or active misrepresentation, *must be made in connection with the sale or advertisement* of a product or service.'"  *Glass*, 2011 WL 6887721, at *4 (quoting *Arcand*, 673 F. Supp. 2d at 296) (emphasis in original).

"[A]llegations of an affirmative act, *i.e.*, a misrepresentation, do not require a showing of intent or even actual deceit or fraud." *Glass*, 2011 WL 6887721, at *5 (citing *Cox* v. *Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994)).  While affirmative acts require no showing of intent, "[a]n omission, on the other hand, 'occurs where the defendant (1) knowingly concealed (2) a material fact (3) with the intention that the consumer rely upon the concealment.'" *Glass*, 2011 WL 6887721, at *5 (quoting *Arcand*, 673 F. Supp. 2d at 297).  "Implicit in the showing of an omission is the underlying duty on the part of the defendant to disclose what he concealed to induce the purchase." *Arcand*, 673 F. Supp. 2d at 297.  "'Obviously, there can be no [unlawful conduct], or reliance for that matter, if the defendant was under no obligation to disclose the information in the first place.'" *Glass*, 2011 WL 6887721, at *5 (quoting *Arcand*, 673 F. Supp. 2d at 297).  It is impossible to discern based upon the scant factual allegations in the Amended Complaint whether Hoffman alleges affirmative acts or omissions or a combination thereof.  But under any theory, Plaintiff's Amended Complaint fails to provide anywhere near the factual detail required to state a claim.

### 1. Plaintiff Has Failed To Sufficiently Allege Any Statements Made By TWC Promising To Provide The MSG Networks

As a matter of pleading under Rule 9(b), Plaintiff has failed to provide sufficient detail about TWC's alleged misstatements regarding carriage of the MSG Networks.  To properly allege an affirmative act, a complaint must allege a specific misrepresentation and "the date, time, and place" of such misrepresentation.  *Glass*, 2011 WL 6887721, at *4 ("'[T]he plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject some measure of substantiation into a fraud allegation.'") (quoting *Frederico*, 507 F.3d at 200).  Moreover, the

Plaintiff must plead the "'general content of the misrepresentation.'" *Glass*, 2011 WL 6887721, at *4 (quoting *Lum* v. *Bank of America*, 361 F.3d at 224).  As this Court has held, plaintiffs must "allege the specific advertisements, marketing materials, warranties or product guides that they each reviewed, which included this misrepresentation and when it was advertised.'" *Glass*, 2011 WL 6887721, at *7 (quoting *Hughes* v. *Panasonic Consumer Electronics Co.*, 2011 WL 2976839, at *13 (D.N.J. July 21, 2011)).  Plaintiffs' failure to allege the necessary details required by Rule 9(b) regarding the alleged misstatement has frequently provided a basis for dismissal. *See, e.g.*, *Glass*, 2011 WL 6887721, at *7; *Dewey* v. *Volkswagen AG*, 558 F. Supp. 2d 505, 526 (D.N.J. 2008); *Hughes*, 2011 WL 2976839, at *13; *Torres-Hernandez*, 2008 WL 5381227, at *6;  *Kalow & Springnut, LLP* v. *Commence Corp.*, 2008 WL 2557506, at *5 (D.N.J. June 23, 2008).

Here the Amended Complaint never alleges any identifiable statement, promise or representation made by TWC that it would provide the MSG Networks' programming for any particular period of time after the alleged statement made in 2008.  The Amended Complaint repeatedly makes conclusory allegations that TWC "promised" or "represented" that it would provide certain services, but never alleges any actual, specific statements to that effect.  (*See, e.g.*, AC ¶¶ 7–9, 11–12, 16–20).   Indeed, Plaintiff begins his "substantive allegations" by alleging that TWC had provided "cable television services that promised to deliver . . . a variety of programming, including sports programming broadcast" on the MSG Networks.  (AC ¶ 7).  This allegation merely states that TWC promised to provide a "variety" of programming choices, a matter which is not in dispute.  However, this allegation does not suggest that TWC promised to provide a fixed menu of programming that would never change or evolve over time, especially over a period longer than three years.

Next Plaintiff alleges that his TWC subscription was induced "through affirmative promises and representations by defendant that subscribers, including the named Plaintiff herein, would receive sports programming broadcast" on the MSG Networks.  (AC ¶ 8). This allegation

provides no additional detail regarding what precisely the "affirmative promises and representations" were.

