**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :

HAROLD M. HOFFMAN, INDIVIDUALLY  :
AND ON BEHALF OF THOSE SIMILARLY  : Case No: 12-cv-978 (ES)(CLW)
SITUATED,  :
                                            :

                    Plaintiff,  :

     v.  :

TIME WARNER CABLE, INC.,  :

                   Defendant.  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

---

**PLAINTIFF'S MEMORANDUM OF LAW IN**
**OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

---

CHRONAKIS SIACHOS, LLC
*Attorneys for Plaintiff*

50 Harrison Street, Suite 315
Hoboken, New Jersey 07030
Tel: 201.792.7777
Fax: 201.792.7771

**TABLE OF CONTENTS**

Table of Authorities …………………………………..………………………i

PRELIMINARY STATEMENT ………………………..…………………………1

STATEMENT OF FACTS AND PROCEDURAL HISTORY………………………... 4

ARGUMENT ……………………………………………………….…5

    Point I: The Amended Complaint Satisfies The Liberal Pleading
            Standard Under Rule 12(b)(6) …………………………………5

      A.  Legal Standard For Rule 12(b)(6) Motion To Dismiss ………….... 5

      B.  Plaintiff Has Properly Set Forth Facts In Support Of Each Element
         Of His Fraud Claims …………………………………………... 6

      C.  Plaintiff Has Properly Set Forth Facts In Support Of Each Element
         Of His Breach Of Contract Claims …………………………... 8

      D.  The Complaint Clearly Sets Forth Adequate Claims Of
         Ascertainable Loss …………………………………………… 10

    Point II: Defendant's Reliance On Exhibits Outside The Pleadings Is
            Unpersuasive and Procedurally Improper………………… 12

      A.  A Motion To Dismiss Is To Be Based On The Adequacy Of The
         Pleadings, Not The Ability Of The Plaintiff To Prove All
         Assertions …………………………………………………... 12

      B.  The Purported Agreement Relied Upon By Defendant Is Not Relied
         Upon By Plaintiff And Therefore Cannot Be Considered For The
         Purpose Of Deciding This Motion …………………………….. 13

      C.  Even If The Contract Could Be Considered At This Juncture, Its
         Provisions Support The Plaintiff's Claims ………………………… 14

    Point III: The Existence Of A Contract Does Not Preclude The Assertion
            Of Plaintiff's Unjust Enrichment Claim ……....................….. 15

    Point IV: To The Extent The Complaint Is Deficient, Plaintiff
            Should Be Afforded The Opportunity To Amend………... 16

CONCULSION………………………………………………………………16

## TABLE OF AUTHORITIES

*Ashcroft v. Iqbal*
     556 U.S. 662 (2009) ……………………………………………………… 5, 6, 11

*Boyes v. Greenwich Boat Works*
     27 F. Supp. 2d 543 (D.N.J. 1998) …………………………………………… 9

*Castro v. NYT Television*
     370 N.J. Super. 282 (App. Div. 2004) …………………………………… 8

*County of Essex v. First Union Nat'l Bank*
     373 N.J. Super. 543 (2004) ………………………………………………… 15

*Coyle v. Englander's*
     199 N.J. Super. 212 (App. Div. 1985) …………………………………… 9

*Dabush v. Mercedes-Benz USA, LLC*
     378 N.J. Super. 105 (App. Div.), *certif. denied*, 185 N.J. 265 (2005) ………… 7

*Bell Atlantic Corp. v. Twombly*
     550 U.S. 544 (2007) ……………………………………………………… 5, 12

*Flight Sys., Inc. v. Elec. Data Sys.*
     112 F.3d 124 (3d Cir. 1997) ………………………………………………. 6

*Gennari v. Weichert Co. Realtors*
     148 N.J. 582 (1997) ……………………………………………………... 8

*Haydo v. Amerikohl Mining*
     830 F.2d 494 (3d Cir. 1987) ………………………………………………. 7

