NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HAROLD M. HOFMAN, individually and on behalf of those similarly situated<br><br>                              Plaintiff,<br><br>v.<br><br>TIME WARNER CABLE INC.,<br><br><br>                              Defendants. | Civ. No.  12-00978 (ES)<br><br><br><br>**O P I N I O N** |

*Appearances by:*

CHRONAKIS SIACHOS, LLC
50 Harrison Street, Suite 315
Hoboken, NJ 07030

HAROLD M. HOFFMAN, ESQ.
240 Grand Avenue
Englewood, NJ 07631

　　　*Attorneys for Plaintiff,*

WOLFF & SAMSON PC
William E. Goydan
Mindy P. Fox
One Boland Drive
West Orange, NJ 07052

CAHILL CORDEN & REINDELL LLP
Jonathan D. Their (*pro hac vice* admission pending)
Brian T. Markley (*pro hac vice* admission pending)
John A. Eakins (*pro hac vice* admission pending)
80 Pine Street

New York, NY 10005

*Attorneys for Defendants.*

**DEBEVOISE, Senior District Judge**

This motion arises from a class challenge for consumer protection, breach of contract, and unjust enrichment against a television cable provider for failure to air two sports channels during a 49-day period.  For the reasons set forth below, the Court GRANTS the Defendant cable company's motion to dismiss the Amended Complaint.

### I.  BACKGROUND

Mr. Harold Hoffman, an attorney from Englewood, NJ, raises this class claim on behalf of himself and fourteen million customers against Time Warner Cable, Inc. (hereinafter "TWC") for the failure to provide certain sports programming during a 49-day period, allegedly resulting in breach of contract, unjust enrichment, and consumer fraud pursuant to the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1 *et seq*.  This matter comes before the Court today on a motion to dismiss the Amended Complaint. [1]

---

[1]   Although not dispositive, it bears mention that Mr. Hoffman has a history of bringing claims under the NJCFA.  See e.g., Hoffman v. AsSeenOnTV.com, Inc., 962 A.2d 532, 542 (N.J. Super. Ct. App. Div. 2009) (observing that Mr. Hoffman has filed "over 40 purported class-action, consumer fraud lawsuits in Bergen County, most all of which plaintiff prosecuted with a similar pattern of demanding a large sum from defendants to settle with him alone before he sought class certification") (emphasis added) (internal citations and quotations omitted); see also Hoffman v. Hampshire Labs, Inc., 963 A.2d 849, 854 (N.J. Super. Ct. App. Div. 2009) (affirming dismissal of NJCFA claims because "Plaintiff's allegations, however, are merely statements of a legal conclusion"); Hoffman v. Palo Alto Laboratories, Inc., 2009 WL 62947, at *2, *5 (N.J. Super. Ct. App. Div. Jan. 12, 2009) (affirming dismissal of NJCFA claims with prejudice); Hoffman v. Macy's, Inc., 2011 WL 6585, at *4 (N.J. Super. Ct. App. Div. June 29, 2010) (affirming dismissal of NJCFA claims for failure to state an ascertainable loss), cert. denied, 6 A.3d 441 (Table) (N.J. 2010).

Impressively, Mr. Hoffman has garnered the attention of the Editorial Board of the New Jersey Law Journal, which urged for clarification on the limited availability of the statute to "people who have been actually victimized," rather than providing "business and opportunistic intermeddlers . . . who deliberately create their own victimhood."  See Editorial, Consumers Buy

Mr. Hoffman alleges that TWC "affirmatively induced Plaintiff and members of the putative class to subscribe to its cable television services and to pay the monthly charges established by defendant, through affirmative promises and representations by defendant that subscribers, including the named Plaintiff herein, would receive sports programming broadcast on the MSG and MSG+ networks." (Am. Compl. ¶ 8.)

Additionally, Mr. Hoffman alleges that he decided to subscribe to TWC's video services based upon "affirmative promises and representations" that he would receive programming of two affiliated regional sports networks, the MSG and MSG+ networks (collectively the "MSG Networks"). (Id. at ¶ 9.) Specifically, Mr. Hoffman claims that in or about November 2008, a "representative of Defendant contacted the named Plaintiff by telephone and actively solicited him to become a subscriber to Defendant's cable television services. A material selling point and a material factor in Plaintiff's decision to subscribe to Defendant's cable television services was Defendant's affirmative promise and representation that Plaintiff, should he pay the monthly fees and charges fixed by Defendant, would receive sports programming broadcast on the MSG and MSG+ networks." (Id.)