The only part of the Amended Complaint where Plaintiff attempts to identify the time or place of TWC's alleged statement, as required under Rule 9(b) and this court's holding in *Glass*, 2011 WL 6887721, at *7, is Plaintiff's allegation that he was "solicited" in November of 2008. (AC ¶ 9). But this allegation fails to define, as also required by Rule 9(b) and *Glass*, 2011 WL 6887721, at *4, the terms of "these affirmative promises and representations" made to Plaintiff.[5] (AC ¶ 9).

Because Plaintiff does not provide the particular terms of TWC's promise or representation, it is impossible to conclude that TWC's alleged promise and representation were anything more than an accurate statement that TWC at the time provided the MSG Network's programming. Without any reference to the temporal scope of the promise or representation, it is implausible to conclude that TWC promised and represented in November 2008 what programming it would provide in 2012. For the purposes of an NJCFA claim and Rule 9(b), if such a promise or representation did contain such an unlimited temporal scope, Plaintiff was obligated to plead that statement with sufficient particularity. *See Glass*, 2011 WL 6887721, at *4 ("'Plaintiff must also allege who made the purported misrepresentation and what specific misrepresentations were made'") (quoting *Wiatt* v. *Winston & Strawn, LLP*, 2011 WL 2559567, at *17 (D.N.J. June 27, 2011)).

Moreover, Plaintiff's carefully worded allegation does not even state that the TWC representative made any of the alleged promises or representations – it only says that Hoffman was

---

[5]     Of course, Hoffman's complete reliance upon a statement made to him *personally* on the telephone conflicts with his separate allegations made to support the class action. Hoffman alleges that common questions among class members include the "affirmative misrepresentations" made by TWC (AC ¶ 28); yet no such class-wide misrepresentations are identified. If Plaintiff relies upon a statement individually made to him to prove unlawful conduct, he will be unable to demonstrate predominance for purposes of class certification. *See Morgan* v. *Markerdowne Corp.*, 201 F.R.D. 341, 350 (D.N.J. 2001) (denying class certification for an NJCFA claim where the unlawful practice was not similar for proposed class members).

"solicited" by this representative. (AC ¶ 9).  This paragraph also alleges that a "material selling point" was that TWC included the MSG Networks in its programming, but does not attribute that "material selling point" to TWC's representative or for that matter any source.  Notably, nowhere in the Amended Complaint does Plaintiff allege that he reviewed and relied upon "specific advertisements, marketing materials, warranties or product guides." *Glass*, 2011 WL 6887721, at *7.  While Plaintiff may have relied upon this undefined "material selling point," for the purposes of asserting an NJCFA claim, Plaintiff must include particularized detail about the terms and location of that selling point.

Similarly, Plaintiff merely includes boiler-plate allegations that "Defendant's false representations to Plaintiff and members of the putative class result in consumers being subjected to misrepresentation, false promise, fraud, deceit, trickery and false and deceptive business practices," without ever explaining how TWC's alleged promise or representation was false.  (AC ¶ 21). The Amended Complaint is thus a model of "[t]hreadbare recitals of the elements of a cause of action," *Iqbal*, 556 U.S. at 678, that are insufficient to sustain a pleading under Rule 8, much less the heightened pleading standards of Rule 9(b).  *Id.*

### 2.      Plaintiff Fails To Identify Any Omission On TWC's Part

Similarly, Plaintiff has made no attempt to identify (nor can he) any omission by TWC that would give rise to liability.  The Complaint fails to allege *any* of the three elements necessary to plead an omission: (1) that TWC knowingly concealed (2) a material fact (3) with the intent that consumers rely upon such material fact.  *Glass*, 2011 WL 6887721, at *4.  "While the heightened pleading standard of Rule 9(b) allows essential elements of the omission under the NJCFA, such as intent, to be alleged generally, such elements need *to be alleged*." *Kalow*, 2008 WL 2557506, at *4 (emphasis in original).  Without identifying what fact TWC allegedly omitted, Plaintiff obviously fails to establish that fact's materiality or that TWC knowingly concealed

such a fact with the intent that consumers rely upon it.  Simply put, there can be no omission where Plaintiff fails to identify what fact was omitted.