*IG-I Holdings, Inc. v. Bennet (In re G-I Holdings, Inc.)*
     328 B.R. 691 (D.N.J. 2005) ……………………………………………... 6

*In re Burlington Coat Factory Securities Litigation*
     114 F.3d 1410 (3d Cir. 1997) …………………………………………… 13

*Kutzin v. Pirnie*
     124 N.J. 500 (1991) ……………………………………………………… 14

*Leon v. Rite Aid Corp.*
     340 N.J. Super. 462 (App. Div. 2001) …………………………………… 8

*Neitzke v. Williams*
     490 U.S. 319 (1989) ……………………………………………………… 12

*N.J. Citizen Action v. Schering-Plough Corp.*
     367 N.J. Super. 8 (App. Div.), *certif. denied*, 178 N.J. 249 (2003) …………… 6

*Pension Benefit Guar. Corp. v. White Consol. Indus.*
    998 F.2d 1192 (3d Cir. 1993) …………………………………………………. 11

*Phillips v. Cnty. of Allegheny*
    515 F.3d 224 (3d Cir. 2008) ………………………………………………… 7,11

*Scheuer v. Rhodes*
    416 U.S. 232 (1974) ………………………………………………………… 11

*Shane v. Fauver*
    213 F.3d 113 (3d Cir. 2000) ………………………………………………... 16

*Sibert v. Phelan*
    901 F. Supp. 183 (D.N.J. 1995) …………………………………………… 7

*Weichert Co. Realtors v. Ryan*
    128 N.J. 427 (1992) ………………………………………………………… 10

*WorldCom, Inc. v. Graphnet, Inc.*
    343 F.3d 651 (3d Cir. 2003) ………………………………………………. 12, 16

*VRG Corp. v. GKN Realty Corp.*
    135 N.J. 539 (1994) ………………………………………………………… 15

Fᴇᴅ. R. Cɪᴠ. P. 8(d)(2) ………………………………………………………… 15

Fᴇᴅ. R. Cɪᴠ. P. 12(b)(6) ………………………………………………..………. *passim*

ii

## PRELIMINARY STATEMENT

If the twenty-first century corporate robber barons sought to identify a poster child to personify their campaign of ruinous profit-mongering, they could hardly do better than selecting Time Warner Cable, Inc. ("TWC"). TWC's conduct embodies so many of the hallmarks of unscrupulous greed: broken promises, bait-and-switch commercial tactics, financial dishonesty, and the CEOs in their tailor-made suits counting their profits while the "ninety-nine percent" suffered as a result.

This action seeks redress for one irrefutable fact: TWC collected untold millions of dollars from New Jersey consumers in 2012 for a service that TWC promised, charged for, but did not provide. An identifiable portion of TWC's monthly charges in January and February 2012 were attributable to the provision of the MSG and MSG+ Networks to TWC subscribers. Yet, for 49 days, TWC did not provide the MSG or MSG+ Networks. No matter how many cases TWC cites in its moving papers, the facts will not change. TWC is left sitting smugly in corporate headquarters, issuing bonuses from the piles of ill-gotten profits "earned" through a clever sleight of hand conducted in the dark corners of the media glare surrounding a contract dispute between MSG and TWC. In the end, New Jersey consumers were the victims.

TWC's conduct represents consumer fraud of the highest order. TWC attempts to minimize the damage its actions caused – after all, what's the big deal about several dollars a month among friends? When there are potentially millions and millions of friends, the big deal is that TWC has kept those millions

for itself – without providing the corresponding service to which those monies are tied.  As demonstrated in its moving papers, TWC clearly does not recognize the illegal and unconscionable nature of its actions.  Perhaps TWC has enjoyed the culture of corporate gluttony to the point that it has been desensitized to its continuing obligation to provide services in exchange for money.

New Jersey statutory and common law, however, does recognize the illegal and unconscionable nature of TWC's actions – and provides a remedy for those actions.  Plaintiff's Amended Complaint sets forth several causes of action, with ample specificity and the appropriate elements, to easily move past a Rule 12(b)(6) motion.  Rather than addressing the sufficiency of Plaintiff's pleadings – as Rule 12(b)(6) requires – TWC seeks to litigate the merits of Plaintiff's claims at this stage.  Congress did not grant TWC this authority when it fashioned the Federal Rules of Civil Procedure.