However, along with dozens of other network offerings provided in a bundled package of cable channels, Mr. Hoffman received the MSG Networks until TWC's right to carry the sports programming expired in January 2012. Shortly thereafter, Mr. Hoffman filed this action in the Superior Court of New Jersey on January 19, 2012. After TWC's carriage rights expired, the networks were unavailable for distribution on TWC's cable systems for 49 days until February 19, 2012, at which point a new agreement was reached with the MSG Networks' owner and TWC was thereby permitted once again to carry the sports programming.

---

Goods, Not Lawsuits, N.J.L.P., May 23, 2011, at 22 ("[Hoffman] was buying what he thought to be a simple and lucrative lawsuit.").

3

Mr. Hoffman purports that he had no alternative or remedy available to him but to continue to subscribe to TWC despite its lack of airing MSG Networks during the 49-day period, because 1) no other cable television service provider delivers cable television services in Englewood, NJ, and 2) Direct TV services were not available to him because he was not the property-owner and was not authorized and/or empowered to consent to placement of a satellite antenna on the property.  (Id. at ¶¶ 14-15.)

Mr. Hoffman alleges that TWC "ceased to pay sums to the owners of the MSG and MSG+ broadcast networks for the right to broadcast and deliver such MSG and MSG+ programming to Defendant's cable television subscribers, resulting in a significant financial windfall for Defendant." (Id. at ¶ 19.)

Mr. Hoffman further alleges that he and the putative class members "suffered ascertainable loss in the form of out of pocket loss as a result of Defendant's unlawful conduct as aforesaid.  Plaintiff and members of the putative class paid hard earned money for delivery of promised cable television programming, which was not provided by Defendant from January 1, 2012 to February 17, 2012." (Am. Compl. ¶ 23.)  "[They] suffered an ascertainable loss when they received a product/service less than and different from that promised by Defendant and less than and different from the service previously provided by Defendant consistent with its promise and representation." (Id. at ¶ 24.)  Additionally, Mr. Hoffman alleges that they 'lost the benefit-of-the-bargain promised by Defendant – the difference between the price paid by the consumer-subscriber for Defendant's actually delivered product/service, and the product/service promised by Defendant." (Id. at ¶ 25.)

The Amended Complaint (ECF 7) proposes that common questions of law and fact support class-wide consideration, including:

> a. Whether Defendant made affirmative misrepresentations in violation of the New Jersey Consumer Fraud Act;
> b. Whether Defendant unjustly and unfairly enriched itself at the expense of its subscribers; and
> c. The appropriate measure of damages sustained by the Plaintiff and/or other members of the Class.

(Id. at ¶ 28.)

The Amended Complaint sets forth seven counts, the first five relate to violations of the NJ Consumer Fraud Act: unconscionable commercial practice (count one); deception (count two); fraud (count three); misrepresentation (count four); knowing omission (count five). Additionally, Mr. Hoffman alleges unjust enrichment (count six) and breach of contract (count seven).

With regard to the breach of contract claim, the Amended Complaint sets forth that the putative class and TWC were "parties to a contractual arrangement" which included an obligation "to provide to its subscribers, for a monthly fee, promised cable television programming, including but not limited to MSG and MSG+." (Am. Compl. ¶ 56.) Mr. Hoffman submits that a "component of the monthly fees and charges paid by subscribers to Defendant was allocable to the valuable MSG and MSG+ programming provided by Defendant." (Id. at ¶ 57.) Mr. Hoffman contends that "[d]uring the period January 1, 2012 to February 17, 2012, Defendant breached its obligation to the class members at bar by failing to provide promised MSG and MSG+ programming." (Id. at ¶ 59.) Thus, Mr. Hoffman alleges that TWC "provided a diminished level and diminished scope of services." (Id. at ¶ 60.) Mr. Hoffman takes issue that TWC "failed and refused to adjust its monthly fees and charges so as to compensate its subscribers for a diminished level and scope of services." (Id. at ¶ 61.) Thus, as a "proximate result of the foregoing, the class members were damaged." (Id. at 62.)