**B.    The Amended Complaint Does Not<br>Sufficiently Allege An Ascertainable Loss**

Nor does Plaintiff properly allege "ascertainable loss," the next element necessary to state an NJCFA claim.  *Glass*, 2011 WL 6887721, at *10.  "'To give effect to the legislative language describing the requisite loss for private standing under the [NJ]CFA, . . . a private plaintiff must produce evidence that a fact finder could find or infer that the plaintiff suffered an *actual* loss.'"  *Glass*, 2011 WL 6887721, at *10 (quoting *Thiedemann* v. *Mercedes-Benz USA, LLC*, 872 A.2d 783, 792 (N.J. 2005)) (emphasis added).  A "plaintiff must suffer a definite, certain and measurable loss, rather than one that is merely theoretical."  *Hughes*, 2011 WL 2976839, at *15 (citation and internal quotation marks omitted).  Moreover, "the certainty implicit in the concept of an 'ascertainable loss' is that it is quantifiable or measureable."  *Id.* (citation and internal quotation marks omitted).  For example, "[w]hen pleading a benefit-of-the-bargain loss, the plaintiff must allege the difference between the [product] she received and the [product] as represented at purchase."  *Arcand*, 673 F. Supp. 2d at 300 (citation and internal quotation marks omitted).  "Simply asserting that a seller harmed consumers by tricking them into purchasing misrepresented products is insufficient to satisfy the NJCFA's ascertainable-loss requirement."  *Mann* v. *TD Bank, N.A.*, 2010 WL 4226526, at *6 (D.N.J. Oct. 20, 2010) (citing *Hoffman* v. *AsSeenOnTV.Com, Inc.*, 962 A.2d 532, 538 (N.J. Super. Ct. App. Div. 2009)).  Instead, "Plaintiffs must provide some evidence of the *quantity* and nature of the alleged loss-in-value; otherwise the purported loss is not 'real' and 'capable of calculation.'"  *Id.* (quoting *Thiedemann*, 872 A.2d at 792–93) (emphasis added).

While the Amended Complaint includes cursory phrases such as "ascertainable loss" (AC ¶¶ 23–24), "out of pocket loss" (AC ¶ 23), and "benefit-of-the-bargain" (AC ¶ 25), these bald assertions fall well short of what is required to establish an ascertainable loss under the NJCFA.

-13-

*See, e.g., Franulovic* v. *Coca-Cola Co.*, 2007 WL 3166953, at *8–*9 (D.N.J. Oct. 25, 2007) (holding that a "conclusory statement that [plaintiff] and other consumers have suffered an 'ascertainable loss' is insufficient," and dismissing an NJCFA claim where the plaintiff "actually received a beverage for her money, and [did] not allege[] how the purchase of that beverage constituted a specific loss"); *Solo* v. *Bed Bath & Beyond, Inc.*, 2007 WL 1237825, at *3 (D.N.J. Apr. 26, 2007) (granting motion to dismiss NJCFA claim where the plaintiff failed to allege that "the sheets he received were worth an amount of money less than the sheets he was promised, or that he experienced a measurable out-of-pocket loss because of his purchase").

Nowhere does Plaintiff allege, as he must to state a claim, just what quantifiable loss he– and the members of his disparate putative class–suffered as a result of losing the MSG Networks for 49 days.  The Amended Complaint alleges that "Defendant continued to collect, and retains to this day, the component of those monthly charges allocable to Defendant's promised provision of sports programming broadcast on the MSG and MSG+ networks."  (AC ¶ 13).

Notably, Plaintiff does not quantify (because he cannot) what portion of his bill is "allocable" to the MSG Networks.  The Amended Complaint specifically recognizes that TWC provides subscribers "a variety of programming" in packages for "a monthly charge."  (AC ¶ 7).  Thus, even Plaintiff recognizes that it is impossible to distinguish between the value of each element within TWC's bundle of programming.  There is simply no amount "allocable" to any particular network or programming offering.

The Amended Complaint therefore lacks the foundational predicate to establish that there is a "certain and measurable loss," *Hughes*, 2011 WL 2976839, at *15, that "is quantifiable or measureable."  *Id.* (citation and internal quotation marks omitted).  Among other things, Plaintiff never states how much he paid for his video service subscription, much less does he attempt to quantify the loss he allegedly suffered.  *See Green* v. *Green Mountain Coffee Roasters, Inc.*, 2011 WL 6372617, at *6 (D.N.J. Dec. 20, 2011) (holding that an ascertainable loss was insufficiently stated where there was no allegation regarding the purchase price of the allegedly defec-

tive product).   Nor does Plaintiff specify that he paid a premium to TWC over comparable ser-

vices in order to access the MSG Networks.   *See Lieberson* v. *Johnson & Johnson Consumer*

*Cos.*, 2011 WL 4414214, at *8 (D.N.J. Sept. 21, 2011) (dismissing a complaint for lack of a suf-

ficiently alleged ascertainable loss where "although Plaintiff alleges that comparable products

cost twenty five percent less than the J & J products, Plaintiff has not alleged the identity or the

cost of any allegedly comparable products").   Plaintiff's alleged "loss" of the ability to watch the

Knicks, Rangers and other sports teams and the events carried on the MSG Networks is a highly

speculative and ultimately unquantifiable loss for which the NJCFA does not permit recovery.