It seems unfathomable that TWC is unaware of the proper standard of review in a 12(b)(6) motion, yet its moving papers read like a post-discovery summary judgment motion or pre-trial brief.  Ignorance of the law is not the culprit here.  Rather, TWC is desperate to avoid discovery – even basic Rule 23 class-based discovery – in this action.   Indeed, TWC awkwardly (and unsuccessfully) sought a stay of discovery after being informed of the Court's preference and practice that discovery proceed pending a motion to dismiss.

TWC's fear is that the scope of its illegal conduct will be exposed in discovery, once Plaintiff obtains (1) the number of subscribers affected by the MSG blackout and (2) the defined, finite amount of TWC's monthly subscription

fee attributable to the provision of MSG and MSG+ to its subscribers.  The latter piece of information is admittedly available, but something that TWC will seek to protect at all costs – even at the cost of candor, when it tells the Court that this number cannot be divined, notwithstanding the admission of a TWC representative, through public media, that the number is a known quantity, which directly correlates to TWC's monthly subscription cost.  Given these public admission by a TWC spokesperson, broadcast on the air in Febriary 2012, TWC's arguments not only fail to meet the Rule 12(b)(6) standard, but also lack credibility.

For these reasons, as set forth in detail below, TWC's motion to dismiss should be denied.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Harold Hoffman, a New Jersey resident and customer of Time Warner Cable, Inc., brought the instant action, on behalf of himself as well as the many other customers similarly situated, to assert claims of unjust enrichment, breach of contract, and violation of the New Jersey Consumer Fraud Act ("CFA") against TWC. Plaintiff alleges that TWC made a series of misrepresentations to him about the television services TWC provides to its subscribers. Specifically, TWC told Plaintiff he would receive certain channels (the "MSG Networks") as long as he continued to pay his subscriber fees. Plaintiff relied on the promise made by TWC and agreed to subscribe to its cable service.

Plaintiff dutifully upheld his end of the bargain, paying his subscription fees each month. However, TWC stopped providing the MSG Networks in January 2012 for a 49-day period. Despite this significant reduction in service, TWC continued to charge its customers the same rate. TWC did not change its subscription rate, nor did it offer a refund to its customers. To date, Defendant has made no effort to compensate Plaintiff for the 49 days in which he paid for a service that he did not receive.

TWC removed this action to the United States District Court on February 17, 2012. Plaintiff filed an Amended Complaint on March 13, 2012.

## ARGUMENT

## POINT I

### THE AMENDED COMPLAINT SATISFIES THE LIBERAL PLEADING STANDARD UNDER RULE 12(b)(6)

**A.     Legal Standard For Rule 12(b)(6) Motion To Dismiss**

Courts approach motions to dismiss pursuant to FED. R. CIV. P. 12(b)(6) with disfavor.  *See, e.g. IG-I Holdings, Inc. v. Bennet (In re G-I Holdings, Inc.)*, 328 B.R. 691, 694 (D.N.J. 2005). FED. R. CIV. P. 12(b)(6) permits a party to move to dismiss an action if the action fails to state a claim upon which relief can be granted.   To move on to discovery, an action simply needs a complaint to provide factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In evaluating the sufficiency of a complaint, a court must engage in a two-step process.  Dismissal under Rule 12(b)(6) is reserved for only those "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Defeating a Rule 12(b)(6) motion does <u>not</u> require "detailed factual allegations." *Twombly*, 550 U.S. at 555.