The motion to dismiss the Amended Complaint was filed on April 13, 2012. The opposition brief was filed on May 18, 2012; and the reply brief was filed on June 8, 2012. The motion was referred to Judge Dickinson R. Debevoise from Judge Esther Salas on October 25, 2012. Oral argument on the motion was heard on June 3, 2013. For the reasons set forth below, the motion is granted and the case is dismissed with prejudice.

## II. DISCUSSION

### A. Standard of Review

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading that states a claim for relief need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To the extent that claims sound in fraud or misrepresentation, they "must state with particularity the circumstances constituting the fraud." Fed. R. Civ. P. 9(b). A plaintiff is obligated to "prove the 'grounds' of his 'entitle[ment] to relief," which requires more than "labels and conclusions," but he is not required to lay out "detailed factual allegations," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal reference omitted), except to the extent required here by Fed. R. Civ. P. 9(b).

A complaint must contain facially plausible claims, that is, a plaintiff must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Twombly, 550 U.S. at 556. This "plausibility" determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (internal citation omitted). The Court's inquiry, however, "is not whether the plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

In deciding a motion to dismiss, the Court looks to the face of the complaint and decides, taking all of the allegations of the fact as true and construing them in a light most favorable to the plaintiff, whether it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 570); Fowler, 578 F.3d at 210.  When assessing the sufficiency of a complaint, the Court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949.  Thus, the Twombly Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (internal citations omitted).  Although for the purposes of a motion to dismiss the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S.Ct. at 1950.  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

A district court deciding a motion to dismiss generally does not consider material beyond the pleadings. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Industries, 998 F.2d 1192, 1196 (3d Cir. 1993), cert. denied, 510 U.S. 1042 (1994).  Only the allegations in complaint; matters of public record, orders, and exhibits attached thereto are taken into consideration. Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F. 2d 808, 812 (3d Cir. 1990).

Typically, when a court does rely on matters outside of the pleadings, it must convert the motion to dismiss into a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and provide all parties with a reasonable opportunity to present all material pertinent to the motion.  See Fed. R. Civ. P. 12(d).  This rule allows the plaintiff an opportunity to respond to any extraneous documents that the court considers.  Pension Benefit, 998 F.2d at 1196.  An exception to the general rule exists, however, so that a court may consider extraneous documents to which a plaintiff refers in the complaint or on which his claims in the complaint were based without converting the motion to dismiss into one for summary judgment.  Burlington Coat Factory, 114 F.3d at 1426; Pension Benefit, 998 F.2d at 1196.  The rationale behind the exception is that, when a complaint refers to or relies on the document, "the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished."  Pension Benefit, 998 F.2d 1192 at 1196-97.  Accordingly, the Court takes notice of the Residential Subscriber Agreement ("RSA") and the Terms of Service incorporated therein (Opp. Br., Quinn Decl., Exs. A, B) because they are integral to Mr. Hoffman's breach of contract claim.  See Burlington Coat Factory, 114 F.3d at 1426 (emphasis in original) ("[A] document *integral or explicitly relied* upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment[.]").[2]

Similarly, on a motion to dismiss the Court may take judicial notice of publicly available documents to demonstrate that a plaintiff was on notice of the relevant public information.  See e.g., Benak v. Alliance Capital Management, L.P., 349 F. Supp. 2d 882, 888 n.8 (D.N.J. 2004), aff'd, 435 F.3d 396 (3d Cir. 2006).  Accordingly, the Court takes judicial notice here of eight

---

[2]   Mr. Hoffman argues that because the written agreement is not the basis of his breach of contract claim, they cannot be considered.  The argument is unpersuasive because the written agreement is integral to the claim.  See Burlington Coat Factory, supra.  Additionally, Mr. Hoffman disputes the authenticity of the documents.  However, the RSA is the only written agreement governing the parties' relationship, it has been authenticated as true and correct by TWC's in-house counsel, and no evidence has been submitted to question its authenticity.