*See Mason* v. *Coca-Cola Co.*, 774 F. Supp. 2d 699, 704 (D.N.J. 2011) ("At most, plaintiffs simp-

ly claim that their expectations of the soda were disappointed.   Dissatisfaction with a product,

however, is not a quantifiable loss that can be remedied under the NJCFA.").   Put simply, Plain-

tiff's general dissatisfaction at the loss of the MSG Networks is not, standing alone, an "ascer-

tainable loss" recoverable under the NJCFA.

C.   **Plaintiff Cannot Demonstrate Any Causal Link Between His
      Alleged Loss And Defendant's Alleged Conduct**

Finally, Plaintiff fails to allege a causal relationship between the alleged ascertainable

loss and TWC's alleged misconduct.   *See Glass*, 2011 WL 6887721, at *11 ("'In order to proper-

ly plead this element, plaintiffs must allege facts establishing a causal nexus with the particulari-

ty required by Rule 9(b).'") (quoting *Arcand*, 673 F. Supp. 2d at 303).   This Court has observed

that to establish a causal nexus, it is "'critical that a plaintiff allege when misstatements were

made and at what point a plaintiff was exposed to one or more of those statements.'"   *Glass*,

2011 WL 6887721, at *11 (quoting *Luppino* v. *Mercedes-Benz USA, LLC*, 2011 WL 2470625, at

*3 (D.N.J. June 20, 2011)).   The law is well-settled that causation is not to be presumed and that

the causal nexus requirement of the NJCFA cannot be satisfied by "general and vague terms."

*Glass* v. *BMW*, 2011 WL 6887721, at *12.

-15-

Again, the Complaint parrots the language of the statute in the most general and vague terms by stating simply that "there is a direct causal relationship between the Defendant's misrepresentations as to the scope of cable television services promised to its subscribers and the loss suffered by Plaintiff and class members," yet never connects the dots to explain how that is the case.  (AC ¶ 26).  Additionally, Plaintiff includes insufficient boilerplate allegations that "[a]s a proximate result of Defendant's conduct, Plaintiff and members of the class were damaged." (*See* AC ¶¶ 35, 38, 41, 44, 47).  In this respect, the allegations of causation in Plaintiff's Complaint are similar to the conclusory allegations that this Court recently held to be insufficient in *Glass*.  *See Glass*, 2011 WL 6887721, at *12 (holding that broad allegation that plaintiff "reasonably relied upon and believed" alleged misrepresentations were insufficient to state a causal nexus).  This Court reasoned that the allegations in *Glass* failed to sufficiently state a causal nexus because "Plaintiff does not allege with specificity when the statements were made, or articulate at what point–if ever–she was exposed to the advertisements or the statement on BMW NA's website."  *Glass*, 2011 WL 6887721, at *12.

Moreover, Plaintiff must allege that once he was allegedly misled, the harm suffered was a direct result of TWC's actions.  *See Fink* v. *Ricoh Corp*, 839 A.2d 942, 977 (N.J. Super. Ct. Law. Div. 2003) ("The burden imposed upon a private plaintiff on the issue of proximate cause has been held to require proof that said person has been '… misled and damaged as a proximate result of a violation of the act in order to have standing to sue.'") (quoting *Knapp* v. *Potamkin Motors Corp.*, 602 A.2d 302, 303 (N.J. Super. Ct. Law Div. 1991)).  Hoffman does not, and cannot, make any such allegation because he was free to cancel or downgrade his TWC service at any time to avoid all of his alleged loss.  *See infra* Section II at 20-21.  Plaintiff does not allege (because he cannot) that TWC made any statement to induce him to continue subscribing to its services once it became obvious that TWC would cease carrying MSG.  *See Time Warner Cable Pulls Plug on MSG*, Star-Ledger, Jan. 2, 2012; *Time Warner Subscribers Face Cutoff of MSG*, Herald News (West Paterson, N.J.), Dec. 31, 2011; Richard Sandomir, *MSG and Time Warner*