Plaintiff's Amended Complaint contains far more than mere conclusions. Plaintiff describes the agreement entered into by the parties and the services promised by the Defendant pursuant to that agreement. *See Amended Complaint ("Compl.")* ¶¶ 7-11, 20. Plaintiff describes his acceptance of Defendant's offer. *See Compl.* ¶ 12. Plaintiff describes the alleged breach of the agreement entered into by the parties, as well as the circumstances following the breach. *See Compl.* ¶¶

5

13-18. Plaintiff describes the nature of the damage caused by Defendant's actions. *See Compl.* ¶¶ 13-19, 23-25. This plainly constitutes more than a mere recitation of the elements of a cause of action.

Second, the court must decide whether the remaining allegations in the complaint—taken as true—state a "plausible claim for relief." *Ashcroft,* 556 U.S. at 679. By accepting the allegations in the Complaint as true, a court looks at the legal sufficiency of the Complaint in deciding whether to grant a motion to dismiss for failure to state a claim. *Haydo v. Amerikohl Mining*, 830 F.2d 494, 496 (3d Cir. 1987). Dismissal of a complaint under Rule 12(b)(6) is only appropriate when a claim lacks a required element, or where there exists an "insuperable barrier" to a claim such as improper service of process or improper process. *See Flight Sys., Inc. v. Elec. Data Sys.*, 112 F.3d 124, 127-28 (3d Cir. 1997); *Sibert v. Phelan*, 901 F. Supp. 183, 185 (D.N.J. 1995). There is no such deficiency in Plaintiff's Complaint. Plaintiff has properly pleaded each of his claims, easily satisfying the plausibility standard applicable here. *See Ashcroft,* 556 U.S. at 679.

B.     **Plaintiff Has Properly Set Forth Facts In Support Of Each Element Of His Fraud Claims**

The Complaint alleges sufficient facts in support of Plaintiff's claim that Defendant unlawfully misrepresented the nature of its services, in violation of the CFA. To state a claim under the CFA, a plaintiff must allege (1) an unlawful practice, (2) an ascertainable loss, and (3) causation between the unlawful practice and the ascertainable loss. *Dabush v. Mercedes-Benz USA, LLC,* 378 N.J. Super. 105, 114 (App. Div.), *certif. denied*, 185 N.J. 265 (2005); *N.J. Citizen Action v.*

*Schering-Plough Corp.*, 367 N.J. Super. 8, 12-13 (App. Div.), *certif. denied*, 178 N.J. 249 (2003).

Plaintiff has properly alleged each of these elements. It is clear that the Complaint properly alleges affirmative misrepresentation by the Defendant, specifically that the services provided would include MSG Networks as long as Plaintiff continued to pay subscription fees. *Compl.* ¶¶ 7-10. Plaintiff has alleged ascertainable loss by the plaintiff in the form of payments made by Plaintiff and improperly retained by Defendant as well as a direct causal relationship between the loss and the misrepresentations. *Compl.* ¶¶ 11-12, 19-26.

Conduct in violation of the CFA, whether it be an omission or active misrepresentation, must be made, as here, "in connection" with the sale or advertisement of a product or service. *Castro v. NYT Television*, 370 N.J. Super. 282, 294 (App. Div. 2004). And, in the case of an affirmative act, here a misrepresentation, the plaintiff is not required to prove intent or even actual deceit or fraud. *Cox*, 138 N.J. at 17-18; *Leon v. Rite Aid Corp.*, 340 N.J. Super. 462, 468 (App. Div. 2001). "One who makes an affirmative misrepresentation is liable even in the absence of knowledge of the falsity of the misrepresentation, negligence, or the intent to deceive." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 605 (1997). Nor must the representation be one of material fact, as clarified by the Appellate Division in Leon:

> We do not read [*Rodio v. Smith*, 123 N.J. 345 (1991)] for the proposition that a plaintiff must prove a misstatement of material fact when claiming an affirmative act of misrepresentation. *Leon*, 340 N.J. Super. at 470.

Defendant makes the error of arguing against the merits of Plaintiff's claims, rather than the sufficiency of the pleadings. Defendant's position that the

Plaintiff's allegations of misrepresentations are insufficient simply because they are not specific enough is not properly raised at this preliminary stage. On a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), "courts are required to accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Assuming, as the Court must, that the allegations made by Plaintiff are accurate, Plaintiff has clearly set forth facts supporting his claims.