8

media announcements in the Bergen Record in September through December 2011, regarding the potential future pause or expiration in TWC's airing of the MSG Networks. (See MTD Br., Ex. C.)

### B. Analysis

#### 1. The New Jersey Consumer Fraud Act

"'The Consumer Fraud Act, originally enacted in 1960, is aimed basically at unlawful sales and advertising practices designed to induce consumers to purchase merchandise or real estate.'" Lyle Real v. Radir Wheels Inc., 198 N.J. 511 (2009) (quoting Daaelman v. Elizabethtown Gas Co., 77 N.J. 267, 270 (1978)). "It is designed to address 'sharp practices and dealings in the market of merchandise and real estate whereby the consumer could be victimized by being lured into a purchase through fraudulent, deceptive, or other similar kind of selling or advertising practices.'" Id. (quoting Daaelman, 77 N.J. at 271).

> [The CFA] has three main purposes: to compensate the victim for his or her actual loss; to punish the wrongdoer through the award of treble damages; and, by way of the counsel fee provision, to attract competent counsel to counteract the community scourge of fraud by providing an incentive for an attorney to take a case involving a minor loss to the individual.

Lettenmaier v. Lube Connection, Inc., 162 N.J. 136, 139 (1999) (internal citations omitted).

Specifically, the CFA prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice[.]

N.J.S.A. § 56:8-2.

To state a claim under the CFA, Mr. Hoffman must allege sufficient facts to demonstrate: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss. International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., 192 N.J. 372, 389-391 (2007) (hereinafter "IUOEL"). If a private party proves an "ascertainable loss of moneys or property" as a result of the unlawful practice, recovery of treble damages and reasonable attorneys' fees is available. N.J.S.A. § 56:8-19. Notably, the CFA "does not require proof that a consumer has actually relied on a prohibited act in order to recover. In place of the traditional reliance element of fraud and misrepresentation, we have required that plaintiffs demonstrate that they have sustained an ascertainable loss." Id.

The "heightened pleading standard [of Fed. R. Civ. P. 9(b)] applies to all three prongs of the NJCFA claim." Torres-Hernandez v. CVT Prepaid Solutions, Inc., No. 08-1057, 2008 U.S. Dist. LEXIS 105413, at *15 (D.N.J. Dec. 17, 2008). "To satisfy this heightened standard, the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud claim." Glass v. BMW of North Am., LLC, 2011 U.S. Dist. LEXIS 149199, *12 (D.N.J. Dec. 29, 2011) (quoting Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007)). "Plaintiff must also allege who made the misrepresentation to whom and the general content of the misrepresentation." Id. (quoting Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004) (internal citation omitted). See also Wiatt v. Winston & Strawn, LLP, No. 10-6608, 2011 U.S. Dist. LEXIS 68827, at *53 (D.N.J. June 27, 2011) ("Plaintiff must also allege who made the purported misrepresentation and what specific misrepresentations were made.").

Mr. Hoffman's allegation of consumer fraud fails for lack of particularity pursuant to Fed. R. Civ. P. 9(b).  Mr. Hoffman has failed to meet the pleading requirements of his NJCFA claims for unconscionable commercial practice, deception, fraud, misrepresentation, and knowing omission (counts one through five).  First, his allegations are steeped in threadbare recitals of the elements and conclusory statements, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Iqbal, 129 S. Ct. at 1949.  Mr. Hoffman takes issue with a purported representation made to the class in general, and to him by phone:

> 8. Defendant had affirmatively induced Plaintiff and members of the putative class to subscribe to its cable television services and to pay the monthly charges established by defendant, through affirmative promises and representations by defendant that subscribers, including the named Plaintiff herein, would receive sports programming broadcast on the MSG and MSG+ networks.
>
> 9. Defendant made these affirmative promises and representations to the named Plaintiff in or about November of 2008.  Indeed, a representative of Defendant contacted the named Plaintiff by telephone and actively solicited him to become a subscriber to Defendant's cable television services.  A material selling point and a material factor in Plaintiff's decision to subscribe to Defendant's cable television services was Defendant's affirmative promise and representation that Plaintiff, should he pay the monthly fees and charges fixed by Defendant, would receive sports programming broadcast on the MSG and MSG+ networks.