*Face Off*, N.Y. Times, Dec. 17, 2011, at D4.  Hoffman alleges that he was unable to subscribe to another programming provider.  (AC ¶¶ 14, 15).  Hoffman, though, could have downgraded to TWC's basic video service to continue receiving "broadcast television."  Moreover, that Hoffman allegedly could not subscribe to any other provider does not establish a "causal link."  Access to cable video service – much less the programming on the MSG Networks – is simply not a necessity such as utilities like water or electricity.

Instead, Hoffman knew his choices: continue to subscribe to the same programming package without the MSG Networks, downgrade to TWC's basic service, or cancel his subscription altogether.  Perhaps informed by his penchant for suit (*see supra* n.3) Hoffman made the conscious choice to continue purchasing TWC's services with the full knowledge that MSG would not be, and was not, carried on TWC for a 49-day period.  Under these circumstances, there can be no causal connection between Plaintiff's alleged loss and TWC's conduct.

## II.  PLAINTIFF'S BREACH OF CONTRACT CLAIM (COUNT VII) FAILS AS A MATTER OF LAW BECAUSE THE PARTIES' "CONTRACTUAL ARRANGEMENT" CONTAINS NO PROMISE TO PROVIDE ANY PARTICULAR PROGRAMMING FOR A GIVEN PERIOD OF TIME

To state a claim for breach of contract under New Jersey law, a plaintiff must allege: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations."  *Frederico*, 507 F.3d at 203.  Under New Jersey law, "where the terms of the contract are clear and unambiguous there is no room for interpretation . . . and the courts must enforce those terms as written."  *JPMorgan Chase Bank, N.A.* v. *Republic Mortgage Insurance Co.*, 2011 WL 1750439, at *3 (D.N.J. May 4, 2011) (citation and internal quotation marks omitted).  "Nor may the courts remake a contract better than the parties 'themselves have seen fit to enter into, or alter it for the benefit of one party to the detriment of the other.'"  *Assisted Living Assocs.* v. *Moorestown Township*, 31 F. Supp. 2d 389, 398 (D.N.J. 1998) (quoting *James* v. *Federal Insurance Co.*, 73

A.2d 720, 721 (N.J. 1950)); *see also Connecticut General Life Insurance Co.* v. *Punia*, 884 F. Supp. 148, 155 (D.N.J. 1995) ("Furthermore, this Court cannot, and will not, give the parties to a contract more favorable terms than those that bargained for and codified in a clear and unambiguous document."). Where the only issue for the court to resolve is an interpretation of the contract, it may be properly decided upon a Rule 12(b)(6) motion to dismiss. *See Click Corp. of America* v. *Redco Foods, Inc.*, 424 F. Supp. 2d 753, 759 (D.N.J. 2006) (holding that contract interpretation is "a matter of law that is properly considered on a Rule 12(b)(6) motion to dismiss").

Plaintiff's breach of contract theory generally follows that TWC agreed, promised or represented that it would provide the MSG Networks in 2008 and breached that agreement, promise or representation when it could no longer carry the MSG Networks in early 2012.  In particular, the Amended Complaint alleges that "Defendant and its subscribers . . . were parties to a contractual arrangement under which Defendant was obliged to provide its subscribers, for a monthly fee, promised cable television programming, including but not limited to MSG and MSG+ programming." (AC ¶ 56).  Plaintiff, however, makes no attempt to reference, cite or quote an actual term in any written agreement or sufficiently allege the terms of a supposed oral agreement.  To be sure, Plaintiff does allege that he was solicited by a TWC representative in 2008. (AC ¶ 9). But in this allegation, he does no more than repeat, as found throughout the Amended Complaint, that TWC promised to deliver "sports programming broadcast" on the MSG Networks (AC ¶ 9), and that he accepted this "offer." (AC ¶ 12).[6]

Even accepting the terms of this alleged "contractual arrangement" as true, Plaintiff has not adequately alleged a breach of contract. Specifically, Plaintiff does not allege that the MSG Networks were promised to him for the duration of his tenure as a TWC subscriber.  At best, Plaintiff alleges that he was promised in 2008 he would receive those networks at that time, *i.e.*,

---

[6]     To the extent Hoffman relies upon an oral or implied agreement, such an oral agreement is unenforceable under the integration clause of the parties' written contract. *See infra*  n.10.

that the MSG Networks were part of the current lineup of networks offered by TWC.  Plaintiff has not alleged that he did not in fact receive the MSG Networks in 2008.  Indeed, Plaintiff has not (and cannot) allege that he did not receive the MSG Networks during the entire period that TWC was authorized to distribute that programming.  That TWC promised *in 2008* to provide particular programming *in 2012* is an entirely implausible inference to be drawn from Plaintiff's vague allegations.  Thus, as a matter of pleading, Plaintiff has not even alleged a breach of contract based upon his own characterization of the contract.