The CFA is a remedial statute that "should be construed liberally in favor of protecting consumers." *Boyes v. Greenwich Boat Works,* 27 F. Supp. 2d 543, 547 (D.N.J. 1998). Plainly, the "act is broadly designed to protect the public." *Skeer v. EMK Motors, Inc.,* 187 N.J. Super. 465, 470 (App. Div. 1982). "The available legislative history demonstrates that the Act was intended to be one of the strongest consumer protection laws in the nation." *Boyes,* 27 F. Supp. at 547. In light of New Jersey's strong public policy in favor of greater consumer protection and the liberal pleading standard applicable to a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), Defendant's motion should be denied as to all Consumer Fraud claims.

C.      **Plaintiff Has Properly Set Forth Facts In Support Of Each Element Of His Breach Of Contract Claims**

The Complaint sets forth all three required elements for breach of contract. A properly plead claim for breach of contract includes: (1) the existence of a valid contract; (2) breach of the terms of the contract by the offending party; and (3) damages to the plaintiff resulting from the breach of contract. *Coyle v.*

*Englander's*, 199 N.J. Super. 212, 223 (App. Div. 1985). It is well settled that a valid and enforceable agreement must contain four elements: (1) an offer; (2) an acceptance; (3) consideration; and (4) a meeting of the minds.  *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (1992).

Plaintiff's Complaint alleges facts establishing each of the four elements of a valid and enforceable agreement.  The Complaint describes the offer made by Defendant, in satisfaction of the first element. *Compl.* ¶¶ 7-10; *See Ryan*, 128 N.J. at 435. The Complaint describes Plaintiff's acceptance of Defendant's offer, in satisfaction of the second element. *Compl.* ¶¶ 12; *See Ryan*, 128 N.J. at 435.  The Complaint describes the payments made by Plaintiff and the service provided by Defendant, in satisfaction of the element of consideration. *Compl.* ¶¶ 11-13; *See Ryan*, 128 N.J. at 435. The Complaint describes the exchange of services for money, according to the terms promised and expected, until Defendant's breach. *Compl.* ¶¶ 7-13. This satisfies the fourth element of a valid and enforceable contract, the meeting of the minds. *See Ryan*, 128 N.J. at 435.

Plaintiff's Complaint properly alleges both breach of the agreement entered into by the parties and damages caused by the breach. Plaintiff clearly states that Defendant promised to provide specific television channels, including MSG Networks, in exchange for Plaintiff's subscription fees. *Compl.* ¶¶ 8-12. The Defendant then ceased to provide the channels promised to the Plaintiff. *Compl.* ¶ 13. This represents a breach in their agreement. Plaintiff details the damages caused by this breach, including Defendant's retention of fees paid by Plaintiff despite the loss of services promised. *Compl.* ¶¶ 13-19, 22-26. This represents an ascertainable loss to the Plaintiff that was caused by Defendant's breach of their

agreement. Accordingly, based on all that is set forth above and the liberal pleading standard applicable to a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), Defendant's motion should be denied as to all breach of contract claims.

**D.    The Complaint Clearly Sets Forth Adequate Claims Of Ascertainable Loss**

Plaintiff has claimed specific ascertainable losses, based on the value of the channels that were promised but not delivered. *Compl.* ¶¶ 19, 23-26. Incredibly, Defendant claims that this is inadequate, because cable subscribers are charged a flat monthly fee for multiple channels, rather than being charged a la carte. This ignores the fact that cable providers pay fees to the owners of those channels in exchange for the right to offer those channels as part of their package. Each channel clearly has monetary value in relation to the value of the overall package. If a consumer bought a package that purportedly contained several physical items, and one of those items was missing or damaged, no one would seriously argue that the consumer suffered no ascertainable loss. Similarly, the Plaintiff should be entitled to conduct discovery to determine the precise value of each channel in relation to the overall package purchased.