(Am. Compl. ¶¶ 8, 9.)  However, detail as to the nature, date, time, place, method, and terms of the promise to the class are entirely absent.  As to the solicitation individually directed to him, the allegation similarly fails for lack of particularity.  Mr. Hoffman fails to include the nature of the telephone communication; the identity of the representative with whom he spoke; how the solicitation arose; that the solicitation was expressly for line-itemed sports programming or a part of a bundled package; whether or not the promise was for a fixed menu of programming; and whether or not such programming was to evolve or remain stagnant over time.  Similarly, Mr.

11

Hoffman does not submit any details at all as to his unlawful omissions claim, and simply lists it in connection with the supposed fraud.[3]

In his opposition to the motion to dismiss, Mr. Hoffman premises his argument on the liberal construction of the CFA and the reasonable inferences with which his allegations are due. Indeed, the CFA is a remedial statute that "should be construed liberally in favor of protecting consumers."  Boyes v. Greenwich Boat Works, 27 F. Supp. 2d 543, 547 (D.N.J. 1998). However, the Court remains dissuaded as to his demonstration of plausibility pursuant to Twombly, and his pleading with particularity the circumstances constituting the fraud.  Abiding by the standard of review here, even taking all of the allegations of the facts as true and construing them in a light most favorable to the plaintiff and the class which he purports to represent, the allegations are not well-pled because he simply lists boilerplate formulaic recitation of the elements of the cause of action.  See Iqbal, supra.  Drawing on the Court's judicial experience and common sense, see Fowler, supra, the Amended Complaint fails to contain facially plausible claims of unlawful conduct.  Simply put, Mr. Hoffman has not sufficiently alleged that a promise was made to him and/or the class which was later reneged.[4]

## 2. The Breach of Contract Claim

To state a claim for breach of contract under New Jersey law, a plaintiff must allege: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and

---

[3]   The only mention of an "omission" arises in Paragraph 46 of the Amended Complaint: "Defendant's conduct constitutes knowing concealment, suppression and/or omission of material facts with the intent that others, including members of the plaintiff-class, rely upon such concealment, suppression and/or omission, in connection with the sale or advertisement of any merchandise in violation of the New Jersey Consumer Fraud Act, *N.J.S.A.*56:8-2.

[4]   It bears mention that TWC also dedicates credible argument as to Mr. Hoffman's failure to plead an ascertainable loss and a causal nexus between the unlawful conduct and ascertainable loss, the two latter requirements to state a *prima facie* claim under the NJCFA.  See IUOEL, supra.  While credible, the arguments are moot because Mr. Hoffman clearly fails to meet the plausibility and pleading requirements as to the first prong of unlawful conduct.

12

(4) that the party stating the claim performed its own contractual obligations." Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007). Under New Jersey law, "where the terms of the contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written." JPMorgan Chase Bank, N.A. v. Republic Mortgage Insurance Co., No. 10-6141, 2011 U.S. Dist. LEXIS 47918 (D.N.J. May 4, 2011) (internal citation and quotation marks omitted). Contract interpretation is a matter of law that is properly considered on a motion to dismiss. See e.g., Click Corp. of America v. Redco Foods, Inc., 424 F. Supp. 2d 753, 759 (D.N.J. 2006).

      Mr. Hoffman argues that TWC breached its "contractual arrangement" with him and the class because TWC agreed, promised, or represented that MSG Networks included in the lineup of networks offered by TWC in 2008 would continue in early 2012. (Am. Compl. ¶ 56.) However, Mr. Hoffman does not reference, cite or quote the terms of a supposed oral agreement with any specificity with respect to him personally, or with respect to the class – whom he does not even allege that similar oral representations were made to in the first place. Thus, even if the Court were to consider the breach of contract claim here purely on the oral representation made solely to Mr. Hoffman, the claim fails for lack of plausibility.

      Although Mr. Hoffman references the "contractual arrangement" between the parties, he does not explicitly reference any written instrument. Thus, Mr. Hoffman argues that TWC's inclusion in its opposition brief of a copy of the Residential Subscriber Agreement ("RSA") and the Terms of Service incorporated therein (Quinn Decl., Exs. A, B) cannot be considered by the Court for the purposes of deciding this motion. However, as the sole written instruments governing the parties' relationship, these written documents are clearly integral to the claim.