Moreover, this Court, on a motion to dismiss, need not credit Hoffman's proffered interpretation as true because it is merely a legal conclusion.  *See Bayer Chemicals Corp.* v. *Albermarle Corp.*, 171 Fed. Appx. 392, 397 n.9 (3d Cir. 2006) (holding that the district court was correct to disregard the parties' proffered contract interpretations and "properly conducted a *de novo* interpretation of the contract").  The court is free to consider the express terms of the contract and determine if such a promise, representation, or agreement is contained therein.[7]  A review of the relevant contract – the Subscriber Agreement and Terms of Service incorporated therein – reveals that TWC made no such promise, representation, or agreement to provide the MSG Networks after their carriage agreements for the MSG Networks expired.  *See* Quinn Decl. Exs. A, B.  Indeed, neither of these documents contains any promise to provide any particular programming over a given period of time.

---

[7]     TWC has provided a copy of the Residential Subscriber Agreement ("Subscriber Agreement") as Exhibit A and the Terms of Service incorporated therein as Exhibit B to the Declaration of Michael W. Quinn. (Hereinafter Quinn Decl. Ex. __).  These documents are provided to subscribers at the time of service initiation and available to subscribers through links on TWC's website.  The court may take judicial notice of these documents because Plaintiff references the "parties['] contractual arrangement" in the Amended Complaint (AC ¶ 56) and because the contracts are integral to Plaintiff's breach of contract claim.  "[A] document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment."  *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation and internal quotation marks omitted) (emphasis in original); *see also Samukai* v. *Emily Fisher Charter School of Advanced Studies*, 2007 WL 316449, at *3 (D.N.J. Jan. 30, 2007) (taking judicial notice of a contract on a motion to dismiss where the complaint specially referenced the contract and because it was integral to plaintiff's breach of contract claim). "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them."  *In re Burlington Coat Factory Securities Litigation*, 114 F.3d at 1426.

To the contrary, the provisions in the contract regarding the services that TWC will deliver specifically provide otherwise.   First, the Subscriber Agreement informs that

> The Services we provide and the way we deliver them will change from time to time, in part due to our efforts to improve them.  These changes may impact the Services you receive today . . . If you are under a promotional or other offering with a set price for a period of time, you are assured only that you will be charged the set price during the time specified.  *You are **not** assured that the Services you receive . . . will remain the same.*

Quinn Decl. Ex. A at ¶ 3(a) (emphasis added).[8]  Additionally, the Terms of Service provide that "[u]nless otherwise provided by applicable law, Time Warner Cable will notify you 30 days in advance of any price or service change."  Quinn Decl. Ex. B at 3.  These provisions affirmatively demonstrate that TWC does not promise, warrant or represent that its programming offerings will not change.  In fact, they reserve the right for TWC to change programming, which is, of course, essential when, as here, TWC is no longer contractually permitted to distribute certain programming.

Significantly, Plaintiff's breach of contract claim is not premised upon a breach of the Subscriber Agreement or an allegation that TWC failed to provide notice under the Terms of Service.[9]  Indeed, given the media coverage, Hoffman can hardly claim that he was unaware that TWC would not be permitted to carry the MSG Networks when its agreement with the networks' owners expired.  *See, e.g., Time Warner Cable Pulls Plug on MSG*, Star-Ledger, Jan. 2, 2012; *Time Warner Subscribers Face Cutoff of MSG*, Herald News (West Paterson, N.J.), Dec. 31, 2011; Richard Sandomir, *MSG and Time Warner Face Off*, N.Y. Times, Dec. 17, 2011, at D4.  Instead, Plaintiff's entire claim is based upon his implausible contractual interpretation that TWC

---

[8]     Services is defined in the Subscriber Agreement as "the services you buy from us," including video programming.  *See* Quinn Decl. Ex. A. at ¶ 16(*l*).