TWC has admitted that the amount it pays for the right to provide the MSG Networks is directly related to how much TWC charges customers for its services. *See Mangan Interview Transcript,* dated February 15, 2012, attached as **Exhibit A** to Certification of Harold M. Hoffman, 4:12-14, 22:16-20 ("Interview"). TWC spokeperson Eric Mangan publicly answered questions about the MSG contract dispute on the WFAN radio station, "speaking for the company [TWC}"when he did so. *Id.,*15:15-16.  TWC admitted that it failed to provide a

rebate to its customers despite the 49-day blackout of the MSG Networks. *Interview* 21:5-9.

Mangan's public admissions on behalf of TWC contradict TWC's moving papers in at least two fundamental aspects. First, Eric Mangan openly admits that the amount TWC pays to MSG has a direct correlation to the amount TWC charges its subscribers. *Interview*, 22:16-20. Second, there is a defined price that TWC pays MSG to be able to broadcast the MSG Networks. *Id.*, 8:5-11.

These two points belie TWC's assertion that the monthly subscriber fee is a mathematical black box of sorts, from which not even a wizard or calculus professor could divine the dollar figure attributable to TWC's provision of the MSG Networks (or lack thereof). Mangan openly admitted that TWC would charge its subscribers more if it had to pay MSG more. Why? Common sense suggests that the more TWC pays, the more it needs to charge to make a profit. TWC, however, suggests that only by a miracle of the market forces does the randomly-selected monthly subscription price cover the unrelated costs in the various contracts with dozens and dozens of broadcast networks.

TWC's version (or the version it presents to the Court in this motion) simply lacks credibility. While this does not bear on the sufficiency of Plaintiff's pleadings, it does call TWC's candor into question. The allegations in the Amended Complaint are entitled to a presumption of truth at this stage. TWC's legal arguments, however, are not entitled to such a presumption when they are so plainly at odds with TWC's prior, publicly broadcast, admissions.

Accordingly, based on all that is set forth above and the liberal pleading standard applicable to a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), Defendant's motion should be denied as to the issue of ascertainable loss.

### POINT II

**DEFENDANT'S RELIANCE ON EXHIBITS OUTSIDE THE PLEADINGS IS UNPERSUASIVE AND PROCEDURALLY IMPROPER**

**A.      A Motion To Dismiss Is To Be Based On The Adequacy Of The Pleadings, Not The Ability Of The Plaintiff To Prove All Assertions**

Defendant has filed a motion to dismiss, not a motion for summary judgment. Yet Defendant improperly bases arguments on factual allegations rather than the pleadings. In deciding a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), courts must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [Plaintiff]." *WorldCom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003). Despite the requirement that Plaintiff be afforded all reasonable inferences at this juncture, Defendant spends a significant portion of its brief discussing its doubts as to the content of the representations made to Plaintiff.

The Supreme Court has held that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted); *see also Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974) (holding that a well-pleaded complaint may proceed even if recovery is unlikely); *Ashcroft*, 556 U.S. at 678. ("The plausibility standard is not akin to a probability requirement."). *Twombly's* plausibility standard requires the pleader to include

12

only "enough factual matter (taken as true) to suggest the required element," which "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips,* 515 F.3d at 234. Simply put, "Rule 12(b)(6) does not countenance... dismissals based on a judge's disbelief of a complaint's factual allegations." *Twombly* at 556 (citing *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)).

At this stage in the litigation, Plaintiff is not required to prove that its allegations are absolutely accurate or even probable. Rather, Plaintiff is simply required to plead a set of facts that can plausibly lead to a remedy. Plaintiff's Complaint easily satisfies this standard.

**B.    The Purported Agreement Relied Upon By Defendant Is Not Relied Upon By Plaintiff And Therefore Cannot Be Considered For The Purpose Of Deciding This Motion**

TWC erroneously bases a substantial portion of its argument on a purported agreement between the parties. While case law does state, "a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment," this does not permit Defendants to rely on their alleged agreement. *In re Burlington Coat Factory Securities Litigation,* 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original). This alleged agreement is not the basis of Plaintiff's claims. Plaintiff bases his claims on statements made by TWC.