13

The forms are rendered at the time of service initiation and are available to subscribers through the TWC website.  Neither of these documents contains reference to promise of a specific channel being offered, nor that such channel would be offered over a given period of time.  Indeed, clause three explicitly provides that the services received are not assured to remain the same over time:

> 3.      Your Right to Use our Services and Property is Limited
> (a)     The Services we provide and the way we deliver them will change from time to time, in part due to our efforts to improve them.  These changes may impact the Services you receive today, or may require that you change your own equipment or its configuration, or lease new or additional Customer Use Equipment from us, to continue to obtain the full benefit of those Services.  If you are under a promotional or other offering with a set price for a period of time, you are assured only that you will be charged the set price during the time specified.  You are not assured that the Services you receive (or that the equipment and system requirements) will remain the same.
> [ . . . ]

(Quinn Decl., Ex. A.)

Additionally, to the extent that Mr. Hoffman alleges an oral agreement as to his vague independent personal communication with the unknown TWC representative, clause 20 of the Subscription Agreement informs that it "constitute[s] the entire agreement between you and TWC.  You are not entitled to rely on any agreement or undertakings made by TWC personnel other than those contained in the Customer Agreements." (Quinn Decl., Ex. A.)

Mr. Hoffman attempts to avoid these damming provisions by arguing in his opposition brief that the contract also requires a minimum of thirty days notice prior to any service changes, noting that the only notifications directly provided by TWC were legal notices in the local newspaper.  (Opp. Br. at 14.)  Mr. Hoffman argues that a "reasonable cable customer might expect communications from the cable company to be on television or perhaps in the same

14

format they receive billing information, whether that is electronic or a traditional mailing." (Id. at 15.) Thus, Mr. Hoffman disputes the reasonableness of the notice provided. Putting aside that Mr. Hoffman does not direct the Court to where this thirty-day notice provision is included in the written agreements, or that his Amended Complaint does not mention this disputed notice allegation, the Court still cannot find in favor of Mr. Hoffman as a matter of law. Mr. Hoffman has failed to cite any case law whatsoever to support his argument that media notices are insufficient to alert the class as to the 49-day discontinuation of services, and did not so much as touch upon this issue during oral argument.

The central issue here is that Mr. Hoffman argues that he expected two specific sports channels to be offered as a part of a bundled package of programming which he purchased from TWC. It is dispositive here that the sports channels are not line-item *a la carte* orders, but are part of a larger package of programming. Mr. Hoffman's allegations do not meet the pleading requirements to assert that a promise was made at any time by TWC, by phone or by written instrument, that the specific sports channels were to be fixed as a part of the programming over time. Indeed, the written agreement does not list which channels are to be offered, and clearly indicates the flexible nature of the bundled package over time. A breach of contract does not exist here as a matter of law.

### 3. Unjust Enrichment Claim

It is well-established that "recovery based on a quasi-contract theory is mutually exclusive of a recovery based on a contract theory." Duffy v. Charles Shwab & Co., 123 F. Supp. 2d 802, 814 (D.N.J. 2000) (citing Caputo v. Nice-Pak Prods., Inc., 300 N.J. Super. 487, 507 (App. Div. 1997). A claim for unjust enrichment "will not be imposed when a valid, unrescinded contract governs the rights of the parties." Id. (citing Van Orman v. Am. Ins. Co., 680 F. 2d 301,

15

310 (3d Cir. 1982)). Here, TWC was not enriched beyond its contractual right. Therefore, there can be no recovery in quasi-contract. See Van Orman, 680 F.2d at 311.

### III. CONCLUSION

For the foregoing reasons, TWC's motion to dismiss the Amended Complaint is GRANTED. The Amended Complaint is hereby dismissed with prejudice. No leave to file an Amended Complaint shall be granted due to futility.

The Court will enter an order implementing this opinion.


                                          **/s/Dickinson R. Debevoise**
                                          **DICKINSON R. DEBEVOISE, U.S.S.D.J.**


**Dated: June 6, 2013**