[9]     TWC did provide notice of potential service changes regarding the MSG Networks beginning in September 2011 through December of 2011.  *See* Quinn Decl. Ex. C.  The Court on a motion to dismiss may take judicial notice of these publicly available notices to demonstrate that Plaintiff was on notice of the information contained therein.  *Benak* v. *Alliance Capital Management, L.P.*, 349 F. Supp. 2d 882, 888 n.8 (D.N.J. 2004), *aff'd*, 435 F.3d 396 (3d Cir. 2006).

would provide the MSG Networks in perpetuity.  (AC ¶ 56).  A plain reading of the Subscriber

Agreement and Terms of Services demonstrates that Plaintiff's interpretation is incorrect.[10]

Moreover, as the Terms of Service provides and TWC's notice in the Bergen Record explains, if

Hoffman was dissatisfied with a change in service, Hoffman's remedy was to cancel or down-

grade his subscription, and he is not entitled to any compensation, adjustment, or refund for this

change in programming.[11]  *See* Quinn Decl. Ex. B at 2 ("You may request that your services be

disconnected at any time."); Quinn Decl. Ex. C at 1 ("You may downgrade or terminate service

without charge at any time.").

In fact, Hoffman's voluntary payment for TWC's services when the MSG Networks were

unavailable bars his contract claim. *See Sutton* v. *Metropolitan Casualty Insurance Co.*, 186 A.

465, 465 (N.J. 1936) ("The general rule is that a payment voluntarily made on a demand not en-

forceable against the payer, without mistake of fact, or fraud, duress, or extortion, cannot be re-

gained."); *see also Flammia* v. *Maller*, 169 A.2d 488, 459 (N.J. Super. Ct. App. Div. 1961)

(holding that "[t]he general rule is that payments made under a mistake of law or in ignorance of

---

[10]      To the extent that Plaintiff attempts to assert additional detail regarding the terms of any oral contract, that oral contract is unenforceable under the terms of the Subscriber Agreement. *See* Quinn Decl. Ex. A at ¶ 20 ("The Customer Agreements constitute the entire agreement between you and TWC.  You are not entitled to rely on any agreements or undertakings made by TWC personnel other than those contained in the Customer Agreements.").  The "Customer Agreements" are defined in the Subscriber Agreement, and include the Subscriber Agreement, Terms of Service, Work Orders, Acceptable Use Policy, and Addendums.  Each of these agreements is provided at installation and available at TWC's website. *See Aequus Technologies, L.L.C.* v. *gh, L.L.C.*, 2011 WL 310668, at *4 (D.N.J. Jan. 28, 2011) ("A valid integration clause in a contract precludes evidence of alleged negotiations, conversations, and agreements relating to the terms contained in the contract itself.") (citing *Panaccione* v. *Holowiak*, 2008 WL 4876577, at *7 (N.J. Super. Ct. App. Div. Nov. 12, 2008)).

[11]      Additionally, the Subscriber Agreement specifically limits the extent to which Hoffman can assert damages for a breach of contract.  The Subscriber Agreement provides that, except for service interruptions of *all* video services longer than 24 hours, "TWC will not be liable to you for any losses or damages of any kind based on breaches of this agreement or your relationship with us, regardless of the basis of any claim."  Quinn Decl. Ex A at ¶ 10.  While the court need not reach this issue because there is no breach of contract in any event, such a limitation of liability provision is enforceable in New Jersey. *Professional Cleaning and Innovative Building Services, Inc.* v. *Kennedy Funding, Inc.*, 2005 WL 1924344, at *2 (D.N.J. Aug. 11, 2005) ("In New Jersey, contractual limitations of liability have traditionally been upheld so long as they do not violate public policy.").

law, but with full knowledge of the facts, cannot be recovered"). Hoffman alleges that he "continued to pay such fees and charges even after January 1, 2012 . . . ." (AC ¶ 18). By continuing to pay for his subscription when the MSG Networks were unavailable, Plaintiff cannot now claim that he is contractually entitled to a refund.