TWC overlooks a major characteristic of circumstances in which a court may permit reliance on a document outside the pleadings at the motion to

13

dismiss stage. Such a document, in addition to being integral to or expressly relied upon in the complaint, must also be undisputedly authentic. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192,1196 (3d Cir. 1993). Not only has TWC failed to establish that this document is authentic without dispute, but the Complaint does not rely on it. Accordingly, TWC's reliance on this alleged agreement is procedurally improper.

**C.    Even If The Contract Could Be Considered At This Juncture, Its Provisions Support The Plaintiff's Claims**

As established above, this motion should be decided on the adequacy of the pleadings and not the terms of the purported contract submitted by Defendant. However, even if the Court chooses to consider this contract, a question of fact still remains as to Defendant's breach.

The contract cited by Defendant requires a minimum of 30 days notice prior to any service changes. Defendant argues that news coverage of negotiations between Defendant and the owner of MSG Networks, coverage that was not provided by Defendant but rather various newspapers owned by other media companies, constitutes proper notice. Despite being a cable provider, Defendant fails to mention a single television advertisement that notified customers of the potential loss of MSG Networks. Defendant presumably mails bills to its subscribers, yet does not mention ever mailing any kind of written notice of the impending service changes. The only notifications directly provided by Defendant were legal notices in a local newspaper. Defendant claims that this method was sufficient notice. A reasonable cable customer might expect communications from the cable company to be on television or perhaps in the

14

same format they receive billing information, whether that is electronic or a traditional mailing. A reasonable customer would not expect to receive communications in the legal notices section of a local newspaper.

This is not reasonable notice, and the alleged agreement certainly does not support Defendant's position that the Complaint fails as a matter of law.

### POINT III

**THE EXISTENCE OF A CONTRACT
DOES NOT PRECLUDE THE ASSERTION OF
PLAINTIFF'S UNJUST ENRICHMENT CLAIM**

TWC asserts that Plaintiff's unjust enrichment claim is precluded by the existence of a contract between the parties. However, to the extent a contract claim is precluded Plaintiff may still state a valid claim for unjust enrichment. *See* FED. R. CIV. P. 8(d)(2). To properly state a claim for unjust enrichment under New Jersey law, a plaintiff must only allege that the defendant received a benefit and that retention of that benefit without payment would be unjust. *County of Essex v. First Union Nat'l Bank,* 373 N.J. Super. 543, 550 (2004); *Kutzin v. Pirnie*, 124 N.J. 500, 509 (1991).

Plaintiff paid for a specific package of channels. *Compl.* ¶¶ 11-12. Defendant, without notice, failed to deliver the channels as promised. *Compl.* ¶ 13. Despite its partial performance, Defendant retained the full amount of money paid by Plaintiff. *Compl.* ¶¶ 13, 16-19. To permit Defendant to retain the benefit of Plaintiff's subscription fees under such circumstances would be unjust. "The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit

15

on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994).

## POINT IV

### TO THE EXTENT THE COMPLAINT IS DEFICIENT, PLAINTIFF SHOULD BE AFFORDED THE OPPORTUNITY TO AMEND

At this juncture, the factual allegations of Plaintiff's Complaint are to be accepted as true and viewed in the most favorable light. *WorldCom,* 343 F.3d at 653. However, if the Court finds that the Complaint fails to state a claim, Plaintiff should be provided opportunity to amend, unless such opportunity would be futile. *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).

## CONCLUSION

For the reasons set forth above, the Defendant's Motion to Dismiss the Amended Complaint should be denied. In the event that any portion of the Amended Complaint is found to be deficient in any way, Plaintiff respectfully requests the opportunity to amend the Complaint.

Dated: May 18, 2012

CHRONAKIS SIACHOS, LLC
*Attorneys for Plaintiff, Harold Hoffman*


*s/Philip C. Chronakis*

PHILIP C. CHRONAKIS

16