Thus, accepting all of his factual allegations as true, Plaintiff's breach of contract claim fails as a matter of law because, even as alleged, the "contractual understanding" can only be understood to be a present indication that TWC included the MSG Networks among its "variety of programming" at the time. This alleged promise and representation made in 2008 cannot plausibly be interpreted as a promise or representation to provide the MSG Networks' programming even after TWC's carriage rights expired in 2012. Moreover, the actual terms of the contract show that TWC made no promise to provide the MSG Networks in perpetuity and specifically demonstrates TWC could change the programming it provided upon notice. Finally, Plaintiff is not entitled to seek a refund in a breach of contract claim where he voluntarily paid for his subscription when the MSG Networks' programming was unavailable. Thus, the breach of contract claim should be dismissed for failure to state a claim.

## III.   PLAINTIFF'S UNJUST ENRICHMENT CLAIM (COUNT VI) CANNOT BE MAINTAINED BECAUSE THE PARTIES' RELATIONSHIP IS GOVERNED BY AN ENFORCEABLE CONTRACT

Plaintiff's final claim is that TWC was unjustly enriched when it did not adjust its subscription charges after losing the right to carry the MSG Networks. This claim must fail, as a threshold matter, because the parties' rights are governed by an enforceable contract. Indeed, it is well-settled under New Jersey law that a claim for unjust enrichment "will not be imposed when a valid, unrescinded contract governs the rights of the parties" and "is mutually exclusive of recovery based on a contract theory." *Duffy* v. *Charles Schwab & Co.*, 123 F. Supp. 2d 802, 814 (D.N.J. 2000); *see also Suburban Transfer Service, Inc.* v. *Beech Holdings, Inc.*, 716 F.2d 220, 226 (3d Cir. 1983).

Here, Plaintiff has specifically, and correctly, pleaded that the parties' relationship is governed by contract (AC ¶ 56) – the Subscriber Agreement and Terms of Service.  Hoffman did not plead his unjust enrichment theory in the alternative. (*See* AC ¶¶ 48-54).  Instead, as explained above, the enforceable contract between the parties specifically demonstrates that TWC acted within its rights, met its entire contractual obligation and, therefore, was not unjustly enriched.

Additionally, "'[t]o establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of the benefit without payment would be unjust.'"  *Duffy*, 123 F. Supp. 2d at 815 (quoting *VRG Corp.* v. *GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994)).  "'The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.'"  *Id.*  Based upon the contracts between the parties, Hoffman had no expectation that TWC would provide remuneration when TWC could not carry the MSG Networks.  Put simply, it cannot be said that TWC was unjustly enriched.  Indeed, as explained above, if Hoffman did not believe TWC services were adequate, his contractual rights permitted him to cancel or downgrade his services.  Instead, Hoffman continued to subscribe and pay for his subscription after TWC could no longer distribute the MSG Networks.  (See AC ¶ 18).

Finally, as an independent ground for dismissal, Hoffman's voluntary payment of his monthly charges, knowing that the MSG Networks were unavailable, bars his claim for unjust enrichment.  *See Realty Asset Properties, Ltd.* v. *Township of Millstone*, 2006 WL 3456490, at *5 (N.J. Super. Ct. App. Div. Dec. 1, 2006) ("[A] voluntary payment is an exception to unjust enrichment.") (citation omitted); *Buschbaum* v. *Barron*, 61 A.2d 512, 513 (N.J. Super. Ct. App. Div. 1948) (holding that voluntary payment bars entitlement to restitution).

## IV.    THE AMENDED COMPLAINT SHOULD BE DISMISSED <ins>WITH PREJUDICE</ins>

For the reasons set forth above, it is clear that Plaintiff cannot allege the facts necessary to state a claim under the NJCFA, a breach of contract claim, or a claim for unjust enrichment rendering any further amendment futile.  Under these circumstances, it is appropriate for the Court to dismiss this action with prejudice.  *California Public Employees' Retirement System* v. *Chubb Corp.*, 394 F.3d 126, 165 (3d Cir. 2004) (noting that dismissal with prejudice may be granted for reasons "such as undue delay, bad faith, dilatory motive, prejudice and futility") (citation omitted).

## <ins>CONCLUSION</ins>

For the reasons set forth above, the Amended Complaint should be dismissed in its entirety with prejudice pursuant to Rule 8(a), Rule 9(b) and Rule 12(b)(6).

By:  /s/ William E. Goydan
WILLIAM E. GOYDAN

WOLFF & SAMSON PC
One Boland Drive
West Orange, New Jersey 07052
(973) 325-1500

Attorneys for *Defendant Time Warner Cable Inc.*

OF COUNSEL:

Cahill Gordon & Reindel LLP
80 Pine Street
New York, New York 10005
(212) 701-3000

Dated:  April 13, 2012

-24-